# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

JOHN H. BENGE, JR.,                    )
      *PETITIONER*                  )          05 - 551
                   )
                   )
     *v.*                          )          NO. _____, 2005
                   )
RICK KEARNEY, WARDEN                    )
SUSSEX CORRECTIONAL                     )
INSTITUTION,                            )
      *RESPONDENT*                  )
                   )

---

## ON PETITION FOR A WRIT OF *HABEAS CORPUS*

---

## PETITIONER'S BRIEF IN SUPPORT OF A PETITION
## FOR A WRIT OF *HABEAS CORPUS*

---

July 20, 2005

                                JOHN H. BENGE, JR.
                                SUSSEX CORRECTIONAL
                                       INSTITUTION
                                P.O.  BOX 500
                                GEORGETOWN, DE 19947

2005 AUG -1   PM 11:17   U.S. DISTRICT COURT   DISTRICT OF DELAWARE

## TABLE OF CONTENTS

Table of Contents-------------------------------------------------------------------------------- i

Table of Citations------------------------------------------------------------------------------ iii

Combined Statement of the Nature and Stage
of the Proceedings and Statement of Facts------------------------------------------------- 1

Summary of Argument--------------------------------------------------------------------------- 8

Argument

I.    The Sentences Imposed Exceeded The "Maximum
      Statutory Penalties" Permissible Under The
      6th Amendment--------------------------------------------------------------------- 9

      A.  Introduction---------------------------------------------------------------- 9

      B.  *Apprendi/Blakely* As Applied To
          Delaware – An Approach------------------------------------------------- 9

      C.  Sentencing Reform In Delaware, 1984 – 2004:
          A Primary Source History------------------------------------------------- 20

      D.  The TIS Sentencing Scheme As Applied To
          Petitioner Violates The 6th Amendment------------------------------- 20

            1.  The Delaware Court's Focus – Appellate
                Review And 6th Amendment Formalism------------- 20

            2.  6th Amendment Formalism Does Not
                Trump *Apprendi/Blakely*------------------------------- 22

            3.  § 4204(m) Restricts The Sentencing Power--------- 23

            4.  Reading §4204(m) As Limiting The
                Sentencing Power Is In Accord With
                Established Delaware Principles Of
                Statutory Construction--------------------------------- 27

            5.  The Rule Of Lenity And The
                Doctrine Of Constitutional Doubt-------------------- 28

i

6. TIS Compared To the Washington
And Federal Systems------------------------------------ 29

a). The Washington System Compared----------------- 29

b). The Federal System Compared---------------------- 30

c). The TIS System Compared------------------------- 30

E.  The TIS Requirement Of "Reasons" To Enhance A
Sentence Violates The 6th Amendment--------------------------- 32

II.    The Sentencing Judge's Use Of Petitioner's Letter To The
Delaware Secretary Of Education To Enhance A Criminal
Sentence Violated The First Amendment Right To Petition-------------- 40

A.  Protected First Amendment Activity
As a Sentencing Factor-------------------------------------------- 41

B.  It Is Constitutionally Impermissible To Link
An Enhanced Sentence To Protected Activity----------------- 45

C.  Enhancement Of Petitioner's Sentence Was
Directly Linked To Protected Activity-------------------------- 51

Conclusion--------------------------------------------------------------------------------------- 53

## ATTACHMENTS

## UNREPORTED CASES

*Benge v. State*, Order, No. 137, 2004 , November 12, 2004 (Del.)

*Evans v. State*, __A.2d.__ , No. 67, 2004, Nov. 23, 2004 (Del.)

*Evans v. State*, __A.2d.__, No. 67, 2004, April 11, 2005 (Del.)

*Fuller v. State*, No. 38, 2004, October 29, 2004  (Del.)

# TABLE OF CITATIONS

## CASES

*Allah v. Seiverling*, 229 F.3d 220 (#rd Cir., 2000)------------------------------------------42

*Apprendi v. New Jersey*, 530 U.S. 466 (2000)----------------------------------- 4, 9-39 passim

*Barnes Foundation v. Township Of Lower Merion,* 242 F.3d 151 (3rd Cir., 2001)--- 42

*Benge v. State*, Order, No. 137, 2004, November 12, 2004 (Del.)----------- 4, 9-39 passim

*Blakely v. Washington*, 542 U.S. ___ (2004)----------------------------------- 4, 9-39 passim

*Crosby v. State*, 824 A.2d 894 (Del., 2003)------------------------------------------------- 17

*Dorszyski v. United States*, 418 U.S. 424 (1974)---------------------------------------- 14

*Eastern RR Presidents' Conference v. Noerr Motor Freight, Inc.,*
365 U.S. 127 (1961)--------------------------------------------------------------------------41,42

*Evans v. State*, __A.2d__, No. 67, 2004, Nov. 23, 2004 (Del.)------------------------ 37

*Evans v. State*, __A.2d__, No. 67, 2004, April 11, 2005 (Del.)------------------------ 13

*Fuller v. State*, No. 38, 2004, October 29, 2004 (Del)-------------------------- 18-39 passim

*Gaines v. State*, 571 A.2d 765 (Del., 1990)------------------------------------------------- 16

*Herr v. Pequea Township*, 274 F.3d 109 (3rd Cir., 2001)--------------------------------- 42

*Jones v. United States,* 526 U.S. 227 (1999)------------------------------------------------- 28

*Koon v. United States*, 518  U.S. 81 (1996)------------------------------------------------- 19

*Mayes v. State*, 604 A.2d 839 (Del., 1992)------------------------------------------- 16, 25

*O'Brien v. United States*, 376 F.2d 538 (1st Cir., 1967)
*vacated other grounds*, 391 U.S. 367 (1968)---------------------------------- post-42, passim

*Osburn v. State*, 224 A.2d 52 (Del., 1966)------------------------------------------------- 13

*Ring v. Arizona*, 536 U.S. 584 (2002)------------------------------------------------------- 23

*Seevey v. State*, 211 A.2d 908 (Del., 1965)------------------------------------------------- 13

iii

*Siple v. State,* 701 A.2d 79 (Del., 1997)------------------------------------------- 17

*Snyder v. Andrews,* 708 A.2d 237 (Del., 1998)-------------------------------------- 27

*United Mine Workers v. Pennington,* 381 U.S. 657 (1965)-------------------------- 42

*United States v. Booker,* __ U.S. __ (2005)------------------------------------ 9-39 passim

*United States v. Dunnigan* 507 U.S. 87 (1993)------------------------------------- 37

*United States v. Fanfan,* __U.S. __ (2005)----------------------------------------- 9

*United States v. Lemon,* 723 F.2d 922  (D.C. Cir., 1983)--------------------post-41, passim

*United States v. Navarro,* 145 F.3d 580 (3rd Cir., 1998)------------------------------ 28

*United States v. Rosenberg,* 806 F.2d 1169 (3rd Cir., 1986)------------------post-42, passim

*Ward v. State*, 575 A.2d 1156 (Del., 1990)----------------------------------------- 13

*Williams v. New York*, 337 U.S. 241 (1941)----------------------------------------- 32

## CONSTITUTIONAL PROVISIONS

United States Constitution, Amendment I-------------------------------------post-39  passim
United States Constitution, Amendment VI------------------------------------post- 9  passim
United States Constitution, Amendment XIV----------------------------------------------- 41

## FEDERAL STATUTE

28 U.S.C. §2254------------------------------------------------------------------------------

## DELAWARE STATUTES AND SUPERCEDED SESSION LAWS

Title 11, Delaware Code
        §203------------------------------------------------------------------------ 28
        §4204(m)-----------------------------------------------------------post- 8, passim
        §4214--------------------------------------------------------------------- 16
64 Delaware Laws, Chapter 402--------------------------------------------------- 10
65 Delaware Laws, Chapter 206--------------------------------------------------- 12
67 Delaware Laws, Chapter 130, § 2,B.C----------------------------------------- 14
67 Delaware Laws, Chapter 350, §1--------------------------------------------- 16

## OTHER AUTHORITIES

SENTAC Benchbook--------------------------------- 14, 31


Delaware Supreme Court Administrative
Directive Number Seventy-Six----------------------- 13

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JOHN H. BENGE, JR.,     )
      *PETITIONER*     )
                  )
                  )
      *v.*          )     NO. _____, 2005
                  )
                  )
RICK KEARNEY, WARDEN     )
SUSSEX CORRECTIONAL     )
INSTITUTION,     )
      *RESPONDENT*     )
                  )

---

### ON PETITION FOR A WRIT OF *HABEAS CORPUS*

---

### PETITIONER'S BRIEF IN SUPPORT OF A PETITION
### FOR A WRIT OF *HABEAS CORPUS*

---

July ___, 2005

          JOHN H. BENGE, JR.
          SUSSEX CORRECTIONAL
                  INSTITUTION
          P.O.  BOX 500
          GEORGETOWN, DE 19947

## COMBINED STATEMENT OF THE NATURE OF THE CASE AND STAGE OF THE PROCEEDINGS AND STATEMENT OF FACTS[1]

On January 13, 2004, Petitioner pleaded guilty in the Superior Court of the State of Delaware in and for New Castle County to two counts of burglary in the third degree, three counts of unlawful interception of oral communications, and one count of attempted interception of oral communications [Sentence Order, Appendix to Petitioner's Petition for a Writ of *Habeas Corpus* ("Appendix") A33 – A40)]. Each of these non-violent offenses resulted from a domestic dispute between Petitioner and his former wife. The indictment in this case alleged no "aggravating factors" or sentencing enhancing factors. (Indictment, Appendix, A6-A7)

The Delaware Criminal Code separately classifies the offenses to which Petitioner pleaded guilty as a Class F felony as to the burglary third degree (Title 11, Delaware Code, § 824) and a Class E felony as to the unlawful interception charge [Title 11, Delaware Code, §2402(b)].

Under Delaware's sentencing statute, the term of incarceration for a Class F felony is fixed at a maximum of three years; prison terms for sentences for a Class E felony may not exceed five years. 11 Del. C. §4201.

Since July 17, 1989, sentences for criminal offenses in Delaware have by statute been imposed pursuant to "guidelines" establishing "presumptive

---

[1] These two sections of this brief have been combined into one to enhance the presentation of the merits of

1

sentences." These penalties are prescribed by the Delaware Sentencing Accountability Commission, an agency created by the Delaware legislature and known as "SENTAC."

These "presumptive sentences" established by SENTAC for burglary third degree and unlawful interception of oral communications are, respectively, six months of "alternative confinement" (a halfway house or home confinement) designated as Level IV and twelve months of supervised probation. The applicable SENTAC sentencing guidelines are excerpted in the Appendix, A22 – A32.

Accordingly, rather than the twenty-six years of Level V incarceration possible under the maximum permissible sentences for the two Class F felonies and the three Class E felonies, Petitioner was faced with a maximum SENTAC presumptive sentence of six months of Level IV quasi-incarceration or a year of probation under the Delaware sentencing scheme (Appendix A22; A23 – A24).[2]

Prior to Petitioner's sentencing, a presentence investigation was conducted and a report prepared for the sentencing judge. No aggravating or sentence enhancing factors were reported by the presentence investigating

---

Petitioner's claims for relief as the facts and procedural history of this case are closely entwined.
[2] At sentencing, the trial court treated the offense of unlawful electronic interception as the "lead" offense for purposes of application of the SENTAC sentencing guidelines. See excerpts of SENTAC Benchbook, Appendix A22 – A32.

officer. (Transcript, Sentencing Proceeding, Appendix, A11). Apparently, this report brought to the judge's attention that on February 9, 2004, Petitioner had written a letter to Valerie Woodruff, the Delaware Secretary of Education (a cabinet level officer in the administration of Delaware's governor). Petitioner's letter complained of a prosecutor's effort to suppress the positive illegal drug screen test results of one of the complaining witnesses against Petitioner. (Petitioner's letter of February 9, 2004, Appendix A8 – A18). While the specific conduct that Petitioner complained of occurred in a case other than that in which Petitioner was to be sentenced,[3] the complaining witness who was the subject of Petitioner's letter was involved in both cases. That witness was a teacher of first and second grade public school elementary special education students and therefore within Secretary Woodruff's area of responsibility. Petitioner's letter to Woodruff questioned whether she, as the Delaware Secretary of Education, would respond with something other that the "deliberate indifference" of the prosecutor with respect to a public school teacher testing positive for illegal drug use. (Petitioner's letter of February 9, 2004, Appendix A8 – A18).

---

[3] Petitioner was tried in Sussex County Superior Court in August, 2003 on a series of charges resulting from an incident involving Edward S. ("Stacey") Smith, the complaining witness who was the subject of Petitioner's letter to Education Secretary Woodruff. The one felony and two misdemeanor convictions in the Sussex County case are the subject of a separate *habeas corpus* petition filed in this Court contemporaneously with the petition in this case.

3

Petitioner was sentenced on March 19, 2004. In a proceeding that lasted less than a half hour, the sentencing judge heard statements from Petitioner's former wife, the prosecutor, Petitioner's public defender, and Petitioner himself. The complete 14 page transcript of that sentencing proceeding appears in the Appendix, A19 –A22. No testimony as such was heard, no documentary evidence was offered to the court, and no mental health evaluations of Petitioner were introduced by either side, as none had been performed. Petitioner was not asked by the presiding judge to explain the circumstances surrounding the letter sent to Secretary Woodruff, although it was referred to during the sentencing hearing.

The sentencing judge imposed upon Petitioner a five year period of incarceration for the "lead" Class E interception of oral communications offense which was suspended after three years in prison. The judge also imposed a total of nine additional years of imprisonment on the other offenses, all of which was suspended for probation (Sentencing Order, Appendix A34 – A41).

The sentencing judge thus departed from the SENTAC sentencing guidelines by imprisoning Petitioner for thirty-six months rather than sentencing him to six months of alternative confinement or probation. As required by §4204(m) of the Delaware Criminal Code [Title 11, Delaware Code, §4204(m)], the judge stated his reason for the "out of guideline"

4

sentence: he concluded that the letter sent by Petitioner to Secretary Woodruff demonstrated "lack of remorse," an aggravating factor under the SENTAC guidelines, and that Petitioner demonstrated the "need for correctional treatment." (Sentencing proceeding transcript, Appendix A20 – A21; Sentencing Order, Appendix A33 – A40). The enhanced sentence was thus a direct result of Petitioner's exercise of his First Amendment right to seek redress for a grievance.

Petitioner appealed this sentence to the Delaware Supreme Court. The issues raised by Petitioner in that appeal are the same issues upon which Petitioner seeks relief in this Court by writ of *habeas corpus*.

In Petitioner's opening brief on appeal to the Delaware Supreme Court, Petitioner asserted that "enhancement of the [Petitioner's] sentence from 12 months of probation to 3 years imprisonment based on the judicial finding of 'lack of remorse' contravened the constitutional principle recently recognized by the United States Supreme Court in *Blakely v. Washington* , 542 U.S. ___, 124 S. Ct. 2531 (June 24, 2004)." (Petitioner's Opening Brief on appeal, page 5, Appendix A48). Petitioner also urged upon the Delaware Court the notion that Petitioner's letter of February 9, 2004 to Secretary of Education Woodruff was "constitutionally protected activity." (Petitioner's Reply Brief on appeal, page 2, Appendix A58).

5

The Delaware Supreme Court did not deign to address the First Amendment issue raised by Petitioner in its order affirming the sentence imposed upon Petitioner.  In a four page opinion representing its first analysis of the impact of *Blakely v. Washington* on sentencing in Delaware, the Delaware Court relied upon an Administrative Directive it had issued 17 years prior to the *Blakely* opinion as barring an appeal to "any court" based upon "any legal or constitutional right" relating to a sentence which "does not conform to the sentencing standards." [*Benge v. State*, No. 137, 2004, Berger, Justice (November 12, 2004), appeal order, page 3].  The Delaware Court rejected Petitioner's appeal below without undertaking an analysis of the 6th Amendment jury trial considerations discussed in *Blakely* as the same might apply to Delaware's sentencing scheme.

Petitioner thereafter sought review by writ of *certiorari*.  That petition was docketed by the Supreme Court in February, 2005 as No. 04-8789. *Certiorari* was denied by order dated April 24, 2005.

Jurisdiction with respect to Petitioner's *habeas corpus* petition is vested in this Court by 28 U.S.C. §2254. The warden of the Delaware state penal institution in which Petitioner is confined is named as the respondent in this petition.  This action is brought in the judicial district in which Petitioner is presently confined. Petitioner's petition for a writ of *habeas*

*corpus* has been filed within nine months of the date of the order of the Delaware Supreme Court affirming Petitioner's convictions on direct appeal.

Petitioner has exhausted all state remedies available to him as the 6th Amendment and 1st Amendment claims raised in this petition have been presented to the Delaware Supreme Court on direct appeal.

This is Petitioner's brief in support of his petition for *habeas corpus*. It has been prepared without the benefit of counsel and with only the legal research facilities available to Petitioner at Sussex Correctional Institution, Georgetown, Delaware.

## SUMMARY OF ARGUMENT

1. The sentence imposed upon Petitioner of three years imprisonment exceeded the maximum penalty of six months quasi-incarceration or probation permitted under the Delaware SENTAC "presumptive sentences" for sentencing under Delaware's Truth In Sentencing" law. Petitioner's sentence was enhanced above the SENTAC guideline sentence on the basis of facts – the judge's finding of "lack of remorse" and "need for correctional treatment" – that were neither proven to a jury beyond a reasonable doubt nor admitted by Petitioner.

2. Petitioner was sentenced to a term of three years imprisonment rather than probation based solely upon the exercise of his First Amendment right to petition a state government official with respect to a grievance.

8

## I. THE SENTENCES IMPOSED EXCEEDED THE MAXIMUM PENALTIES PERMISSIBLE UNDER THE 6TH AMENDMENT

### A). Introduction

This Court is, of course, well acquainted with the significance of the 6th Amendment jury trial right in sentencing proceedings in the aftermath of *Apprendi/Blakely/Booker/Fanfan*.[4] This brief does set forth such details of the Delaware sentencing scheme as are necessary to resolve the Sixth Amendment sentencing issue raised in this Argument.

### B). Apprendi/Blakely Applied To Delaware – An Approach

Determining how the *Apprendi/Blakely* "bright line" rule (*Blakely*, slip opinion at p. 12) applies to Delaware requires an examination of the manner in which the sentencing power of a Delaware judge functions with respect to the enhancement of penalties based upon facts not found by a jury or admitted by the defendant. Such an analysis is directed toward the question of whether the power of a Delaware judge to enhance a sentence above an ascertainable level is conditional – that is, dependent upon the finding of additional facts. In undertaking such an analysis, this brief looks to the intent of Delaware's legislature in enacting the applicable sentencing statutes as revealed in the legislative history;

---

[4] *Apprendi v. New Jersey,* 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. __ (2004); *United States v. Booker* and *United States v. Fanfan*, __U.S.__ (2005).

applies the rules of construction applicable to Delaware sentencing statutes; applies the rule of lenity and the doctrine of constitutional doubt; compares the Delaware sentencing system to that involved in *Blakely* and the former Federal system; and, finally, seeks to determine whether the Delaware sentencing statutes as heretofore construed and as applied to the sentencing in this case are consistent with the principles of *Apprendi/Blakely.*

While due regard is to be given to the holdings of the Delaware Supreme Court as to matters of state law, the conclusion of that court that "*Blakely* does not impact Delaware" (*Benge v. State*, appeal order, p.2) is not determinative in this case.    The issue here is whether the sentences imposed upon Petitioner were consistent with the 6th Amendment – and so it was in *Blakely* that the Washington Supreme Court's rejection of *Apprendi* as applied to its system and upholding of the sentence there did not control or preclude a 6th Amendment analysis and a contrary holding by the Supreme Court.

### C). Sentencing Reform In Delaware, 1984 – 2004: A Primary Source History

In the early 1980's, the Delaware General Assembly joined in the national movement toward sentencing reform with the enactment of 64 Delaware Laws ("Del. Laws"), Chapter 402.  This legislation, effective

10

July 18, 1984, created the "Delaware Sentencing Accountability Commission" – which promptly became known as "SENTAC."

Pursuant to the legislative enabling act, SENTAC was tasked with formulating and submitting "sentencing guidelines" to the Delaware Supreme Court for adoption "by court rule." The SENTAC guidelines, which were to be finalized by March 1, 1985, were to be developed "consistent with the overall goals of ensuring certainty and consistency of punishment commensurate with the seriousness" of an offense [subsection (c) of §1 of the 1984 act].

The sentencing guidelines that SENTAC was charged to develop were, according to the General Assembly, to "establish objective criteria to be utilized in determining which offenders shall be assigned to each of the...accountability levels" (i. e., levels of punishment – incarceration, probation, and so forth) and to "define under what conditions of aggravation or mitigation and in what manner a sentencing judge may impose a sentence outside of the guidelines..." §2 (c) (2) and (3), 1984 Act. Further, SENTAC was to "recommend" a procedure or a tribunal for "appellate review" of sentences by the defendant *or* the State in cases of an out of guideline sentence. § 2 (g), 1984 Act.

This initial sentencing reform legislation also provided as follows:

11

> Such guidelines shall have no force and effect unless [adopted by court rule]; and shall not in any event authorize or be construed as authorizing the exercise of any power or duty exceeding or conflicting with those heretofore or hereafter granted by Act of the General Assembly or pursuant to inherent authority granted under the Delaware Constitution.
>
> §2 (a), 1984 Act

In this first iteration of sentencing reform in Delaware, the Delaware Supreme Court was to establish sentencing guidelines by court rule pursuant to enabling legislation.

All did not go, however, in accordance with the timetable envisioned by the General Assembly. In September of 1985, seven months after the deadline set by the General Assembly for the submission of the SENTAC recommendations to the Delaware Court, the legislature passed another act establishing "realistic dates for completing the duties" of SENTAC. 65 Del. Laws, Ch 206. This legislation established a new date of March 1, 1986 for the SENTAC recommendations with "non-binding pilot testing" to begin on July 1, 1985.

It was not until September 15, 1987, however that the Delaware Court actually adopted the SENTAC recommendations. The Court later described its action as follows in *Ward v. State*, 567 A.2d 1296 (Del., 1989), at 1297:

12

In 1987, we adopted the Commission's five-level punishment scheme, known as SENTAC guidelines and ordered Delaware courts to implement them, subject to certain conditions. One of the most important conditions was that "[t]he sentencing standards are considered voluntary and non-binding; thus, no party to a criminal case has any legal or constitutional right to appeal to any court a statutorily authorized sentence which does not conform to the sentencing standards." Administrative Directive Number Seventy-Six, Del. Supr., Christie, C.J. (Sept. 15, 1987)

The *Ward* opinion rejected an appeal of a sentence that was beyond the SENTAC guidelines but well within the statutory maximum. The Court held in *Ward* that in Delaware appellate review of a criminal sentence is limited to determining if the sentence imposed is within the statutory maximum,[5] citing for that precept a pre-SENTAC case, *Seevey v. State*, 211 A. 2d 908 (Del., 1965). [ One year after the *Seevey* decision, the Delaware Court opined that it lacked jurisdiction to review a sentence within the statutory limits, *Osburn v. State*, 224 A.2d 52 (Del., 1966)].

SENTAC's mission did not, however, end with *Ward* or the Delaware Supreme Court's Administrative Directive Number Seventy-Six which had, in essence, maintained the existing sentencing scheme in Delaware, engrafting onto that system the SENTAC guidelines with the label of "non-binding." In July of 1989, the General Assembly enacted the "Truth In Sentencing Act Of 1989," popularly known as "TIS," the

13

second iteration of sentencing reform in Delaware. (67 Del, Laws, Ch. 130).

By means of TIS – the "most comprehensive *legislative* revision of the Delaware *statutory* sentencing system" [*Evans v. State*, No. 67, 2004, April 11, 2005 (Del.) ("*Evans* II"), slip opinion, p. 29 (emphasis supplied)] the General Assembly overhauled sentencing practice in Delaware. With an effective date of July 1, 1990 (34 months after the Delaware Supreme Court's Administrative Directive Number 76 adopting the SENTAC guidelines as "voluntary and non-binding"), §2 B. of TIS declared, among other things that the "sentence of incarceration for a felony shall be a definite sentence" [§5, TIS; 11 Del. C. §4205 (a)] ; abolished parole [§5 TIS;11 Del. C. § 4354; §4205 (j)]; classified all felonies into seven categories – "A" through "G" (§ 7, TIS; 11 Del. C.§4354); and prescribed a mandatory period of probation for all felony offenders [§6, TIS; 11 Del. C.§ 4204 (l)].

The sentencing reform efforts of SENTAC were not ignored by the General Assembly in TIS. In one of the "carefully crafted statutes" (*Evans* II, slip opinion p.34) comprising the TIS legislation, the Delaware legislature qualified as follows the power granted to sentencing judges to

---

[5] This scope of review is identical to the pre-1984 Federal system. *Dorszyski v. United States, 418 U.S.*

14

impose any sentence of incarceration "up to the maximum stated" for each class of felony:

> Whenever a court imposes a period of incarceration at Level V custody in excess of 30% of the maximum allowable penalty or imposes a period of incarceration at Level V custody less than 20% of the maximum allowable penalty, such court, shall explain in writing, the aggravating or mitigating circumstances for imposing such penalty.    The basis for aggravating or mitigating circumstances shall be prescribed and adopted by the Sentencing Accountability Commission.

> § 18, TIS; 11 Del. C. § 4204 (m)

This provision of TIS tied the exercise of the sentencing power directly to the SENTAC guidelines as the SENTAC presumptive standards are:

> ...are loosely based on up to to 25% of the statutory maximum; serious aggravating factors increase the penalty up to 50% or up to 100% of the maximum...[T]he increased or decreased penalties, for most aggravating or mitigating circumstances are not specified... the "up to 25%" increase or decrease guide should be utilized when possible.

> SENTAC Benchbook, p. 4 [6]

(relevant excerpts from the Benchbook appear starting at Ap., A23)

---

*424 (1974).*
[6] The SENTAC Benchbook has been formally recognized by the Delaware Supreme Court as an aid to construction of sentencing statutes. *Evans* II, slip opinion, p. 34.

15

The second iteration of sentencing reform in Delaware was, therefore, wholly a product of the state legislature not requiring the subsequent adoption of a court rule to become operative.

The TIS Act was followed by the decision of the Delaware Supreme Court on March 14, 1990 in *Gaines v. State*, 571 A.2d 765 (Del., 1990) in which that Court held that a sentence which departed from the SENTAC guidelines presented no basis for reversal on appeal.

The General Assembly thereafter approved the "TIS Clarification Act" (67 Del. Laws, Ch. 350) on July 13, 1990 which bore the full title of "An Omnibus Act...To Provide Clarification And Consistent Application Of The Intent Of The Truth In Sentencing Act." [7] The act to "clarify" TIS followed the TIS Act itself by just over one year and *Gaines v. State* by four months..

§ 1 of the TIS Clarification Act struck the previously enacted text of §4204 (m) – set forth above – and substituted the following amended § 4204 (m):

> Whenever a court imposes a sentence inconsistent with the presumptive sentences adopted by the Sentencing Accountability Commission such court shall set forth on the record its reasons for imposing such penalty.

---

[7] Under the "single subject" provision of the Delaware constitution, the title give to a bill proposed in the General Assembly is one of the keys to its constitutionality. The title is not, therefore, mere surplusage or decoration. *Evans* II, slip opinion, p. 21-23.

16

The third and final iteration of sentence reform in Delaware was a legislative effort to clarify its previously expressed intent and to make *all* out of guideline sentences subject to the statement of "reasons" requirement. [At the same time as it continued to advance a reform agenda of determinate sentencing, the General Assembly amended the Delaware habitual offender statute in 1990 to reflect its "unambiguous intent" to *expand* the unbridled discretion of sentencing judges to impose "up to a life sentence" for habitual criminals under 11 Del. C.§4214. See §37, TIS Clarification Act, 67 Del. Laws, ch. 350 and *Crosby v. State*, 824 A.2d 894 (Del., 2003). The General Assembly included both "determinate" and true "indeterminate" sentencing systems as part of TIS and differentiated between their application.

On January 31, 1992, the Delaware Supreme Court held that § 4204 (m) forms no basis for an appeal of a sentence because of the "prior rulings" of that Court. *Mayes v. State*, 604 A.2d 839 (Del., 1992).

*Mayes* was followed in 1997 – at a point thirteen years and seven general elections removed from the initial SENTAC legislation and just three years before *Apprendi* – by *Siple v. State*, 701 A.2d 79 (Del., 1997). In *Siple*, the Court held that the sole grounds for appeal of a criminal sentence in Delaware were: unconstitutionality of the sentence;

17

factual predicates that were either false, impermissible, or that lack "minimal indicia of reliability;" judicial vindictiveness; bias; or a sentencing imposed with a "closed mind." *Siple,* 701 A.2d, at 83. The Court reaffirmed that its Administrative Directive Number Seventy-Six of 1987 permitted no basis for an appeal on the sole ground that a sanction deviated from the SENTAC guidelines. That Court went on to state that the issue of appellate review would ultimately be up to the General Assembly and chided SENTAC for its "evident" failure to recommend an appellate procedure.

Following the decision in *Blakely,* the first challenge to the consistency of Delaware's TIS sentencing scheme with the 6th Amendment to reach the Delaware Supreme Court was in *Fuller v. State,* No. 38, 2004, October 29, 2004 (Del.) which was, of course, decided while *Booker* was pending decision after argument. In *Fuller,* the defendant appealed sentences of five years imprisonment for three drug convictions on the basis that the sentencing judge had enhanced the sentences above the TIS guidelines because the defendant "... at a minimum knew of his brother's false testimony and allowed it at his trial." *Fuller,* slip opinion, p. 14.

18

The Delaware Court began its analysis of the *Fuller* appeal with the following declaration:

> With certain exceptions involving mandatory sentences, Delaware has an indeterminate sentencing system. Although there are voluntary sentencing guidelines, the sentencing judge is not bound by them [citing *Mayes v. State, supra* ]. The sentencing judge need only state his reasons for imposing a sentence outside the guidelines [citing 11 Del. C. § 4204 (m)]. We review a sentence of a criminal defendant for abuse of discretion.
>
> *Fuller v. State*, slip opinion pp.15 – 16

In *Fuller*, the Delaware Court expressly refused to reach the *Blakely* issue raised by the defendant (footnote 60, *Fuller* slip opinion p.20) but reversed the sentence imposed nonetheless on the basis that the trial judge (who had enhanced the sentence based upon facts not tried to a jury) had not made an adequate record of specific facts showing that the defendant had engaged in conduct constituting an obstruction of justice.

Petitioner's direct appeal in this case and in the unrelated case from Superior Court in New Castle County were both pending before the Delaware Supreme Court at the time of the decision in *Fuller*. That court did not rule on the *Blakely* issue in Petitioner's appeal from Sussex County – the instant case – but did find that "*Blakely* does not impact Delaware's sentencing scheme" in Petitioner's appeal from New Castle County (*Benge v. State*, slip opinion, p. 3).

19

*D). The TIS Requirement Of "Reasons" To Enhance A Sentence Violates The 6th Amendment*

*1).    The Delaware Court's Focus – Appellate Review And 6th Amendment Formalism*

In the sentencing cases involving the SENTAC guidelines that it has considered since 1984, the primary focus of the Delaware Supreme Court has fallen on the issue of the scope of appellate review – not the function of the 6th Amendment jury trial right.  Rather than seeking to define the role of jury trial protection in sentencing, that court's Administrative Directive Number Seventy-Six, and the decisions in *Mayes v. State*, *Siple v. State,* and *Fuller v. State* represent a seventeen year history of the Delaware Court retailing the principle of a limited scope of appellate review.

As *Fanfan* makes abundantly clear, however, the question of the scope of appellate review is is significantly removed from, if not totally irrelevant to, the issue of whether an enhanced punishment has been imposed in a manner inconsistent with the 6th Amendment.  The scope of review in Federal sentencing cases pre-*Booker/Fanfan* was limited. See, e.g., *Koon v. United States*, 518 U.S. 81 (1996).  The standard of review of the state of Washington in *Blakely* appears to have been somewhat

20

more expansive, if not plenary.    Yet, the *sentence enhancement procedures* in both systems offended the 6th Amendment.

That part of the Delaware Court's jurisprudence on the SENTAC/TIS sentencing scheme which limits appellate review is therefore of no constitutional moment in applying *Apprendi/Blakely* as the 6th Amendment principle in those cases is not predicated upon the nature of the appellate system in a given judicial structure. SENTAC cannot constitutionally function as a 6th Amendment gatekeeper: whether or not SENTAC has fulfilled its statutory mandate to recommend an appellate procedure, *Siple v. State, supra*, does not determine the applicability *Apprendi/Blakely*. The scope of appellate review tail does not wag the 6th Amendment jury trial dog.

After the pronouncements on appellate review, what remains in the Delaware Court's SENTAC/TIS cases is that court's labeling of the SENTAC guidelines as "voluntary and non-binding" and of the Delaware sentencing system as "indeterminate" together with the statements in *Benge v. State* (appeal order, p. 3) and *Fuller v. State* (slip opinion, p. 15) that a Delaware sentencing judge need only to state "reasons" for imposing an out of guideline sentence.    For purposes of applying *Blakely* to the sentences imposed on Petitioner in this case, the core issue is

21

whether the authority of a Delaware judge to enhance a sentence under §4204 (m) operates in a manner consistent with the 6th Amendment trial by jury - not whether the labels used by the Delaware Court are accurate.

## *2). 6th Amendment Formalism Does Not Trump Apprendi-Blakely*

The right of jury trial is not a "mere procedural formality but a fundamental reservation of power" meant to ensure the ultimate control of the people in the judiciary. *Blakely*, slip opinion, p. 9. *Apprendi*, according to the *Blakely* court, reflects the need to give "intelligible content" to the substantive right of trial by jury. *Id.* The essence of Blakely is that judicial fact-finding to support an offense enhancement is "*...only constitutional when that finding raises the sentence beyond the sentence that could have lawfully been imposed by reference to facts found by the jury or admitted by the defendant.*" Stevens, Justice, dissenting in *Fanfan*, slip opinion, p.7 (emphasis in original).

In any *Apprendi/Blakely* analysis, labels are "irrelevant," *Apprendi*, 530 U.S., at 478, and are not a "principled basis" of discrimination among sentencing systems. *Booker*, slip opinion, p.6:

> If a state makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact – no matter how the State labels it – must be found by a jury beyond a reasonable doubt.

22

*Ring v. Arizona*, 536 U.S.584 (2002), at 602, quoted in *Booker*, slip opinion, p.6-7.

Nor is it of significance whether the judge's authority to enhance a sentence depends upon finding a specific fact, one of several facts, or *any* aggravating fact – that the judge acquires the authority to enhance a sentence only upon the finding of a fact beyond those found by the jury brings the *Apprendi/Blakely* rule into play.  *Blakely*, slip opinion at p. 9. *Apprendi* and *Blakely* are explicit on this point: when it comes to squaring the operation of a given sentencing system with the right to trial by jury, labels – that is, form over function – will not suffice.

The Delaware Court's use of the labels "voluntary and non-binding' and "indeterminate" (the latter having appeared for the very first time in Delaware jurisprudence in *Fuller v. State*, a post-*Blakley* but pre-*Booker* decision) does nothing to resolve the issue in this case.   That issue hinges on the limitations and conditions placed on the authority of a Delaware judge to enhance a penalty.

### *3). §4204 (m) Restricts The Sentencing Power Of Delaware Judges*

The key to the applicability of *Apprendi/Blakely* to the enhanced sentences imposed on Petitioner is obviously the manner in which 11 Del. C. §4204 (m) permits a sentencing judge to exercise the sentencing

23

power granted by 11 Del. C. §4205. In other words – does §4204 (m) limit the power of the sentencing judge in such a manner that additional, non-jury found facts are necessary and used to vest the judge with the authority to impose the enhanced sentence imposed upon Petitioner?

The short answer here to that question is found in the existing opinions of the Delaware Supreme Court: "The sentencing judge need only state his reasons for imposing a sentence outside the guidelines," *Fuller v. State*, slip opinion, p. 15; "...the trial court must explain its reasons, but it is authorized to exceed the SENTAC guidelines..." *Benge v. State*, appeal order, p.3. It is of overriding importance in this case that the pronouncements of the Delaware Court as to the necessity for a statement of reasons apply only to *enhanced* sentences. According to that Court, no reasons need be given for a sentence *within* the guidelines – the same conclusion one is led to by a straightforward reading of § 4204(m): the "reasons" must accompany – "shall [be] set forth on the record" – the sentence enhancement and therefore operate authorize it..

The Delaware Supreme Court has twice since *Blakely* made quite clear that a Delaware sentencing judge must both *have* and *state* reasons as a predicate to lawfully imposing a enhanced sentence. Those "reasons" are the key to the operation of § 4204 (m) and when, as here,

24

those "reasons" consist of findings of fact beyond those made by a jury, the 6th Amendment principle of *Apprendi/Blakely* is offended. See *Booker*, slip opinion, pp. 10 – 11. That §4204 (m) and the Delaware Court label this sentence enhancement predicate as "reasons" rather than "facts" is not constitutionally significant. *Blakely* pp. 6-7. A fact no matter how labeled is still a fact for purposes of *Blakely*. *Fuller* and *Benge* make the point directly: the judge acquires the authority to impose an out of guideline sentence only upon findings beyond a jury verdict – "reasons".

Repeated use by the Delaware Court of the terms "voluntary" and "non-binding" with respect to a sentencing judge's application of the TIS/SENTAC presumptive sentences suggests that a judge may freely depart from these guidelines to impose any sentence within the legislatively fixed maximum. However, *Fuller* and *Benge* make clear that a sentencing judge is limited by the statement of "reasons" dictate of §4204 (m) and derives the authority to enhance a sentence from those "reasons," not the jury verdict alone. No reasons, no enhancement.

Has the Delaware Supreme Court at any point after the 1990 enactment of §4204 (m) construed that statute as not *requiring* the presence and statement of reasons for sentence enhancement? *Mayes v.*

25

*State, supra,* might be read as suggesting that the failure to state reasons

for a sentence enhancement affords no right to appellate relief:

> §4204 (m) may not be reasonably construed as a mandate or basis
> for reversible error since we have previously ruled that the
> SENTAC guidelines provide "no basis for appeal."

> *Mayes v. State,* supra, 604 A.2d, at 846

But two distinct considerations militate against reading *Mayes* as

dispensing with the requirement that reasons be stated in connection with

a sentence enhancement or as qualifying the rulings in *Fuller* and *Benge.*

First, *Mayes* is primarily, if not exclusively, a scope of appellate review

case. Just as the four pre-*Booker* decisions of the Supreme Court cited in

that opinion did not anticipate the role of the 6th Amendment jury trial

right in sentencings (see *Booker,* slip opinion at pp. 15-17), the Delaware

Court did not anticipate *Blakely* by twelve years in *Mayes* (or by 17 years

by its Administrative Directive Number Seventy-Six).

More importantly, however, the date of the defendant's offense in

*Mayes* was October-November of 1988 and the guilty plea in that case

was entered in April of 1990 – *Mayes* is, simply stated, a *pre*-TIS, *pre*-§

4202 (m) case by a margin of 20 months.  *Obiter dictum* has no

precedential value in Delaware cases dealing with sentencing law. *Evans*

II, slip opinion at p. 37.

26

In light of the clarity with which the Delaware Supreme Court subsequent to *Mayes* has stated the necessity for a sentencing judge to set forth reasons for any sentence enhancement in *Benge* and *Fuller*, the holding in *Mayes* cannot be deemed a contrary controlling holding.

### 4). Reading §4204(m) As Limiting The Sentencing Power Is In Accord With Established Delaware Principles Of Statutory Construction

It is not by distortion of meaning or a strained reading of §4204 (m) that Petitioner suggests that statute as one that must be read as a limitation on the sentencing power of Delaware judges.  Such a reading does no violence to  established rules of statutory construction adhered to by Delaware's highest court.

Those principles are succinctly set forth in  *Snyder v. Andrews*, 708 A.2d 237 (Del., 1998).  Delaware sentencing statutes present no basis for judicial interpretation unless an ambiguity is present in the language of the statute itself.  An ambiguity arises only if the language used in a statute is reasonably susceptible of different conclusions or interpretations or if the literal interpretation of the words in a statute would lead to an unreasonable result.

Applying these principles of construction without sophistry leads to the reading of §4204 (m) as a legislative directive that the SENTAC

27

guideline sentence be imposed in the absence of stated reasons justifying an enhanced sentence. Plainly, the reading Petitioner suggests of §4204 (m) as limiting the sentencing power of Delaware judges conforms to the rules of statutory construction applicable to Delaware sentencing laws.

### 5). *The Rule Of Lenity And Doctrine Of Constitutional Doubt*

The right to trial by jury is fundamental. *Blakely*, slip opinion, p. 9. The rule of lenity counsels construction of a statute to require a greater, not lesser, protection of the 6th Amendment right to trial by jury. *United States v. Navarro*, 145 F.3d 580 (3rd Cir., 1998), at 587.

Such a construction does not conflict with the limitation of the rule of lenity expressed in 11 Del. C. §203, for that statute applies only to Part I of the Delaware Criminal Code, not Chapter 42 wherein the sentencing statutes are found.

Further, the doubtful constitutional questions that would arise under *Apprendi/Blakely* in the application of its "bright line rule" (*Blakely*, slip opinion at p. 12) if §4204 (m) was to be read as not subject to the jury trial right are avoided by the reading of that statute advanced by Petitioner. The doctrine of constitutional doubt militates for a reading of §4204 (m) that would include the right to trial by jury. *Jones v. United States,* 526 U.S. 227 (1999).

28

### *6). TIS Compared To The Washington And Federal Systems*

### *a). The Washington System Compared*

As described in Blakely, the features of the Washington sentencing system that were relevant to a 6th Amendment analysis are as follows: a "shall not exceed" maximum term of incarceration fixed by stature; a "standard range" of sentences – the guideline penalties – that are also statutory; a provision that a judge may exceed the standard range only if "substantial and compelling reasons" justify an "exceptional sentence;" and a statutory listing of non-exclusive aggravating factors justifying sentence enhancement. When a judge imposes an exceptional sentence, findings of fact and conclusions of law must be set forth. In *Blakely*, the judge "could not have imposed the exceptional...sentence on the basis of the facts admitted in the guilty plea." *Blakely*, slip opinion p. 7.

Pursuant to the Washington sentencing scheme, and following a three day non-jury sentencing hearing, the defendant in *Blakely* received a prison sentence of 90 months (37 months above the standard sentence maximum) based upon the trial judge's finding of "deliberate cruelty" in the commission of the offense of kidnapping second degree.[8]

---

[8] *Blakely* makes the point that the sentence imposed by the Washington trial court is an example of the conversion of a "separate offense into a sentencing factor." See *Blakely*, slip opinion page 11 and footnote 11. This is because the sentence imposed

29

### b). The Federal System Compared

Petitioner will not presume to tell this Court how the Federal sentencing system operates, but *Booker* makes clear that under the system in place prior to that decision a Federal judge could enhance a sentence above the Federal Sentencing Commission guidelines only where there existed an aggravating or mitigating circumstance of a kind or to a degree not adequately taken into account by the guidelines. *Booker*, slip opinion p. 9.

In *Booker*, the defendant was sentenced to 30 years imprisonment based upon the sentencing judge's post-trial finding that the defendant had possessed a certain quantity of an illegal drug and obstructed justice. That sentence was eight years above the sentence which the jury verdict alone would have supported, *Booker*, slip opinion p. 2.

### c). The TIS System Compared

As in the Federal commission model, SENTAC has prescribed "presumptive" sentences that its guidelines declare to be appropriate for

---

in *Blakely* for second degree kidnapping with the "deliberate cruelty" enhancement was essentially the same as for first degree kidnapping. Petitioner's case is another stark example of this phenomenon: after a non-jury proceeding of approximately 30 minutes, the SENTAC burglary third degree Class E felony presumptive sentence of 6 months at Level IV (home confinement or a half-way house) was exceeded by one full "accountability level" to imprisonment and the time period of the punishment was enhanced by *600%* to three years in prison.

30

the "typical criminal case."[9] Those guidelines are referenced in the statute of general application to sentencings - §4202 (m). "Exceptional sentences" departing from the SENTAC presumptive sentences may be appropriate for "substantial and compelling reasons;" sentences within the guidelines require no explanation.  SENTAC has published a non-exhaustive list of both aggravating and mitigating factors in its Benchbook. Those factors were directly incorporated into the first (i.e., 1984) version of §4204 (m).

The TIS scheme contains every feature found by the Supreme Court to be of significance in a 6th Amendment analysis of the determinative Federal and Washington systems. While there is, of course, difference of language, the functional aspects of these three systems for 6th Amendment purposes are indistinguishable.

After a very brief proceeding, Petitioner was sentenced to 3 years in prison for burglary third degree based upon the judge's finding of lack of remorse.   The SENTAC presumptive sentences were six months alternative confinement for the burglary or a year of probation for the unlawful electronic interception.

---

[9] The SENTAC guidelines are set forth in a Benchbook. See footnote 11 and Ap.A23 for relevant excerpts from the Benchbook.

31

**E). The TIS Requirement Of "Reasons" To Enhance A Sentence Violates The 6th Amendment**

The unambiguous statutory mandate requiring a Delaware sentencing judge to state "reasons" for an enhanced sentence places the TIS sentencing system on the *Blakely* side of the *Apprendi* bright line rule. The TIS sentencing scheme is not a true "indeterminate" sentencing system: *Blakely* makes clear that the term "indeterminate" applies to that type of system wherein the sentencing judge has unfettered discretion to impose a sentence within a statutory range without the necessity to find facts or state reasons as a predicate to sentencing enhancement authority. *Blakely* cites the system employed in New York in *Williams v. New York,* 337 U.S. 241 (1941) as a true "indeterminate" scheme: in *Williams*, the sentencing judge was empowered to impose a penalty of death without the statement of any reason at all. *Blakely*, slip opinion, p. 8. That in a sentencing system such as that in *Williams* a judge might *choose* to state reasons to justify a particular sentence is an entirely separate matter from whether the authority to enhance a sentence is dependent upon those reasons.

The amendment of §4204 (m) in the TIS Clarification Act of 1990 eliminated even the modest *unfettered* discretion of a Delaware judge to enhance a sentence 5% above the maximum SENTAC presumptive

32

sentences. Before that 1990 amendment, a judge was completely free to enhance a sentence to 30% of the allowable sentence without stating any justification whatsoever. Post-TIS Clarification Act, however, the judge was given full discretion only within the guideline range - "reasons" are required in the case of *any* departure from the SENTAC "presumptives."

This necessity for "reasons" to enhance is both an significant legislative limitation on the sentencing power and the *Blakely* breakpoint for purposes of applying the *Apprendi* rule. However inartfully expressed, however lacking in direct declaration, however unlike the language employed in other sentencing schemes, §4204 (m) is nonetheless the command of the Delaware General Assembly that the SENTAC guideline sentences *shall* be imposed unless reasons are stated for a departure. The authority of a Delaware judge to exceed those guidelines derives from the existence and statement of those "reasons" in a given case – without such reasons, the judge's power to impose a sentence is limited to the SENTAC presumptive sentences. Although a judge in an indeterminate sentencing regime might find certain facts to be of particular importance with respect to a given sentence, the difference in Delaware is that §4204 (m) makes the judicial power to enhance *dependent* upon the existence of "reasons."

33

To read §4204 (m) otherwise stultifies the General Assembly's clear intent to "statutorily revise" Delaware's pre-1984 discretionary sentencing system, see *Evans* II, slip opinion p. 29, and to emplace a sentencing system that reins in the unlimited discretion of judges. The stated intent of the Delaware legislature was to create a statutory sentencing scheme the purpose of which was "...ensuring certainty and consistency of punishment...", §1, 1984 SENTAC Act, and to define the conditions of aggravation under which an out of guideline sentence may be imposed. *Id*, §2. It is not dispositive that the Delaware legislature has not expressly stated that the SENTAC presumptive standards are "mandatory" for neither has the legislature termed the guidelines "advisory." Rather, the clear legislative direction is that the SENTAC presumptive sentences *shall* be imposed unless there is a statement of reasons not to do so. An indeterminate system – the core of which is broad judicial discretion in sentencing – is antithetical to the General Assembly's stated end. That the Delaware legislature might have been clearer does not alter the meaning of §4204 (m).

A critical question here is this: what sentence would the facts found in the jury verdict alone have supported? The answer is found in §4204 (m) as explained by *Fuller* and *Benge*: without a statement of

34

"reasons" for an enhanced sentence only a sentence within the SENTAC guidelines would be permissible; "the sentencing judge need only state his reasons for imposing a sentence outside the guidelines" [citing §4204(m)]. *Fuller v. State, supra,* (slip opinion p.15); accord, *Benge v. State, supra* (appeal order p.3): "the court must explain its reasons" for a sentence enhancement.

In Petitioner's case, the sentencing judge in fact went beyond the facts found by the jury to establish the reasons for enhancing Petitioner's sentence: "This sentence is outside the guidelines because I find that there is a lack of remorse among other things." (Sentencing Proceeding Transcript, Ap., A20-A21).    The sentencing judge also cited "lack of remorse" and "need for correctional treatment" as an aggravating factors in the sentence order although no particulars of the latter enhancing factor were explained. (Sentence Order Ap., A34-A41).    Whatever was intended in theses findings, neither was the product of a jury trial.

What would have happened in Petitioner's appeal to the Delaware Supreme Court if the sentencing judge had failed to state reasons for the enhancement of Petitioner's sentence?  *Fuller v. State*, a post-*Blakely* decision, remanded a sentencing to the trial court as a result of the sentencing judge's failing to state adequate reasons for exceeding the

35

SENTAC guideline: such an enhancement could not be based upon an alleged suborning of perjury absent "independent findings necessary to establish willful impediment to or obstruction of justice, or an attempt to do the same through the perjury of another witness." *Fuller v. State*, *supra*, slip opinion p. 18. According to the Delaware Court in *Fuller*, the sentencing judge's authority to enhance a sentence requires not only reasons but "specific facts" sufficient to support the enhancement – in *Fuller*, that meant "independent findings" clearly beyond the scope of anything that would have been presented to the jury at a trial in the guilt-innocence phase of a trial. *Fuller*, slip opinion, p 18.   In a true "indeterminate" system, the adequacy of reasons for a sentence "enhancement" would not arise as an issue because the sentencing judge would have the power to sentence more severely based upon "no reason at all." *Williams v. New York*, *supra*.

In an indeterminate sentencing system, *Fuller* would not have been reversed because there would be no question of enhancement above an ascertainable level of sentence, e.g., the TIS presumptives.. Yet, the Delaware Court stated the issue in *Fuller as* follows: "The question before us is whether there was competent evidence, and whether the *requisite findings* appear in the record, to support the *trial judge's*

36

*decision to enhance* Fuller's sentence." *Fuller*, slip opinion, p.15 (emphasis supplied).

*Fuller* serves to illustrate the 6th Amendment problem with the approach taken by the Delaware Court and why that approach is irredeemably in conflict with the *Apprendi/Blakely* holdings. *Fuller* seeks to ground its result on *United States v. Dunnigan*, 507 U.S. 87 (1993), a decision that upheld enhancement of a sentence based upon the defendant's perjury in trial testimony. However, the result in *Fuller* was not mandated by *Dunnigan* and *Booker* holds that the reach of *Dunnigan* is "limited." So while the Supreme Court in *Booker* was seeking to confine *Dunnigan* to sentences within the guidelines ("applying *Blakely* to the Guidelines would invalidate a sentence that relied on such an enhancement if the resulting sentence was outside the range authorized by the verdict," *Booker*, slip opinion, p.15), the Delaware Court was applying *Dunnigan* in *Fuller*, an *enhanced* sentence case. It is not readily apparent how *Fuller* can be reconciled with *both Dunnigan* and *Apprendi/Blakely/Booker*.[10] The bright line of *Apprendi/Blakely* is difficult to discern in its applications by the Delaware Court.

---

[10] Uncertainty has been the hallmark of the Delaware Court's result in sentencing cases of recent date. In addition to the constitutionally muddled rationale in *Fuller, Evans* II overruled *Evans v. State*, _ A.2d_ No. 67, 2004, November 23, 2004 (Del.)

The TIS sentencing system and §4204(m) might not cross the *Apprendi/Blakely* bright line if the reasons relied upon for sentence enhancement did not constitute "facts" – a theoretical but not necessarily practicable possibility; or if "reasons" to justify a sentence were statutorily required for *all* sentences and not just departure from the SENTAC guideline sentences. But that it could be imagined how TIS might be altered to square with *Apprendi/Blakely* does not make it so. Where "reasons" are necessary to an enhancement of a sentence above an otherwise ascertainable level (i.e., the SENTAC "presumptive sentences") and those reasons consist of facts found by a judge alone, "...the jury has not found all of the facts which the law makes essential to the punishment...and the judge has exceeded his proper authority." *Booker*, slip opinion, p.7.

In sentencing Petitioner, the trial judge tied the enhancement of the SENTAC presumptive sentence to the specific §4204 (m) "reasons" stated on the record – the alleged "lack of remorse" and finding of "need for correctional treatment." Insofar as the record reflects, absent the

---

("*Evans* I") on the definition of a "life sentence with the possibility of parole." *Evans* I declared its reading of the Delaware statutes relevant to that definition to be the only "principled" reading possible. Four and a half months later, the Delaware Court applied an entirely new set of principles to reverse itself in *Evans* II. Such relativist reasoning also produced *Fuller* in October of 2004.

judge's factual findings, there was no reason why the SENTAC guideline sentence of six months quasi-incarceration or probation of a year would not have been imposed. *Cf., Fuller*, slip opinion, p. 18 – the enhancement in *Fuller* would not have been imposed but for the perjury.

TIS labels sentence enhancing facts as "reasons" – the "reasons" used here to enhance Petitioner's sentence were not tried to a jury or admitted by Petitioner at the time of his sentencing. The TIS sentencing system as applied to Petitioner violated the 6th Amendment. That the pendulum of favor may now have swung away from determinate sentencing does not operate to cure the constitutional problem with TIS. As in *Blakely* and *Booker*, a resentencing within the SENTAC "presumptive sentence" is mandated.

39

## II. THE SENTENCING JUDGE'S USE OF PETITIONER'S LETTER TO THE DELAWARE SECRETARY OF EDUCATION TO ENHANCE A CRIMINAL SENTENCE VIOLATED THE FIRST AMENDMENT RIGHT TO PETITION

Quite apart from the issue of whether the Delaware sentencing scheme is unconstitutional as applied to Petitioner, this case presents the question of whether the sentencing judge employed a constitutionally impermissible factor in sentencing Petitioner to imprisonment. Simply stated, Petitioner was sentenced to three years in prison rather than to six months of alternative confinement or probation because he exercised the right to petition a state governmental official with respect to a grievance. It is unprecedented and wholly inconsistent with the First Amendment for a sentencing judge to retaliate against a defendant *to the extent of three years imprisonment* for saying something to a public official that the judge does not like. Such action is prohibited by the First Amendment and *habeas corpus* relief by this Court is necessary to remedy the Constitutional wrong below.

That Petitioner's February 9, 2004 letter to the Delaware Secretary of Education constitutes a "petition" within the meaning of the First Amendment is clear, Petitioner submits, by whatever criteria are employed to define "petition" for purposes of the First Amendment. The letter set out a complaint about a state employee's misconduct; that

40

misconduct – illegal drug use by a teacher of first and second grade special education students - was a legitimate public concern; and the complaint was addressed to a public official in a position to respond to the substance of the Petitioner's complaint.

### A). Protected First Amendment Activity As A Sentencing Factor

As noted in *United States v. Lemon*, 723 F.2d 922 (D.C. Cir., 1983), First Amendment rights have not received much attention in sentencing cases.[11] Yet despite a dearth of case law, the District of Columbia Court of Appeals was able to straightforwardly hold that:

> There can be no doubt that the constitution continues to operate, even after a valid conviction, in the sentencing process....[T]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort. [citing *Bordenkircher v. Hayes*, 434 U.S. 357 (1978)]... [a] court may not punish an individual by imposing a heavier sentence for the exercise of first amendment rights.
>
> A sentence based to any degree on activity or beliefs protected by the first amendment is constitutionally invalid.
>
> *United States v. Lemon, supra,*
> 723 F.2d, at 937-938.

The right of the people "to inform their representatives in government of their desires with respect to the passage or enforcement of laws" is fundamental. *Eastern RR Presidents' Conference v. Noerr Motor*

---

[11] The evident lack of the collision of First Amendment rights and the sentencing power may be a result, Petitioner submits, of the hesitancy of the judiciary (with exceedingly rare exceptions) to directly link a harsh criminal sentence to what is clearly constitutionally protected activity.

41

*Freight, Inc.*, 365 U.S. 127 (1961), at 139. The First Amendment creates an immunity from retaliation by government officials hostile to the content of a citizen's petition. *Id.* While the *Noerr-Pennington* doctrine [*Eastern RR Presidents' Conference v. Noerr Motor Freight, Inc.*, *supra*; and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965)] had its genesis in commerce cases, that does not limit its application to such controversies and the "right to petition immunity" concept has been extended beyond such matters. *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151 (3rd Cir., 2001). There is now no doubt that the right to petition state agencies, as well as courts, for both affirmative relief and in opposition to proposed action is part of the First and Fourteenth Amendments. *Herr v. Pequea Township*, 274 F.3d 109 (3rd Cir., 2001). Such right is retained by persons held in state custody. *Allah v. Sieverling*, 229 F3d 220 (3rd Cir., 2000).

Those cases that do in fact deal with the protection to be afforded to the exercise of First Amendment rights in the sentencing process include *United States v. Rosenberg*, 806 F.2d 1169 (3rd Cir., 1986); *United States v. Lemon*, *supra*: and *O'Brien v. United States*, 376 F.2d 538 (1st Cir., 1967), *vacated other grounds*, 391 U.S. 367 (1968).

42

In *Rosenberg,* the Third Circuit upheld a criminal sentence that was attacked on appeal as a result of judicial bias against and retaliation for the defendants' political philosophy.

The defendants in *Rosenberg* were convicted of conspiracy, weapons offenses, and possession of explosives; during their trial, they had espoused their political views, which were apparently either Marxist or communist, to the jury as an integral part of their *pro se* defense. The issue of protected First Amendment political activity arose on appeal when the defendants alleged that the sentencing judge reacted "adversely" to the defendants' statements advocating "revolutionary social change," 723 F.2d, at 1175, and imposed sentences "at least partly" in retaliation for the defendants' political views.

On appeal, the Court found that the trial judge did not demonstrate bias against the defendants and that "in the context of the sentencing minutes," the sentencing judge's remarks addressed to the defendants political views relating to their "...lack of remorse for their conduct and *declared* intention to *continue* their activities once released." 723 F.2d, at 1174 (emphasis supplied). The Third Circuit found that the defendants had expressed an unqualified lack of remorse at sentencing (723 F.2d, at 1175) and that the sentencing judge had expressed his concerns as to the

43

likelihood of the defendants being successfully rehabilitated. (723 F.2d, at 1180).

Significantly, the Court in *Rosenberg* found no nexus between the defendants' political beliefs and the sentences meted out by the trial court.

In *United States v. Lemon, supra*, the District of Columbia Circuit vacated a sentence that it found to have been based at least in part on protected political activity.

The defendant in *Lemon* entered a plea of guilty to interstate transportation of payroll checks bearing forged signatures. Prior to the defendant's sentencing, the government aggressively sought to obtain the defendant's cooperation with an on-going investigation into the activities of a politically radical group about which the government thought the defendant to have knowledge. The defendant denied membership in the group under investigation or knowledge of its activities or members. When it became apparent that the government intended to use the defendant's failure to cooperate to seek a harsher sentence, the defendant filed a motion seeking to bar the use of his political associations as a sentencing factor. The District Court denied the defendant's motion.

44

On appeal, the Court held that a sentencing judge may properly consider whether a defendant has cooperated with law enforcement authorities failed to do so. At the same time, however, the Court ruled that as a matter of First Amendment law, in the absence of any evidence of a link between the defendant and the illegal activities of the radical group, the defendant's alleged association with the group was an improper sentencing factor. The Court noted the "substantial weight" given by the trial court to the defendant's association with the group and found the sentence imposed to be an "attempt to punish guilt by association." See 723 F.2d at 929-930; 941.

In *O'Brien v. United States, supra*, while the First Circuit noted that the First Amendment does not give a person "*carte blanche*" to invoke free speech to violate the law, that Court nonetheless remanded a draft card burning case for resentencing. The Court found that the severity of the sentence may have been impermissibly linked to the defendant's protected anti-war speech.

## B). *It Is Constitutionally Impermissible To Link An Enhanced Sentence To Protected Activity*             -

The distinction between *Rosenberg*, on the one hand, and *Lemon* and *O'Brien*, on the other, was the perception by the appellate court of a direct relationship between the sentence imposed and protected First

Amendment activity in the latter two cases and no such link in *Rosenberg*. The record in *Rosenberg* contained no indication that the sentencing judge had sentenced the defendants more harshly as a result of protected activity. 723 F.2d, at 1174. Although the sentencing judge apparently strongly disagreed with the legitimacy of the defendants' political beliefs, any criticism of their views did not translate into an enhanced sentence. However, in *Lemon* and *O'Brien*, the appellate courts were able to discern that the sentencing judges in those cases had linked the criminal penalties meted out to protected activity.

A further similarity between *Lemon* and *O'Brien* is the coercive purpose underlying the government's effort to use protected activities to enhance the punishment imposed in each of those cases. In *Lemon*, the government sought to secure the defendant's cooperation with its investigation into radical political activity and argued for an enhanced sentence when rebuffed by the defendant. In *O'Brien*, the government's use of anti-war speech in seeking an enhanced criminal penalty was clearly designed to chill the expression of such views.

As in *Lemon* and *O'Brien*, the sentencing judge in Petitioner's case directly linked Petitioner's enhanced sentence to the exercise of his First Amendment right to petition. A sentencing judge is obliged under

46

Delaware law [11 Del. C.§ 4204 (m)] to state "reasons" for a sentence that exceeds the SENTAC "presumptive sentences." (See Argument I in this brief; in short, a Delaware judge may not enhance a sentence above established guidelines in the absence of facts justifying an exceptional sentence and a statement on the record of those facts). In sentencing Petitioner to three years imprisonment rather than the presumptive sentence of 12 months probation for the unlawful electronic interception offense, the sentencing judge stated the following: "This sentence is outside of the guidelines because I find there is a lack of remorse among other things." (Sentencing Transcript, Appendix A22). In rejecting Petitioner's in-court declaration accepting responsibility for his actions and his expression of "deep, deep regret" (Sentencing Transcript, Appendix A21), the sentencing judge found that "...the letter to the Secretary of the Department of Education about Mr. Smith contradicts some of this statement of remorse." (Sentencing Transcript, Appendix A21). The sentence order entered by the Superior Court after the March 19, 2004 sentencing proceeding also cited the aggravating factor of "need for correctional treatment" although no accompanying explanation of this sentence enhancing factor appears in the record.

The import of the sentencing judge's remarks at sentencing is clear and unambiguous – the enhanced sentence resulted directly from Petitioner's letter to Secretary Woodruff.

As in *Lemon* and *O'Brien,* the State had a coercive purpose in arguing for an enhanced sentence for Petitioner – in fact, a multi-layered coercive purpose.  First, the prosecutor made plain at the outset of his March 19, 2004 remarks to the sentencing judge:  "...the State agrees with the downstate Court...the Court downstate was not happy with the outcome of that trial, it is internally inconsistent how that verdict was arrived at..." (Sentencing Transcript, Appendix A20).  The prosecutor was seeking further punishment in New Castle County for the Sussex County offenses in spite of the fact that the maximum penalties had previously been imposed in the prior case.  (By way of further explanation, Petitioner was charged in Sussex County with attempted murder, weapons possession offenses, and other crimes carrying maximum penalties of life in prison plus 146 years; however, Petitioner was convicted by a jury only of assault 2nd° and two misdemeanors.  Although the judge in Sussex County imposed the maximum possible sentences, those totaled only 9 years and 30 days in prison.  The New Castle County prosecutor had not been involved in the Sussex County

48

case but obviously had been informed of the downstate court's displeasure with the jury verdict in that case by means not readily apparent in the record).

The prosecutor also viewed the letter to Secretary Woodruff as a violation of the "no-contact" order that was part of a sentence order entered in Sussex County. However, rather than file a motion with the Sussex court regarding the alleged no-contact violation or charge Petitioner with a separate offense in connection therewith (11 Del. C. § 1271 creates the offense of "criminal contempt" of a court order, a Class A misdemeanor with a maximum penalty of one year in prison and a SENTAC "presumptive sentence" of 12 months probation). Following formal procedures would involved adversarial proceedings with the protections that accompany the same; by arguing the no-contact violation to the New Castle County court, the prosecutor took a procedural shortcut and quite possibly obtained more severe penalties against Petitioner in the enhanced unlawful electronic interception sentence than would have been realized otherwise.

Finally, the prosecutor had the additional motivation of stifling Petitioner's criticism of the Department of Justice's conduct in the

Sussex County case, a circumstance of which Petitioner also complained in his letter to Secretary Woodruff.

At Petitioner's March, 2004 sentencing, the prosecutor also sought to impugn Petitioner's motive in writing to Secretary Woodruff by questioning the validity of the drug screen test results enclosed with Petitioner's letter. According to the prosecutor, Petitioner reported to Secretary Woodruff "...that there's a possibility of marijuana in his system, when Mr. Smith was tested. As pointed out in the PSI [presentence investigation report], the doctor testified in trial that it was very likely that that [sic] was a false positive." (Sentencing Proceeding Transcript, Appendix, A 21).[12]. The obvious suggestion by the prosecutor was that Petitioner's letter to the Department of Education unfairly distorted the evidence presented at trial in order to have it reflect as badly as possible on Mr. Smith. This was cited for the purpose of establishing continuing ill-will on Petitioner's part.

Although on appeal to the Delaware Supreme Court the State did not repeat the "false positive" argument, it is nonetheless in the sentencing transcript; lest the State raise that same argument in this

---

[12] It is not apparent from the sentencing transcript why the prosecutor would rely upon the presentece report for the content trial testimony when the transcript of that trial formed the basis for the indictment in this case. See Docket Entries Nos 17 and 18, Appendix A3.

50

Court, Petitioner has included in the Appendix to this brief the following:

- ❖ Beebe Hospital laboratory report of October 20, 2003;

- ❖ Medical treatment reports of Drs. Thomas R. Shreeve and Seble Z. Gabre-Madhin; and

- ❖ Transcript of redirect testimony of Dr. Gabre-Madhin as a witness for the State on August 19, 2003 at Petitioner's Sussex County trial that includes the following question by the prosecutor and response by Dr. Gabre-Mahdin:

Q: The positive test for marijuana, does that give you any idea when the drugs had been consumed?

A: No, not even one hundred percent if a drug has been consumed. There are false positives for any test.

No principled reading of the medical reports (which both unequivocally note a positive drug screen for marijuana) and the trial testimony of Dr. Gabre-Madhin leads to the conclusion that the doctor indicated in any manner that the Smith drug screen was "very likely" a false positive.

### C). Enhancement Of Petitioner's Sentence Was Directly Linked To Protected Activity

The nexus between the enhanced penalty received by Petitioner and the letter to Education Secretary Woodruff is manifest on the record of this case. The sentencing judge specifically linked the enhanced sentence to the Petitioner's letter (Sentencing Transcript, Appendix A21

– A22).  Petitioner punishment was increased as a direct result of First Amendment activity and such a result is repugnant to the Constitution.

## <u>Conclusion</u>

The conclusion of the Delaware Supreme Court that "Blakely does not impact Delaware" is simply wrong as a mater of constitutional law. Enhancement of the SENTAC presumptive sentence applicable to Petitioner was dependent upon the finding of facts other than those that were inherent in Petitioner's plea of guilty. As those facts were neither tried to a jury nor admitted by Petitioner, the sentence was imposed in violation of the Sixth Amendment.

In addition, the record in this case establishes unequivocally that Petitioner was sentenced to three years imprisonment as a result of his letter to Secretary of Education Woodruff. Such a sentence cannot be permitted to stand if the First Amendment right to petition is to have intelligible content.

A writ of habeas corpus should be granted by this Court conditioned upon a resentencing within such time as the Court shall fix.

Date: July 20, 2005

John H. Benge, Jr.
Sussex Correctional
Inst.
P.O. Box 500
Georgetown, DE 19947