# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JOHN H. BENGE, JR.,      )
     *PETITIONER*      )
               )        05 - 55 ₽
               )
     *v.*           )    NO. _____, 2005
               )
RICK KEARNEY, WARDEN   )
SUSSEX CORRECTIONAL     )
INSTITUTION,          )
     *RESPONDENT*    )
               )

---

### ON PETITION FOR A WRIT OF *HABEAS CORPUS*

---

### APPENDIX TO
### PETITIONER'S BRIEF IN SUPPORT OF A PETITION
### FOR A WRIT OF *HABEAS CORPUS*

---

July 20, 2005

JOHN H. BENGE, JR.
SUSSEX CORRECTIONAL
          INSTITUTION
P.O. BOX 500
GEORGETOWN, DE 19947

2005 AUG -1  AM 11:18   DISTRICT OF DELAWARE

## *Appendix Table Of Contents*

Docket Entries------------------------------------------------------------ A1

Indictment--------------------------------------------------------------- A6

Petitioner's February 9, 2004 Letter To
Delaware Secretary Of Education Woodruff
(enclosing laboratory test results, physician treatment
reports, and records certification)----------------------------------- A8

Transcript Of March 19, 2004
Sentencing Proceeding-------------------------------------------------- A19

SENTAC/TIS Sentencing Guidelines
(Excerpts From SENTAC Benchbook)------------------------------ A23

Sentence Order Of March 19, 2004--------------------------------- A33

Petitioner's Brief On Direct Appeal To The
Delaware Supreme Court----------------------------------------------- A41

Petitioner' Reply Brief On Direct Appeal--------------------------- A54

Trial Testimony Of Dr. Seble Z. Gabre-Mahdin
(Redirect Examination, Trial Transcript Of Sussex
County Trial, August, 2003, Transcript Volume B,
Pages 216 – 221)-------------------------------------------------------- A64

```
                   SUPERIOR COURT CRIMINAL DOCKET              Page      1
                   ( as of   05/03/2004 )
```

State of Delaware v.  JOHN H BENGE                    DOB: 10/22/1948
State's Atty: DONALD R ROBERTS , Esq.      AKA: JOHN BENGE
Defense Atty: ROBERT M GOFF , Esq.              JOHN BENGE


Assigned Judge:

Charges:

| Count | DUC# | Crim.Action# | Description | Dispo. | Dispo. Date |
|-------|------|--------------|-------------|--------|-------------|
| 001 | 0301005493 | IN03020264W | WIRETAPS | NOLP | 10/06/2003 |
| 002 | 0301005493 | IN03020265W | WIRETAPS | NOLP | 10/06/2003 |
| 003 | 0301005493 | IN03020266W | WIRETAPS | NOLP | 10/06/2003 |
| 004 | 0301005493 | IN03020267W | WIRETAPS | NOLP | 10/06/2003 |
| 005 | 0301005493 | IN03020268W | WIRETAPS | NOLP | 10/06/2003 |
| 006 | 0301005493 | PN03100857 | BURGLARY 3RD | PGLI | 01/13/2004 |
| 007 | 0301005493 | PN03100858 | BURGLARY 3RD | PGLI | 01/13/2004 |
| 008 | 0301005493 | IN03100859 | BURGLARY 2ND | NOLP | 01/13/2004 |
| 009 | 0301005493 | IN03100860 | BURGLARY 2ND | NOLP | 01/13/2004 |
| 010 | 0301005493 | IN03100861 | ATT. WIRETAPS | PG | 01/13/2004 |
| 011 | 0301005493 | IN03101048 | WIRETAPS | PG | 01/13/2004 |
| 012 | 0301005493 | IN03101049 | WIRETAPS | PG | 01/13/2004 |
| 013 | 0301005493 | IN03101050 | WIRETAPS | PG | 01/13/2004 |

| Event No. | Date | Event | Judge |
|-----------|------|-------|-------|
| 1 | 02/10/2003 | INDICTMENT, TRUE BILL FILED.NO 112 | |

```
     INDICTMENT, TRUE BILL FILED.NO 112
     SCHEDULED FOR ARRAIGNMENT AND BAIL REPRESENTATION 02/25/03 AT 9:30
     CASE REVIEW 03/17/03 AT 9:00
2    02/10/2003
     AUTHORIZATION FOR EXTRADITION.
3    02/10/2003
     RULE 9 WARRANT ISSUED.
     02/25/2003                                 REYNOLDS MICHAEL P.
     ARRAIGNMENT/BAIL STATUS/CONTROL FOR REPRESENTATION:  DEF. WAIVED
     READING OF INDICTMENT, PLEA OF NOT GUILTY ENTERED, JURY TRIAL DEMANDED
     03/17/2003                                 ABLEMAN PEGGY L.
     CASE REVIEW CALENDAR:  SET FOR FINAL CASE REVIEW. 4/21/03 @ 9
4    03/17/2003                                 ABLEMAN PEGGY L.
     DISCOVERY ORDER FILED:  STATE MUST PROVIDE OUTSTANDING DISCOVERY W/I
     10 DAYS.  IF STATE FAILS TO COMPLY, COURT WILL CONSIDER REMEDIAL SANC-
     TIONS UPON REQUEST OF DEF. IF STATE DOES NOT COMPLY, DEF SHALL MOVE TO
     COMPEL W/I 5 DAYS FROM DISCOVERY DUE DATE. IF DEF FAILS TO CHALLENGE
     STATE'S FAILURE, DEF IS DEEMED TO HAVE WAIVED OBJECTION TO FAILURE TO
     PROVIDE DISCOVERY. NO FUTURE EVENTS WILL BE CONTD DUE TO STATE'S FAIL-
     URE UNLESS DEF OBJECTS IN TIMELY FASHION.  PARTIES ARE ON NOTICE THE
```

A1

```
                SUPERIOR COURT CRIMINAL DOCKET          Page    2
                    ( as of  05/03/2004 )

State of Delaware v.  JOHN H BENGE                 DOB: 10/22/1948
State's Atty: DONALD R ROBERTS , Esq.     AKA: JOHN BENGE
Defense Atty: ROBERT M GOFF , Esq.             JOHN BENGE

       Event
No.    Date            Event                        Judge
-------------------------------------------------------------------------
       COURT WILL ENFORCE THIS ORDER STRICTLY.
       04/21/2003                              ABLEMAN PEGGY L.
       FINAL CASE REVIEW:  NO PLEA/SET FOR TRIAL 6/24/03
5      04/21/2003
       ORDER SCHEDULING TRIAL FILED.
       TRIAL DATE: 06/24/03
       CASE CATEGORY: _____2
       ASSIGNED JUDGE (CATEGORY 1 CASES ONLY):
       UNLESS THE COURT IS ADVISED WITHIN 2 WEEKS OF THE UNAVAILABILITY
       OF NECESSARY WITNESSES, THE COURT WILL CONSIDER THE MATTER READY
       FOR TRIAL.  ABSENT EXCEPTIONAL CIRCUMSTANCES, RESCHEDULING OR
       CONTINUANCE REQUESTS WILL BE DENIED.
6      05/16/2003
       ORDER SCHEDULING TRIAL FILED.
       TRIAL DATE: 07/15/03
       CASE CATEGORY: #2
       ASSIGNED JUDGE (CATEGORY 1 CASES ONLY):
       UNLESS THE COURT IS ADVISED WITHIN 2 WEEKS OF THE UNAVAILABILITY
       OF NECESSARY WITNESSES, THE COURT WILL CONSIDER THE MATTER READY
       FOR TRIAL.  ABSENT EXCEPTIONAL CIRCUMSTANCES, RESCHEDULING OR
       CONTINUANCE REQUESTS WILL BE DENIED.
7      06/30/2003
       SUBPOENA(S) MAILED.
8      06/30/2003
       STATE'S WITNESS SUBPOENA ISSUED.
       DONNA BENGE    GEORGE LOVETT    EDWARD SMITH
       DET. LEE, NCCPD    PTLM CRESPO, NCCPD    OFFICER DONAHUE, NCCPD
       JOHN BENGE
9      07/10/2003
       TRIAL CALENDAR-CONTINUED. DEFENSE REQUEST.
       DEFENDANT IN OTHER COURT.
10     07/25/2003
       ORDER SCHEDULING TRIAL FILED.
       TRIAL DATE: 09/18/03
       CASE CATEGORY: #2
       ASSIGNED JUDGE (CATEGORY 1 CASES ONLY):
       UNLESS THE COURT IS ADVISED WITHIN 2 WEEKS OF THE UNAVAILABILITY
       OF NECESSARY WITNESSES, THE COURT WILL CONSIDER THE MATTER READY
       FOR TRIAL.  ABSENT EXCEPTIONAL CIRCUMSTANCES, RESCHEDULING OR
       CONTINUANCE REQUESTS WILL BE DENIED.
11     07/30/2003
       SHERIFF'S COSTS FOR SUBPOENAS DELIVERED.
```

A.2

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    3
                      ( as of  05/03/2004 )
```

State of Delaware v.  JOHN H BENGE                    DOB: 10/22/1948
State's Atty: DONALD R ROBERTS , Esq.     AKA: JOHN BENGE
Defense Atty: ROBERT M GOFF , Esq.             JOHN BENGE

```
        Event
No.     Date          Event                              Judge
--------------------------------------------------------------------------
```

12   09/03/2003
        SUBPOENA(S) MAILED.
13   09/03/2003
        CONTINUANCE REQUEST FILED BY D ROBERTS - REF TO JOH - DENIED 09/10/03
14   09/09/2003
        STATE'S WITNESS SUBPOENA ISSUED.
        DONNA BENGE    GEORGE LOVETT    EDWARD S. SMITH
        JOHN BENGE    DET. LEE, NCCPD    PTLM. CRESPO, NCCPD
        OFFICER DONAHUE, NCCPD
16   09/16/2003
        DEFENDANT'S LETTER FILED.
        RE: DEFT IS REQUESTING THAT PROTHO FORWARD THIS LETTER TO THE TRIAL
        JUDGE
17   09/16/2003
        LETTER FROM JUDGE GRAVES TO EILEEN KIMMEL
        AS YOU ARE AWARE, MR.BENGE'S TRIAL HERE IN SUSSEX COUNTY CONSUMED
        SEVERAL WEEKS OF OUR TRIAL CALENDAR. I HAVE BEEN CONTACTED BY
        NCC JUDGES CONCERNING A STATE'S CASE WHICH IS WELL BEYOND THE SPEEDY
        TRIAL GUIDELINES AND IS ON THE TRIAL CALENDAR FOR THE 3RD TIME FOR
        9/18/03. THE STATE HAS REQUESTED A CONTINUANCE OF THAT TRIAL BECAUSE
        THEY CANNOT OBTAIN A TRANSCRIPT OF MR. BENGE'S SUSSEX COUNTY TESTIMONY
        THE STATE BELIEVES THAT THERE IS SOMETHING RELEVANT IN HIS SUSSEX
        COUNTY TESTIMONY WHICH COULD IMPACT THE NCC CHARGES.
        (SEE LETTER FOR REMAINDER)
15   09/22/2003
        TRIAL CALENDAR - JURY TRIAL - CONTINUED - COURT CLOSED DUE TO
        INCLEMENT WEATHER
18   10/06/2003
        REINDICTMENT - TRUE BILL FILED.NO 106
        ARRAIGNMENT AND BAIL STATUS 10/28/03 AT 9:30
19   10/28/2003                          VAVALA MARK STEPHEN
        ARRAIGNMENT/BAIL STATUS HEARING:  DEFENDANT WAIVED READING, ENTERED
        PLEA OF NOT GUILTY, JURY TRIAL DEMANDED.
        SECURED BAIL-HELD              40,000.00
        UNSECURED BOND                17,000.00
20   10/31/2003
        ORDER SCHEDULING TRIAL FILED.
        TRIAL DATE: 01/13/04
        CASE CATEGORY: #2
        ASSIGNED JUDGE (CATEGORY 1 CASES ONLY):
        UNLESS THE COURT IS ADVISED WITHIN 2 WEEKS OF THE UNAVAILABILITY
        OF NECESSARY WITNESSES, THE COURT WILL CONSIDER THE MATTER READY

                              A3
```

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    4
                       ( as of   05/03/2004 )

State of Delaware v.  JOHN H BENGE                    DOB: 10/22/1948
State's Atty: DONALD R ROBERTS , Esq.     AKA: JOHN BENGE
Defense Atty: ROBERT M GOFF , Esq.             JOHN BENGE

        Event
No.    Date            Event                          Judge
---------------------------------------------------------------------------
        FOR TRIAL.  ABSENT EXCEPTIONAL CIRCUMSTANCES, RESCHEDULING OR
        CONTINUANCE REQUESTS WILL BE DENIED.
22   12/03/2003
        STATE'S WITNESS SUBPOENA ISSUED.
21   12/23/2003
        SUBPOENA(S) MAILED.
28   01/06/2004
        SUBPOENA(S) SERVED BY SHERIFF.
29   01/06/2004
        SUBPOENA(S) SERVED BY SHERIFF.
27   01/08/2004
        SUBPOENA(S) SERVED BY SHERIFF.
23   01/09/2004
        MOTION TO DISMISS (LACK OF SPECIFICITY) FILED
        BY ROBERT M GOFF,JR ESQ
        REFERRED TO JUDGE HERLIHY (CALL OF CAL JUDGE)
        SFT 01/13/04
24   01/09/2004
        MOTION TO DISMISS REINDICTMENT FILED
        BY ROBERT M GOFF,ESQ
        REFERRED TO CALL OF CALENDAR JUDGE (HERLIHY 01/13)
25   01/09/2004
        STATE'S RESPONSE TO MOTION TO DISMISS FOR LACK OF SPECIFICITY FILED
        BY DONALD R ROBERTS,DEP ATT GENERAL
        REFERRED TO JUDGE HERLIHY 01/12-(SFT01/13)
26   01/09/2004
        STATE'S RESPONSE TO MOTION TO DISMISS THE REINDICTMENT FILED
        BY DONALD ROBERT, DEP ATT GEN
        REFERRED TO CALL OF CALENDAR JUDGE FOR 01/13   (JOH)
30   01/13/2004                                ABLEMAN PEGGY L.
        TRIAL CALENDAR-JURY TRIAL-PLED GUILTY-PSI ORDERED
31   01/15/2004
        SUBPOENA(S) SERVED BY SHERIFF.
32   03/19/2004                                HERLIHY JEROME O.
        SENTENCING CALENDAR: DEFENDANT SENTENCED.
36   03/19/2004                                HERLIHY JEROME O.
        ASOP ORDER SIGNED AND FILED ON 4-26-04.
33   04/14/2004
        LETTER FROM SUPREME COURT TO KATHLEEN FELDMAN, COURT REPORTER
        RE: A NOTICE OF APPEAL WAS FILED ON APRIL 7, 2004.
        THE TRANSCRIPT IS DUE MAY 17, 2004.
        137, 2004
```

A4

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page     5
                      ( as of  05/03/2004 )

State of Delaware v.  JOHN H BENGE                        DOB: 10/22/1948
State's Atty: DONALD R ROBERTS , Esq.       AKA: JOHN BENGE
Defense Atty: ROBERT M GOFF , Esq.               JOHN BENGE

        Event
No.     Date              Event                         Judge
----------------------------------------------------------------------------
34   04/14/2004
        TRANSCRIPT FILED.
        SENTENCING TRANSCRIPT MARCH 19, 2004
        BEFORE JUDGE HERLIHY
35   04/23/2004
        LETTER FROM SUPREME COURT  TO SHARON AGNEW
        RE: THE COURT REPORTER'S NOTICE OF THE FILING OF THE FINAL TRANSCRIPT
        WAS FILED WITH THE PROTHONOTARY ON APRIL 14, 2004.
        THE RECORD AND TRANSCRIPT MUST BE FILED NO LATER THAN APRIL 26, 2004.

              *** END OF DOCKET LISTING AS OF  05/03/2004 ***
                  PRINTED BY: CSCVELL
```

A5

RULE 9 - WARRANT

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| THE STATE OF DELAWARE | ) |
| | ) |
| V. | ) INDICTMENT BY THE GRAND JURY |
| | ) |
| JOHN H. BENGE | ) I.D. #0301005493 |

The Grand Jury charges JOHN H. BENGE with the following offense(s):

### COUNT I. A FELONY                    #N_____

UNLAWFUL INTERCEPTION OF COMMUNICATIONS in violation of Title 11, Section 2402 of the Delaware Code of 1974, as amended.

JOHN H. BENGE, on or between July 1, 2002 and July 30, 2002, in the County of New Castle, State of Delaware, did intentionally intercept wire, oral or electronic communications of other persons having an expectation of privacy in said communications.

### COUNT II. A FELONY                    #N_____

UNLAWFUL INTERCEPTION OF COMMUNICATIONS in violation of Title 11, Section 2402 of the Delaware Code of 1974, as amended.

JOHN H. BENGE, on or between July 1, 2002 and July 30, 2002, in the County of New Castle, State of Delaware, did intentionally intercept wire, oral or electronic communications of other persons having an expectation of privacy in said communications.

### COUNT III. A FELONY                    #N_____

UNLAWFUL INTERCEPTION OF COMMUNICATIONS in violation of Title 11, Section 2402 of the Delaware Code of 1974, as amended.

JOHN H. BENGE, on or between July 1, 2002 and July 30, 2002, in the County of New Castle, State of Delaware, did intentionally intercept wire, oral or electronic communications of other persons having an expectation of privacy in said communications.

A. 6

### COUNT IV. A FELONY                    #N _____

UNLAWFUL INTERCEPTION OF COMMUNICATIONS in violation of Title 11, Section 2402 of the Delaware Code of 1974, as amended.

JOHN H. BENGE, on or between July 1, 2002 and July 30, 2002, in the County of New Castle, State of Delaware, did intentionally intercept wire, oral or electronic communications of other persons having an expectation of privacy in said communications.

### COUNT V. A FELONY                    #N _____

UNLAWFUL INTERCEPTION OF COMMUNICATIONS in violation of Title 11, Section 2402 of the Delaware Code of 1974, as amended.

JOHN H. BENGE, on or between July 1, 2002 and July 30, 2002, in the County of New Castle, State of Delaware, did intentionally intercept wire, oral or electronic communications of other persons having an expectation of privacy in said communications.

A TRUE BILL

_____
(FOREPERSON)

ATTORNEY GENERAL

DEPUTY ATTORNEY GENERAL

A-7

John H. Benge, Jr.
P.O. Box 500
Georgetown DE 19947
February 9, 2004

The Honorable Valerie Woodruff
Secretary of Education
State of Delaware Department of Education
P.O. Box 1402
Dover, DE 19903

Dear Secretary Woodruff:

Testimony given during a Sussex County Superior Court trial in August of 2003 revealed illegal drug use by a Capital School District elementary school teacher.

The teacher involved is Edward S. ("Stacey") Smith, who identified himself at the trial as a special education teacher of first and second grade pupils at South Dover Elementary School

Evidence of Mr. Smith's drug use was of a very reliable nature. Two Beebe Hospital staff physicians testified as to the results of a clinical toxicology test performed on October 20, 2002 at the Beebe laboratory.. Both doctors, Dr. Seble Z. Gabre-Mahdin and Dr. Thomas Shreeve, told a Superior Court jury that the laboratory test ordered as part of their treatment of Mr. Smith was positive for marijuana (cannabinoids) as well alcohol (EtOH). Despite Mr. Smith's denials and questioning of the accuracy of the test results, the doctors remained firm in their conclusion regarding his marijuana use.

The laboratory test was conducted prior to p a.m. on Sunday, October 20, 2002 at Beebe's Emergency Room in Lewes following a gunshot wound Mr. Smith had sustained earlier that morning. Obviously, Mr. Smith did not anticipate being tested for illegal drugs that day, which may explain the test result.

A copy of the lab report is enclosed with this letter. As that report was made a prosecution trial exhibit during the Superior Court trial, it is public record and confidentiality is not now an issue.

There was a rather curious turn of events at the trial regarding Mr. Smith's medical records. The state prosecutor, Melanie Withers of the Delaware Department of Justice, unsuccessfully argued to have the positive drug use test excluded from evidence at the trial. This followed an effort by Ms. Withers to prevent access to the records of a private physician in Dover who treated Mr. Smith.

A8

Ms. Withers' concern was not the reliability of the Beebe testing or the relevance of Mr. Smith's marijuana use to the trial proceedings. Rather, she was aware of the "embarrassment" that illegal drug use would cause Mr. Smith given his position as a teacher of 6 and 7 year old children and the resulting damage to his credibility as a witness for the prosecution. Despite Ms. Withers' intention to "cover up" the drug use evidence, the trial judge refused to suppress the doctors' testimony. Ms. Withers' response to that ruling was an effort to impugn the validity of the testimony of her own witnesses, the Beebe doctors, as to the positive test result.

The Department of Justice, acting through Ms. Withers, was deliberately indifferent to the significance of the illegal use of drugs by a Delaware public school teacher. In pursuing her perception of the proper priorities of government, Ms. Withers completely sacrificed the interests of Delaware's youngest school students to other, and, for the most part, unattained goals. Perhaps the focus of Delaware's education officials will be different.

Respectfully,

John H. Benge, Jr.

Enc: Physician Reports
      Lab Reports

A 9

## BEEBE MEDICAL CENTER
424 Savannah Road, Lewes, DE 19958-0226
### DISCHARGE REPORT

PATIENT: SMITH, EDWARD S                    MRN: 990025449 LOCATION: 3M2 315A
DISCH.: 10/21/02DOB: 02/04/1966   AGE: 36 S ACCT#:   20106860

| | 22210117 | 22200207 | |
|---|---|---|---|
| COLLECTED | 10/21/02 05:50 | 10/20/02 08:45 | REFERENCE RANGE |
| PHYSICIAN | GABRE-MADHIN, SEBLE | SHREEVE, THOMAS | |

### HEMAGRAM

| | | | | | |
|---|---|---|---|---|---|
| WBC | 10.2 | | 7.9 | | 4.0-10.3 x 10^3/UL |
| RBC | 4.34 | | 4.95 | | 4.30-5.60 x10^6/UL |
| HEMOGLOBIN | 13.5 | | 15.5 | | 13.1-16.7 G/DL |
| HEMATOCRIT | 39.6 | L | 45.0 | | 39.8-49.7 % |
| MCV | 91.3 | | 90.9 | | 80.0-101.0 FL |
| RDW | 10.8 | L | 11.0 | | 10.9-14.6 % |
| PLATELET COUNT | 292.0 | | 362.0 | | 130.0-405.0 x 10^3/UL |
| MPV | 7.6 | | 7.8 | | 6.8-13.6 FL |
| % NEUTROPHILS | 69.2 | | 37.7 | L | 50.0-72.0 % |
| % LYMPHOCYTES | 19.5 | | 45.2 | H | 18.0-40.0 % |
| MONOCYTES | 8.1 | | 9.4 | | 2.6-11.5 % |
| % EOSINOPHILS | 2.2 | | 5.6 | H | 0.0-4.4 % |
| % BASOPHILS | 1.0 | | 2.1 | H | 0.0-1.4 % |

A 10

BEEBE   MEDICAL   CENTER
424 Savannah Road, Lewes, DE 19958-0226
DISCHARGE REPORT

PATIENT: SMITH, EDWARD S                MRN: 990025449 LOCATION: 3M2 315A
DISCH.: 10/21/02 DOB: 02/04/1966  AGE: 36 S ACCT#: 20106860

| | 22210117 | 22200208 | 22200207 | |
|---|---|---|---|---|
| COLLECTED | 10/21/02 05:50 | 10/20/02 09:00 | 10/20/02 08:45 | REFERENCE RANGE |
| PHYSICIAN | GABRE-MADHIN, SEB | SHREEVE, THOMAS | SHREEVE, THOMAS | |

## GENERAL CHEMISTRY

| | | | | |
|---|---|---|---|---|
| SODIUM | 138 | | 141 | 133-145 MMOL/L |
| POTASSIUM | 3.9 | | 3.7 | 3.3-5.1 MMOL/L |
| CHLORIDE | 102 | | 102 | 96-108 MMOL/L |
| CARBON DIOXIDE | 21 L | | 19 L | 23-30 MMOL/L |
| ANION GAP | 15 | | 20 H | 7-16 MMOL/L |
| GLUCOSE | 72 | | 158 H | 70-105 MG/DL |
| BUN | 9 | | 18 | 6-21 MG/DL |
| CREATININE | 0.6 | | 1.0 | 0.6-1.1 MG/DL |
| CALCIUM | 8.7 | | 9.1 | 8.3-10.2 MG/DL |

## CLINICAL TOXICOLOGY

| | | | | |
|---|---|---|---|---|
| ALCOHOL, SERUM | | | <10 | <10 MG/DL |
| AMPHETAMINES,URINE | | NEGATIVE | | NEGATIVE |
| BARBITURATES,URINE | | NEGATIVE | | NEGATIVE |
| BENZODIAZEPINES,UR | | NEGATIVE | | NEGATIVE |
| COCAINE,URINE | | NEGATIVE | | NEGATIVE |
| OPIATES,URINE | | NEGATIVE | | NEGATIVE |
| PHENCYCLIDINE,URIN | | NEGATIVE | | NEGATIVE |
| CANNABINOID, URINE | | ### M1 | | NEGATIVE |
| TRICYCLIC GROUP, U | | ### M2 | | NEGATIVE |
| POSITIVE DRUG COMM | | ### M3 | | |

M1: CANNABINOID, URINE result: PRESUM POSITIVE

M2: TRICYCLIC GROUP, URINE result: NEGATIVE
A negative result does not eliminate the possibility of
the presence of tricyclic antidepressants in the urine
specimen at concentration lower than 1000 ng/ml.

M3: POSITIVE DRUG COMMENT result: SEE BELOW
PRESUM POSITIVE provides only a preliminary (PRESUMPTIVE)
result. A more specific alternate chemical method should be
used in order to obtain a confirmed analytical result. If
clinical indications warrant, please call for confirmation by
MAYO Reference Laboratory.

MRN: 990025449                        LOCATION:  3M2 315A
                                      PATIENT: SMITH, EDWARD S
KEY FOR ABNORMAL COLUMN: L-LOW, H-HIGH, AB-ABNORMAL, P-PANIC
81 of 82          PRINTED 10/21/2002 22:39           Page: 2 of 3

A 11

**B E E B E    M E D I C A L    C E N T E R**
424 Savannah Road, Lewes, DE 19958-0226
DISCHARGE REPORT

PATIENT: SMITH, EDWARD S                      MRN: 990025449 LOCATION: 3M2 315A
DISCH.: 10/21/02DOB: 02/04/1966  AGE: 36 S ACCT#:  20106860

```
-----------------+-------22200208--------+--------------
COLLECTED        |10/20/02 09:00         |REFERENCE RANGE
PHYSICIAN        |SHREEVE, THOMAS        |
-----------------+-----------------------+--------------
```

## URINALYSIS

```
COLOR             | YELLOW           |
CLARITY           | CLEAR            |CLEAR
SPECIFIC GRAVITY  | >=1.030          |1.003-1.035
PH                | 6.5              |4.6-8.0
PROTEIN           | 1+          AB   |NEG, TRACE
GLUCOSE           | NEGATIVE         |NEGATIVE
KETONES           | NEGATIVE         |NEGATIVE
BILIRUBIN         | NEGATIVE         |NEGATIVE
UROBILINOGEN      | 0.2              |0.2-1.0 E.U./DL
OCCULT BLOOD      | NEGATIVE         |NEGATIVE
NITRITE           | NEGATIVE         |NEGATIVE
LEUKOCYTES        | NEGATIVE         |NEGATIVE
RBC               | 0-2              |0-2 /HPF
WBC               | 0-2              |0-4 /HPF
EPITHELIAL CELLS  | RARE             | /HPF
BACTERIA          | NONE SEEN        |FEW /HPF
MUCUS             | SMALL            |SMALL
```

A 12

```
PATIENT NAME:          SMITH, EDWARD STACEY
ROOM #:                315A                        BEEBE MEDICAL CENTER
PATIENT NUMBER:        990025449                    424 SAVANNAH ROAD
ATTENDING PHYSICIAN:   Seble Z. Gabre-Madhin, M.D. LEWES, DELAWARE  19958
ADMIT DATE:            10/20/2002                     (302) 645-3300
```

## HISTORY & PHYSICAL

**CHIEF COMPLAINT:** Status post gun shot wound, chest.

**HISTORY:** The patient is a 36-year-old generally healthy gentleman who came to the aid of a neighbor who was being attacked by what he described as her "ex-husband". During the incident the patient was himself assaulted by the assailant. He had pepper spray sprayed into his eyes as well as sustaining a gun shot wound to his left upper chest with was described as a "38 caliber gun". On arrival of the medics to the scene and on transportation he is hemodynamically stable complaining mainly of pain in his eyes but there is also some pain in his left upper chest. He denied shortness of breath. He was hemodynamically stable throughout the transport and on arrival to the Beebe Medical Center Emergency Room.

**PAST MEDICAL HISTORY:** None.

**PAST SURGICAL HISTORY:** None per patient.

**ALLERGIES:** No known drug allergies.

**PHYSICAL EXAMINATION:** His initial vital signs on arrival to Beebe Medical Center Emergency Room were blood pressure of 130/100, pulse of 76, respiratory rate of 22, his saturation was 100% on his non-rebreather and in sinus rhythm. His repeat vital signs 30 minutes later were essentially unchanged. The only change in his vital signs was a blood pressure on his left arm at the same time as on his right arm; his right arm pressure at the moment was 150/95, in his left arm pressure was 122/58.

PCS was 15. Head and neck - normocephalic, atraumatic. His pupils were equal and reactive. Difficult to open because of the pain in his eyes, however, they were both 3 mm and appeared reactive. The remainder of his head and neck exam was essentially unremarkable. His neck had no obvious injuries, it is non-tender to palpation.

Chest - his entry site of a gunshot on his left upper chest 2 cm below the clavicle just lateral to the anterior axillary line. There is a small amount of swelling there, but no obvious bleeding; there is no large hematoma present. He had good breath sounds bilaterally. He is minimally tender to palpation over the bullet hole, but not over the remainder of his chest. The patient was turned over; there was no exit site noted. He was not tender to palpation over his back including over the subclavicular fossa, over the posterior back including the left scapula. His abdominal exam was soft, non-tender, non-distended. His

(CONTINUED...)

## HISTORY & PHYSICAL

A 13

BEEBE MEDICAL CENTER

PATIENT NAME: SMITH, EDWARD STACEY          ADMIT DATE:  10/20/2002
PATIENT NO.:  990025449                     PAGE:  2

## HISTORY & PHYSICAL

pelvis was stable.  Extremities were warm; he had a very small abrasion superficially on his left foot, but otherwise intact.  Extremity examination was significant for having had palpable radial pulse - 2+ radial pulse on the left; 2+ radial pulse on the right; he has palpable 2+ femoral and dorsalis pedis pulses bilaterally.  His left upper extremity had intact motor and sensory function to gross examination including to light touch as well as to pressure; he had intact fine and gross motor function of his hand.  Extremities were otherwise unremarkable.  He had full range of movement in all his extremities.

LABORATORY DATA:  His white blood cell count was 7.9, hematocrit 45%, platelet count 362.  His urinalysis is negative.  His toxicity screen shows positive for cannabinoids.

PA and lateral of the chest portably were performed.  It showed a bullet which appeared to be in the soft tissue of the left upper chest; there was no obvious penetration of the thorax; there is no hemothorax; no pneumothorax.  There are no obvious rib fractures.

He underwent a chest CT which showed a bullet in the soft tissue masses of the left chest; there is no obvious hematoma present encircling this area.  There is no penetration of the chest; no hemo or pneumothorax visible by CT scan.

Per the radiology attending, the bullet site appears to be below the level of the brachial plexus.

He underwent an angiogram of the left subclavian artery which showed no obvious injuries to the artery.

IMPRESSION AND PLANS:  This is a 36-year-old gentleman who interrupted an assault in which he himself sustained a gunshot wound to the left upper chest just below the clavicle.  He does not appear to have sustained major injury to any vascular or neurologic structure at this time.  He has undergone both a chest CT and an angiogram which does not reveal any major vascular injury; he most likely does have some soft tissue injuries.  In terms of management, I think that the patient will be admitted and observed and monitored in the hospital closely.  If his exam should change or he should require further intervention, these will be done as appropriate.

(CONTINUED...)

## HISTORY & PHYSICAL

A-14

BEEBE MEDICAL CENTER

PATIENT NAME: SMITH, EDWARD STACEY          ADMIT DATE:  10/20/2002
PATIENT NO.:  990025449                             PAGE:  3

HISTORY & PHYSICAL

SZG-M/sv
Date Dict.:  10/20/2002
Date Trans.:  10/21/2002          Seble Z. Gabre-Madhin, M.D.
cc:  Seble Z. Gabre-Madhin, M.D.

7 DAY UPDATE:


_____          _____
Signature                                Date


HISTORY & PHYSICAL
A 15

BEEBE MEDICAL CENTER
TRAUMA SUMMARY

PATIENT:          SMITH, EDWARD                  DATE OF VISIT: 10/20/02
MEDICAL RECORD#:  990025449                      ACCOUNT#:       20106860
PHYSICIAN:        THOMAS SHREEVE, M.D.

TIME OF EVALUATION:  1835.

CHIEF COMPLAINT:  Gunshot wound to left chest.

HISTORY OF PRESENT ILLNESS:  The patient was in an altercation with
another male in Rehoboth Beach and was shot apparently point blank
with a .38 caliber weapon to the left upper chest.  No other
complaints.  No other injuries except for some hurting of the eyes
secondary to pepper spray.

PAST HISTORY:  Unremarkable.

SOCIAL HISTORY:  Unknown at this time.

PHYSICAL EXAMINATION:  BP
CONSTITUTIONAL:  The patient arrived alert and oriented, mild
distress.  C-collar and back board was in place.
HEENT:  Head no evidence of trauma.  Pupils equal and reactive.
Moderate conjunctical erythema.  ENT unremarkable.
NECK:  Nontender.  Good range of motion.
CHEST:  Gunshot wound noted to the left upper anterior chest.
RESPIRATORY:  Lungs are clear bilaterally.
CARDIOVASCULAR:  Heart normal.
ABDOMEN:  Soft, nontender.
NEUROLOGIC:  Alert, oriented.  Glasgow Coma Scale 15.  No
neurological deficits.
BACK:  Nontender.
EXTREMITIES:  Nontender.  Good pulses.

E.D. PHYSICIAN TEST INTERPRETATION:  Chest x-ray revealed bullet in
the left shoulder region.  Lungs appear normal.  CAT scan of the
chest showed a bullet in the left scapular region with a hematoma but
no lung involvement.  CBC was normal.  Chemistries normal.  Alcohol
less than 10.  Urinalysis normal.  Urine tox screen is positive for
marijuana.

Page 1 of 2

A16

TRAUMA SUMMARY

PATIENT:              SMITH, EDWARD              DATE OF VISIT: 10/20/02
MEDICAL RECORD#:  990025449                  ACCOUNT#:      20106860

**TREATMENT:**  Trauma code was called because of gunshot wound history.
The patient remained stable through the course of the evaluation.
Dr. _____ arrived to assume care of the patient.  The patient was
admitted for observation.  No other treatment given except for
tetanus shot and eyes were irrigated because of the chemical
irritation.

**PRELIMINARY CLINICAL IMPRESSION:**
1.  Gunshot wound to the left chest.
2.  Chemical conjunctivitis secondary to pepper spray.

_____
THOMAS SHREEVE, M.D.

DD:    10/20/2002 11:02  EST
DT:    10/20/02 13:26  EST
JOB#:  5195
TR:    777

Page 2 of 2

A 17

## CERTIFICATION OF MEDICAL RECORDS

Date  2 - 5 - 03

To Whom it May Concern:

I am the custodian of medical records at Beebe Medical Center, and have held this position since 1997.

The attached medical record was made at or near the time of the occurrence of the matters set forth, by or from information transmitted by a person with knowledge of those matters. The attached medical record was kept in the course of regularly conducted activity, and was made as a regular practice.

So certified,

Carol Thomas, RHIA, CCS
Director, Medical Record Department
Beebe Medical Center
Lewes, Delaware

A18

```
IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY


STATE OF DELAWARE,      ID# 0301005493


v.


JOHN H. BENGE,

     Defendant.


BEFORE   HONORABLE JEROME O HERLIHY, J


APPEARANCES

     DONALD ROBERTS, ESQ.
     Deputy Attorney General
        for the State

     ROBERT GOFF, ESQ.
        for the Defendant


     - - - - - - - - - - - - - -
     SENTENCING TRANSCRIPT
        MARCH 19, 2004
     - - - - - - - - - - - - - -


       SUPERIOR COURT REPORTERS
     500 North King Street, Suite 2609
       Wilmington, Delaware 19801-3725
            (302) 255-0570
```

**Page 3**

1  physically and mentally, to others.  He does this
2  despite a criminal no contact order.
3        It was a reminder of my life prior to the
4  incarceration of my ex-husband.  The ugly phone
5  messages, threats concerning my job and my
6  relationship with my children, phone calls made to
7  friends and coworkers concerning my activities.  I was
8  frightened by his actions and my brothers became so
9  concerned they urged me not to meet with him alone.
10       I learned to look for him waiting outside my
11  home in the morning or late at night.  Even though
12  sometimes things seemed to be missing in my house, I
13  refused to believe that John had access.  On one
14  occasion, he came inside uninvited declaring I left
15  the door unlocked.  I became increasingly upset when I
16  discovered a voice activated recording of his menacing
17  activities.
18       That is what brings us here today; the fact
19  he entered my residence several times, invading my
20  home appalled and frightened me.  It is at that time I
21  sought and was granted protection from abuse.  Despite
22  that order he traveled to Rehoboth Beach with guns and
23  broke into the apartment, attacked me and Stacey Smith

**Page 2**

1        March 19, 2004
            Courtroom No. 4-B
2

3    PRESENT:

4        As noted.

5            - - - - -

6        MR. ROBERTS:  Your Honor, the State moves the
7  sentencing of John Benge.  The victim Donna Benge
8  wishes to address the Court.
9        THE COURT:  Okay.  We'll hear from her, first
10  please.
11       MS. DONNA BENGE:  Your Honor, thank you for
12  the opportunity to speak to you today.  I had not
13  intended to do so, but in deference to my children who
14  have suffered immensely as the result of the events
15  that have taken place.  I thought we have settled into
16  some form of expectance and I believe we have begun to
17  move forward with our lives, but recently my false
18  sense of comfortable and safe life was once again
19  shaken.
20       Just last week a letter was sent to Capitol
21  School District in an effort to discredit Stacey Smith
22  in the eyes of his employer.  This is another attempt
23  by John Benge in his continuing effort to cause harm,

**Page 4**

1  on October 25, 2002.  Since that day, he has been
2  incarcerated.
3        I have seen no evidence of remorse or
4  admission of wrong doing on the part of John Benge.  I
5  hoped the psychiatric ordered by Judge Bradley would
6  help, but after a year and several months in prison he
7  seems undaunted in his endeavor to hurt others.
8        For these reasons, Your Honor, I hope you
9  recognize the severity of this criminal act and my
10  fear that his harassment, stalking and violent
11  behaviors will not cease.  And I ask that you
12  administer an appropriate sentence.  Thank you.
13       THE COURT:  Thank you.
14       MR. GOFF:  Your Honor, good afternoon to you.
15  Mr. Benge is being sentenced today for wiretapping
16  charges and for third degree burglary charges.  He is
17  not being sentenced for the more serious offenses for
18  which he received his penalties down in Sussex County.
19       I think that, although the victim's
20  statements are well taken and they express a
21  legitimate and deep concern on her part, that
22  nevertheless it is important for this Court, today, to
23  keep in mind that the case that is before it today has

A19

5

1  guidelines which call for probation at Level II as to
2  each one of the wiretapping charges. And as to the
3  burglary charges the guidelines call for a Level IV
4  sentence.
5          There are no mitigators or aggravators which
6  were cited in the presentence report to remove this
7  from that point.
8          In fact, downstate, Judge Honorable Bradley
9  imposed a sentence of nine years and one month of
10  incarceration, and then Mr. Benge did accept
11  responsibility and admit to wrongdoing.
12          As to another matter, he received an
13  additional seven months from Judge Graves in that
14  matter. All of those cases involved felonies, which
15  were violent in fact and violent under the law of the
16  State of Delaware, and also violent pursuant to the
17  SENTAC guidelines.
18          In this particular case before Your Honor
19  none of those -- none of those offenses fall within
20  that category. In fact, each one of these charges is
21  listed as nonviolent crimes under the law and
22  nonviolent under SENTAC.
23          Mr. Benge indicates that he has expressed and

6

1  did express remorse to the presentence officer. For
2  whatever reason, the presentence officer did not
3  include that in the comment that he chose to bring
4  forth to the Court.
5          Mr. Benge has in fact fallen very far in the
6  last five or six years. It is difficult for him to
7  address these matters without talking about the loss
8  of his family, which the victim was one, and also of
9  course the children that they have in common.
10          I presented to the Court a letter of one of
11  the children, which expresses her hope that Mr. Benge
12  not receive any additional incarceration. Her
13  perception was that Mr. Benge is a good father, in
14  many respects he maintains the relationship with them,
15  and that he is caring and loving and shows another
16  side than the side that Mrs. Benge has brought forth
17  and understandably that she brings forth with that.
18          John Benge will be incarcerated for a long
19  period of time in pursuant to the other sentencing
20  orders. For what I suspect is a perception on the
21  Judge's part downstate that the verdict of the jury
22  was not the appropriate verdict, he sentenced way
23  outside of the guidelines for a person with

7

1  Mr. Benge's absence of any significant prior criminal
2  history. And, apparently, he must have disagreed with
3  the verdict in that case.
4          In that case, Mr. Benge did not accept
5  responsibility the way he has in this particular case.
6  He has accepted responsibility. I believe that he is
7  willing and able to express remorse to this Court.
8          And we are hopeful that Your Honor will
9  impose a sentence which falls within the guidelines
10  for these offenses.
11          THE COURT: All right. Thank you, Mr. Goff.
12  Mr. Roberts.
13          MR. ROBERTS: Your Honor, the State in
14  fashioning the plea agreement indicated that it would
15  not recommend a sentence to exceed eight years and
16  eight years is what the State is asking for.
17          I believe, as pointed out in the presentence
18  report and noted by Ms. Benge, it seems that even as
19  of a week or so ago, Mr. Benge doesn't know when to
20  quit.
21          What purpose did he have in sending a
22  hospital report to Mr. Smith's employer, other than to
23  continue to harass Mrs. Benge and Mr. Smith, her

8

1  paramour. Notwithstanding the daughter's hope that he
2  not get additional jail time, the State agrees with
3  the downstate Court. And at least Mr. Goff's
4  suggestion, that the Court downstate was not happy
5  with the outcome of that trial, it is internally
6  inconsistent how that verdict was arrived at but,
7  again, as pointed out, that's not what we're here to
8  talk about.
9          But the Court should take into account that
10  these tapes Mr. Benge surreptitiously made in his
11  wife's house were, according to him in the other case,
12  the fuel and the fodder, if you will, that led him to
13  go downstate with two guns strapped, in order to do
14  harm to these folks.
15          Mr. Benge is not your average citizen, given
16  his education and his background, and he certainly
17  knew better than anyone else. He knows that the
18  nature of his activities were illegal, unlawful and in
19  fact unethical.
20          I don't know what it is going to take
21  Mr. Benge to quit, but it seems that he's going to
22  continue to haunt Donna and Stacey as long as he can.
23  He was under a no contact order and he had just been

A 20

State v. John Benge

**9**

1  sentenced for shooting Stacey Smith, and what does he
2  do? He turned around with Stacey Smith's employer and
3  says that there's a possibility of marijuana in his
4  system, when Mr. Smith was treated. As pointed out in
5  the PSI, the doctor testified in trial that it was
6  very likely that that was a false positive.
7          MR. GOFF: Just one quick comment, Your
8  Honor. I think that the presentence officer has
9  indicated that this was a violation of the no contact
10  order and that is stretching the concept of what order
11  he was under. So I would ask the Court to not
12  consider this a violation of any kind of no contact
13  order in this case.
14          THE COURT: What?
15          MR. GOFF: I'm sorry, Your Honor?
16          THE COURT: What should I not consider as a
17  violation of the no contact order, the letter to the
18  Board of Education?
19          MR. GOFF: Correct, Your Honor.
20          THE COURT: How am I not to consider it as
21  such?
22          MR. GOFF: I didn't know he had been ordered
23  to have no contact with the Board of Education.

**10**

1          THE COURT: Certainly, as an altruistic
2  citizen interested in this situation and as an
3  attorney, he should know better. Okay.
4          Mr. Benge, what would you like to say?
5          THE DEFENDANT: Yes, thank you, Your Honor.
6  I don't wish to begin by contradicting anyone in this
7  matter, but in fact at every opportunity that I have
8  had to speak to people in this case, I have expressed
9  my great remorse, my absolute feeling that somehow
10  this should never have occurred. I would be happy to
11  delineate those opportunities for Your Honor.
12          They begin with a letter that I wrote to
13  Judge Bradley after the trial and being in contact
14  with the presentence officer in Sussex County in a
15  letter that I have written to Mr. Goff that I had
16  hoped would be submitted to the Court -- apparently it
17  did not reach Your Honor in time -- in connection
18  with the pretrial investigation that was conducted
19  with respect to this sentencing.
20          Your Honor, I am responsible. I invaded my
21  former wife's privacy in a manner which was very
22  egregious. I did that of my own responsibility and
23  I'm here to take full responsibility for that.

**11**

1          The other matters of which Your Honor hears
2  today are things that have been dealt with separately.
3  I have been severely punished for Assault Second
4  Degree, receiving a sentence from Judge Bradley for
5  that, and two other offenses. I was given every
6  possible day which I would receive at Level V, all of
7  which is mandatory time, K-time, under the statute,
8  and I will be there for the duration.
9          Your Honor, my request is that that
10  perspective be kept today with respect to these
11  matters. Yes, there was a length between what
12  happened in July and what happened in August -- pardon
13  me, October. I don't deny that. And, again, I took
14  responsibility for those actions which I did, which
15  were -- which were wrong, and I'm here to admit that
16  to you, what I did was wrong.
17          I would submit to you that there was a lot
18  going on in my life, not by way of explanation, Your
19  Honor, not by way of extenuation, but things don't
20  happen in a vacuum. Your Honor knows that. Life is
21  not something that you can divide into neat little
22  packages.
23          As time went by, I simply lost contact with

**12**

1  the values that I had for many, many years. And in so
2  doing, I destroyed my life. I lost my family. I lost
3  everybody of value that I ever had, everything.
4          What you see before you, this is me in its
5  entirety. And I deeply, deeply regret the fact that
6  my conduct led me to that. I deeply regret that I
7  hurt people along the way, to my own self-destruction.
8          And that, Your Honor, is where I wish the
9  Court to understand that if you view the record as a
10  whole, not just individual parts of it, but as a
11  whole, I think I have expressed remorse in every way I
12  know how.
13          In my letter to Judge Bradley, I wrote to him
14  and I said people in the past, perhaps, don't give me
15  credit for the way that I express my regret about
16  things. I asked him to judge for himself with respect
17  to my uncertainty or lack thereof and I ask Your Honor
18  to do the same thing.
19          THE COURT: Okay. Mr. Benge, in all candor,
20  as I said to Mr. Goff a moment ago, the letter to the
21  Secretary of the Department of Education about
22  Mr. Smith contradicts some of this statement of
23  remorse. Remorse means that you have let go, are

A21

State v. John Benge

**13**

1   willing to move on, and whatever, rather than continue
2   to seek punishment. Not only was there physical
3   punishment in Sussex County in which you have been
4   found guilty and for which you have been sentenced,
5   which of course occurred after these offenses -- That
6   letter was written February 9th of this year, just
7   weeks after Judge Graves imposed additional sentence
8   on you in January 20th of this year.
9        Accordingly, my sentences are as follows:
10  You pay the cost of prosecution, as to IN# 03-10-1048,
11  effective today, you're placed in the custody of the
12  Department of Corrections for a period of five years,
13  which will be suspended after three years at
14  supervision Level V for one year at Level III, which
15  will be served concurrently with the Level III
16  probation in IS -- that's Sussex County, of course,
17  02-10-0929.
18       As to the charge of Burglary Third Degree
19  03-10-0857, the sentence of the Court is that you be
20  imprisoned for a period of three years at Level V
21  suspended immediately for one year Level II, which
22  will be served concurrently with the probation in the
23  Level III probation in IS# 02-10-0929.

**14**

1        On the other charge of Burglary 03-10-0858,
2   the sentence of the Court is that you be imprisoned
3   for a period of three years Level V, suspended
4   immediately for one year Level II.
5        As to the Wiretapping Charge in IN#
6   03-10-1049, the sentence of the Court is that you be
7   imprisoned for one year Level V, suspended immediately
8   for 12 months Level II, which will be served
9   concurrent to the Level III in 0929.
10       As to the next charge in IN# 03-10-0250 the
11  sentence of the Court is that you be imprisoned for a
12  period of one year Level V suspended immediately for
13  one year Level II, again to be served concurrent in
14  the Level III probation in IS# 02-10-0929.
15       As to IN# 03-10-0861, the sentence of the
16  Court is that you be imprisoned for a period of one
17  year Level V suspended immediately for 12 months Level
18  II, again, to be served concurrent with the Level III
19  time in 0929.
20       You are to work out a payment schedule during
21  the period of probation with your probation officer,
22  have no indirect or direct contact with Donna Benge,
23  no direct or indirect contact with Stacey or Edward

**15**

1   Smith. Zero tolerance for any contact with either of
2   these persons. You'll participate and complete a
3   certified domestic violence intervention program,
4   obtain a mental health evaluation, comply with any
5   treatment recommendations which may be made, and you
6   will successfully complete an anger management
7   counseling program.
8        This sentence is outside the guidelines
9   because I find there is a lack of remorse among other
10  matters.
11       MR. ROBERTS: Thank you, Your Honor.
12       (Whereupon, court is in recess.)

**16**

1   STATE OF DELAWARE:
2
3   NEW CASTLE COUNTY:
4
5        I, Michele R. Honaker, Official Court
6   Reporter of the Superior Court, State of Delaware, do
7   hereby certify that the foregoing is an accurate
    transcript of the proceedings had, as reported by me
8   in the Superior Court of the State of Delaware, and
    supervised by Kathleen D. Feldman, Chief Court
9   Reporter, RPR, in and for New Castle County, in the
    case therein stated, as the same remains of record in
10  the Office of the Prothonotary at Wilmington,
    Delaware, and that I am neither counsel nor kin to any
11  party or participant in said action nor interested in
    the outcome thereof.
12       WITNESS my hand this _____ day of
13  _____, 2004.
14
         _____
15       MICHELE R. HONAKER
         SUPERIOR COURT REPORTER
16       Cert#156-PS
17
18
19
20
21
22
23

A22

| CLASS E FELONY - NON-VIOLENT | CATEGORY: FEN |
|---|---|
| Statutory Range | 0 to 5 years |
| Presumptive Initial Level | II |
| Presumptive Sentence | Up to 24 Months |

Crimes in **NON-VIOLENT** category :

| | |
|---|---|
| 11-503 | Criminal Solicitation 1 |
| 11-841 | Theft >$50,000 but <$100,000 |
| 11-876 | Tamper w/ Public Record 1 |
| 11-907B | Criminal impersonation of a police officer |
| 11-937 | Computer Crimes |
| 11-937(b) | Computer Crime 2 |
| 11-1100 | Dealing in Children |
| 11-1201/03 | Bribery - Public Servant |
| 11-1239 | Wearing disguise during commission of felony |
| 11-1248 | Obstruct Rabies Control During Emergency |
| 11-1261-63 | Bribery/tampering Witness |
| 11-1263A(a)(2) | Interfering with child witness |
| 11-1263A(a)(3)(b) | "       "      "    " |
| 11-1263A(a)(4)(b) | "       "      "    " |
| 11-1264/65 | Bribery - Juror |
| 11-1352 | Promoting Prostitution 2 |
| 11-1361 | Providing obscenity to Minor **(SEE PREVIOUS PAGE)** |
| 11-1457(j)(3) | Poss. Weapon in Safe School/Rec Zone(Fel F underlying) |
| 11-3532 | Intimidation |
| 16-3111(a)(1-5) | Crimes regarding Vital Records |
| 31-610 | Unauthorized Use/possession Food Stamps Over $500 |
| 31-1003 | False Representation for Benefits $500 to $10,000 |
| 31-1004(2),(3),and (4) | Falsifying records for benefits |
| 31-1005 | Kickback Schemes |
| 31-1006 | Conversion of Benefits ($500 to %10,000) |

| STANDARD SENTENCES FOR PRIOR CRIMINAL HISTORY CATEGORIES | |
|---|---|
| CLASS E FELONY - NON-VIOLENT | Presumptive Sentence |
| H   Repetitive Criminal History | UP TO 15 Months at Level V |
| J   Lack of amenability to lesser sanctions | UP TO 15 Months at Level V |

11-937(a)     Comp Crime 2nd Unre E-mail>$5000: effective 1999/07/02: Fines between $100 and $500, plus injunctive relief in Chancery Court
11-937(c)     Comp Crime 2nd sell softwar >$5000: 1999/07/02.
11-938(a)     Comp Crime 2nd fail to cease>$5000: effective 1999/07/02.

**If crime is a secondary offense, use the non-aggravated Presumptive.**
_     All sentences for over 1 year at Level V require six month reintegration at Level IV, III, OR II.
_     All Criminal fines require 18% surcharge for Victims fund.
_     All Drug crimes require additional 15% surcharge for rehab fund

A23

| Class F Felony - Non-violent      Category FFN | |
| --- | --- |
| Statutory Range | 0 to 3 years |
| Presumptive Initial Level | II |
| Presumptive Sentence Length | up to 21 Months |

Crimes in **NON-VIOLENT** Category F:

| | |
| --- | --- |
| 11-502 | Criminal Solicitation 2 |
| 11-621(a)(2) | Terroristic Threat (school) **Fine $1000 - $2,500, Comm. service** |
| 11-824 | Burglary 3 **(SEE NOTE NEXT PAGE)** |
| 11-828 | Possess Burglary Tools |
| 11-841 | Theft over $1000 when victim is age 60 or more. |
| 11-861(b)(1) | Forgery 1 |
| 11-917d(2) | New Home Construction Fraud $50,000 to $100,000 |
| 11-937(c) | Computer Crime 3 |
| 11-938 | Computer Crime |
| 11-1112 | Sex Offender Loitering w/i 500 ft of school |
| 11-1222 | Perjury 2 |
| 11-1263 | Interference w/child as complaining witness |
| 11-1325(b) | Intentional Cruelty to Animals |
| 11-1325(d) | Possession of animal after felony conv. - **$5000 fine** |
| 11-1351 | Promoting Prostitution 3 |
| 11-1448 | Purchase/Possession of weapon by Pers.Prohib.**(SEE NEXTPAGE)** |
| 11-1450 | Receiving Stolen Firearm |
| 11-1451 | Theft of firearm |
| 11-1454 | Giving Firearm to Person Prohibited |
| 11-1455 | Firearm Transaction on behalf of Another (first) |
| 11-1457 | Poss. Weapon in Safe School/Recreation Zone (Felony G underlying) |
| 16-4755(a)(1) | Illegal Distribution of Controlled Substance |
| 16-4755(a)(2) | Unauthorized mfr/distribution contr. subst. |
| 16-4755(a)(4) | Refusal to allow inspection |
| 16-4755(a)(5) | Maintain Dwelling/Vehicle for Illegal Use/Distr. |
| 16-4756 | Unlawful Distribution, Use of Fraud to Obtain,<br>or supply false information re: Contr. Subst |

| STANDARD SENTENCES FOR PRIOR CRIMINAL HISTORY CATEGORIES | |
| --- | --- |
| Class F Felony - Non-violent | Presumptive Sentence |
| H   Repetitive criminal history | UP TO 9 Months at Level V |
| J   Lack of amenability at lesser sanctions | UP TO 9 Months at Level V |

**If crime is a secondary offense, use the non-aggravated presumptive.**
- All sentences for over 1 year at Level V require six month reintegration at Level IV, III, OR II.
- All Criminal fines require 18% surcharge for Victims fund.

A24

_    All Drug crimes require additional 15% surcharge for rehab fund

SUPPLEMENTAL NOTATIONS FOR FELONY F
11-630(a)(2) Vehicular Homicide 2 carries a minimum sentence of 1 year at Level V, if offender was
under influence of alcohol or drugs. Such sentence is not subject to suspension, probation, parole,
furlough, work release or supervised custody during the first year of such sentence.
11-824 Burglary 3 - Presumptive sentences effective 9/01/94
        First Conviction - - - - -      Level IV for 3 Mo.
        H. Repetitive Criminal History -- Level V for 3 to 12 Mo.
J. Lack of amenability to lessersanction    -- --   Level V for 3 to 12 Mo.
11-937(a)      Comp Crime 3rd Unre E-mail >$1000: effective 1999/07/02: Fines between $100 and
               $500, plus injunctive relief in Chancery Court
11-937(b)      Comp Crime 3rd Falsify > $1000: effective 1999/07/02: Fines between $100 and $500,
               plus injunctive relief in Chancery Court
11-937(c)      Comp Crime 3rd sell software >$1000; effective 1999/07/02.
11-938(a)      Comp Crime 3rd fail to cease >$1000: effective 1999/07/02.
11-1304 Hate Crime - If underlying offense is a Felony F, it is to be sentenced as a Felony E violent.
11-1312(A) Stalking, If restraining order is in place, 6 Mo. min at Lev V.  If 2nd offense in 7 yrs, 1 Yr. Min
at Lev V.  It is presumed that any sentence under this section will involve a minimum of at least 9 months
of Level III supervision.
11-1448_ becomes a Felony E (non-violent) if the offense occurs in a safe school or recreation zone.

A25

Exceptional Sentence Factors

**EXCEPTIONAL SENTENCE FACTORS**

**Aggravating** :

| | |
|---|---|
| A1 | Excessive Cruelty |
| A2 | Prior Violent Criminal Conduct |
| B3 | Repetitive Criminal Conduct |
| B4 | Need for Correctional Treatment |
| B5 | Undue Depreciation of Offense |
| B6 | Major Economic Offense or Series of Offenses |
| B7 | Prior Abuse of Victim |
| B8 | Custody Status at Time of Offense |
| B9 | Lack of Remorse |
| B10 | Betrayal of Public Trust |
| B11 | Supervision to Monitor Restitution |
| B12 | Lack of Amenability |
| B13 | Vulnerability of Victim |
| B14 | Statutory Aggravation |
| B15 | Statutory Habitual Offender |
| B16 | Rule 11 Sentence........... |
| *B17 | Child Domestic Violence Victim |
| *B18 | Offense Against a Child |
| B19 | Other..................... |
| A20 | Sentenced to Time Already Served Only |

(*Revisions 10/8/98)

**Mitigating** :

| | |
|---|---|
| M1 | Victim Involvement |
| M2 | Voluntary Redress or Treatment |
| M3 | Under Duress or Compulsion |
| M4 | Inducement By Others |
| M5 | Physical/Mental Impairment |
| M6 | Concern for Victim by Non-Principal |
| M7 | No Prior Convictions |
| M8 | Treatment Need exceeds Need for Punishment |
| M9 | Could Lose Employment |
| M10 | Statutory Mitigation |
| M11 | Assistance to Prosecution |
| M12 | Mental Retardation....... |
| M13 | Rule 11 Sentence......... |
| M14 | Other................ |

A26

Exceptional Sentences

The standard sentence range is presumed to be appropriate for the typical criminal case. The court may impose a sentence outside the standard sentence range for that offense if it finds that there are **substantial and  compelling** reasons justifying an exceptional sentence.

The following aggravating and mitigating circumstances for exceptional sentences are provided as examples and are not intended to be exclusive reasons for departure. An aggravating or mitigating circumstance, whether listed below or not, shall only apply if it does not reflect the statutory language defining the current offense, or constitute an element thereof.

When an exceptional sentence is decreed, the governing factor(s) leading to the exceptional sentence must be stated for the record, and should be identified in the sentencing order or on the sentencing worksheet

AGGRAVATING FACTORS  For Exceptional Sentences

A. The following factors apply to **VIOLENT FELONIES ONLY:**

    1. **EXCESSIVE CRUELTY**
        a. Definition : Those facts surrounding the commission of a violent felony which demonstrate such a callousness and cruelty towards the victim as to shock the conscience of the Court. [Standard 4 II.A.(i)]
        b. Allowable Penalty : Up to the statutory maximum for the instant offense.
    2. **PRIOR VIOLENT CRIMINAL CONDUCT**
        a. Definition : Defendant has demonstrated, by his prior criminal history, a propensity for violent criminal conduct. (SEE POLICY NO. 4) [Standard 4 I.A.(i)]
        b. Recommended Penalties :
            1. With two or more prior, separate violent felonies --Up to the statutory maximum.
            2. With one prior violent felony -- up to 50% of the statutory maximum.

B. The following factors are applicable to **ANY OFFENSE**

    3. **REPETITIVE CRIMINAL CONDUCT**
        a. Definition : Repetitive Criminal Conduct is    conviction or adjudication for the same or   similar offense on two or more previous, separate   occasions. (SEE POLICY NO. 4)

    4. **NEED FOR CORRECTIONAL TREATMENT**
        a. The defendant is in need of correctional treatment which can be most effectively provided if he is placed in total confinement. [Standard 4 I.B]

    5. **UNDUE DEPRECIATION OF OFFENSE**
        a. Definition : It would unduly depreciate the seriousness of the offense to impose a sentence of other than total confinement. [Standard 4 I.D.]

    6. **MAJOR ECONOMIC OFFENSE OR SERIES OF OFFENSES**:identified by a consideration of any of the following factors:
        A.The offense involved multiple victims or multiple incidents per victim;
        B. the offense involved attempted or actual monetary loss substantially greater than typical for the offense;

A27

C. the offense involved a high degree of sophistication or planning, or occurred over a lengthy period of time;

D. The defendant used his/her position of trust, confidence or fiduciary responsibility to facilitate the offense.

7. **PRIOR ABUSE OF VICTIM**:On prior occasions, the defendant has harassed, threatened, or physically abused the victim of the current offense.

8. **CUSTODY STATUS AT TIME OF OFFENSE**:The offender was on bail, early release from incarceration, or was serving a sentence in other than Level V at the time the offense was committed.

9. **LACK OF REMORSE**: The offender has demonstrated a total lack of remorse or acceptance of responsibility with regard to the offense.

10. **BETRAYAL OF PUBLIC TRUST**:The offender, in attempting to gain,or while holding, public office by appointment or election, betrayed the Public Trust by his or her unlawful conduct.

11. **SUPERVISION TO MONITOR RESTITUTION**: A long period of supervision is necessary to monitor the offender's restitution responsibilities. Penalty Note: Applicable to sentences involving **less than Level V time** only.

12. **LACK OF AMENABILITY:**The defendant has demonstrated a lack of amenability to lesser restrictive sanctions through violation of a prior period of probation, or a failure to meet the conditions of a prior or current period of probation.

13. **VULNERABILITY OF VICTIM:**The Defendant knew, or should have known, that the victim of the offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health.

14. **STATUTORY AGGRAVATION**: The current offense carries with it a statutory minimum mandatory period of incarceration which exceeds the sentencing guidelines.

15. **STATUTORY HABITUAL OFFENDER:**The Court, on motion, determined the defendant to be an habitual offender under the provisions of 11 Del.C., s4214, thus calling for a sentence of incarceration which exceeds the sentencing guidelines.

16. **RULE 11 SENTENCE:** The sentence was in accord with a Rule 11 Plea Agreement, even though the agreed sentence was outside these guidelines. The reason for the agreed sentence to be outside the presumptive sentence should be stated in the Plea Agreement.

*17. **CHILD DOMESTIC VIOLENCE VICTIM:** The person who is a victim in domestic violence is a      child.

*18. **OFFENSE AGAINST A CHILD:** The victim in the offense was a child under 16 years old.

(*Revisions 10/8/98)

| MITIGATING FACTORS FOR EXCEPTIONAL SENTENCES |
| --- |

1. **VICTIM INVOLVEMENT**: To a significant degree, the victim was an initiator, willing participant, aggressor, or instigator of the incident.

A 28

2. **VOLUNTARY REDRESS OR TREATMENT**:<u>Before detection,</u> the defendant compensated, or made a good faith effort to compensate, the victim of the criminal conduct for any damage or injury sustained, or, <u>before detection,</u> he voluntarily sought professional help for drug/alcohol treatment, or for any other recognized compulsive behavioral disorders related to the offense.

3. **UNDER DURESS OR COMPULSION**: The defendant committed the crime under duress, coercion, emotional distress, threat or compulsion insufficient to constitute a complete defense but which significantly affected his or her conduct.

4. **INDUCEMENT BY OTHERS**:The defendant, with no apparent predisposition to do so, was induced by others to participate in the crime.

5. **PHYSICAL/MENTAL IMPAIRMENT**: The offender, because of physical or mental impairment, lacked substantial capacity for judgement when the offense was committed. The voluntary use of intoxicants (drugs or alcohol) does not fall within the purview of this circumstance.

6. **CONCERN FOR VICTIM BY NON-PRINCIPAL**: The offense was principally accomplished by another person and the defendant manifested extreme caution or sincere concern for the safety or well-being of the victim.

7. **NO PRIOR CONVICTIONS**

8. **TREATMENT NEED EXCEEDS NEED FOR PUNISHMENT**:The offender is in greater need of an available treatment program than of punishment through incarceration.

9. **COULD LOSE EMPLOYMENT**:The offender is gainfully employed and will more than likely lose his/her job if the sentencing standard is imposed.

10. **STATUTORY MITIGATION**
    a. Regarding violation of 16 <u>Del.C.,</u> s4752 or s4761(2), see 16 <u>Del</u> <u>C.,</u> s4763(b)(1).
    b. Regarding violation of 16 <u>Del.C.,</u> s4754, see 16 <u>Del.C.,</u> s4763(b)(2).
    c. Regarding violation of 16 <u>Del.C.,</u> s4753 or s4754, see <u>16 Del.C.,</u> s4764.

11. **ASSISTANCE TO PROSECUTION**: Defendant rendered substantial assistance to Authorities in the investigation and/or prosecution of this or other crimes.

12. **MENTAL RETARDATION**
    a. Defendant is "significantly subaverage in general intellectual function" (usually interpreted as an IQ score of 70 or less); **AND** b. "has deficts in adaptive behavior" (has insufficient life skills to get along without constant assistance from others); **AND** c. "manifested the above handicaps during the developmental period". (usually interpreted as having experienced the onset of handicap at the age of 21 or younger).

13. **RULE 11 SENTENCE**:The sentence was in accord with a Rule 11 Plea Agreement, even though the agreed sentence was outside these guidelines. The reason for the agreed sentence to be outside the presumptive sentence should be stated in the Plea Agreement  .

53

A29

---

STATEMENTS OF POLICY

---

1. The purposes of the Sentencing Standards are as follows:
   a. To incapacitate, through incarceration, the violence prone offender.
   b. To avoid, in so far as possible, the incarceration of the non-violent offender for the purposes of:
      1. Enabling the offender to make any ordered restitution in a more timely manner.
      2. Enabling participation in programs aimed at rehabilitation of the offender.
      3. Conserving the limited incarceration facilities for use by violent felons.

2. For the purposes of sentencing, a violence-prone offender is defined as one for whom the current most serious offense is a crime included in the current list of violent crimes. (See definition sheets)

3. For the purposes of sentencing, only those offenses adjudicated at age 14 or older shall be counted in prior history.

4. for the purposes of sentencing, a conviction-free period of ten (10) years after final release from incarceration, or from date of sentence if only probation at levels I thru IV was ordered, shall be sufficient to "wash" the criminal history prior to that date. Felony A and Felony B crimes are excluded from this policy and should always be considered at time of sentencing.

5. In an instance where an offender, who is awaiting sentencing after conviction, is brought before the court and convicted of additional charges, the sentencing order may include all the offenses in a single order. The earlier (unsentenced) offenses shall not be considered in the prior history of the later offenses unless the later offenses occurred in the period after conviction on the earlier offenses.

6. When it can be determined that two or more prior convictions were the result of a single incident, only one conviction per incident shall be considered in reaching a decision on length of incarceration. (Example: Conviction on same date of Robbery 2 <u>and</u> Possession of Deadly Weapon During Commission of Felony = 1 prior violent Felony.)
   **In addition to its normal definition, convictions for a single incident shall include all convictions resulting from a single indictment or information.**

7. When sentencing on multiple charges, prior criminal history should be considered only in determining sentence for the "lead" or most serious offense. Sentences for other current charges shall be calculated based on zero criminal history.

8. When sentencing on multiple charges and the lead offense is a violent felony, time for other current <u>violent</u> felonies will be added to Level V time. In all other instances, (e.g. misdemeanors and non-violent felonies) time will normally be added to time to be served in Levels I through III.

9. When considering multiple charges, a violent felony shall be considered to be the most serious offense, for sentence calculation purposes, even though non-violent felonies of higher classification are present.

10. When ordering a sentence, the Judge will order the offender to a specific initial level of supervision (Assessment of Risk). The judge may recommend a specific treatment program. The DOC will make every effort to assign the offender, or procure admittance into, the recommended program, or equivalent, as slots become available.

11. In those cases where the Court would consider a level IV alternative to Level V incarceration and no

A30

vacancy exists, the judge should sentence the offender to Level IV, with the proviso that the offender be held at Level V only until a Level IV facility becomes available.

12. When a Violation of Probation is involved with sentencing for new charges, the Violation should be take precedence and disposition settled as a separate action before sentence for the new offenses is ordered.

13. All probation sentences handed down at one time (levels I, II, and III) should in the normal case be imposed to run concurrently.

14. All sentencing alternatives, both supervisory and treatment, in Levels III and IV shall be reserved for use in the following priority order:
      a. Direct Sentence
      b. Standard flow-down eligibility
      c. Pretrial release

15. Traffic offenses as listed in Del.C. Title 21, **with the  exception of section 2810, Driving after Judgement  Prohibited,** will not currently come under the purview of the Sentencing Standards. However, in the interest of conserving expensive and limited prison space for the violent and proven-incalcitrant offender, it is strongly recommended that Title 21 offenders <u>not</u> be given a sentence to Level V incarceration unless they have previously been sentenced to, and failed at, supervision in Level III and Level IV, or unless incarceration is mandated by law.

16. Repetitive criminal history, as an aggravating factor, is defined as conviction or adjudication for the same or similar offense on two or more previous occasions. **This  policy is subject to the limitations outlined in Policy  Nos. 3 and 4, and to the limitations outlined in the  various misdemeanor presumptive sentencing standards.**

17. Excessive cruelty, as an aggravating factor, is defined as those facts surrounding the commission of a **violent  felony** which demonstrate such a callousness and cruelty towards the victim of the offense as to shock the conscience of the court.

**18. Aggravating factors for the use of Level V as sanction  for the non-violent categories of misdemeanor should be  limited to objective factors, such as: a. Vulnerability of victim due to age or impairment**
      **b. Lack of Amenability - If offender is or was  already at or above the presumptive Level of  Supervision.**

19. When an offender is released from incarceration by any means (good time credits, conditional release, etc.) the release will be to the highest level specified by the court, **or by statute, for any unserved sentence, or  portion thereof.** If no level has been specified, release will be to Level II by default.

20. The supervisory levels (Level IV [Quasi-Incarceration]; Level III [Intensive Supervision]; etc.) refer to the perceived risk and resultant control to be exercised over the individual.  The levels assigned to the various treatment programs refer to the approximate time requirement upon the individual participant. there is no defined correlation between the two. An offender at Level II may, as a result of evaluation, be assigned to any type of treatment program without effecting the supervision level. Therefore, a change in supervisory level does not require a change in treatment program.

21. Offenders who participate in Alternative Sentencing Programs should be required to pay for the cost of the program. A sliding scale, based on ability to pay, is currently in use. Payment of the minimum fee ($5.00 / Mo.) may be waived in case of indigency, but in such cases, the offender should be required to perform community service in its place.

A31

22. For purposes of determining conformance to standard, the final sentence, **after any suspensions,** is the determinant factor. For example, if a given sentence is 2 years at Level V suspended for 2 years at Level II, the Level II sentence is the portion which will actually be served and, therefore, the portion which will be considered as conforming (or not conforming) to the standard.

23. In those instances involving **non-violent felonies,** where a decision to incarcerate, with appropriate aggravating factors, has been made, the sentence should be **UP TO, but NOT IN EXCESS of, 25%** of the statutory maximum for the crime.

24. In those instances involving **misdemeanors,** where, due to stated aggravating factors, a decision has been reached that a sentence to incarcerate is **unavoidable,** the sentence should not exceed the **"recommended maximum"** as noted in the standards.

25. In instances when a non-TIS sentence to Level V is followed by a sentence to Level IV and/or Level III supervision, the Board of Parole may grant parole as follows:

(a) Parole to the highest level specified by the original sentencing order. Should a violation occur during the parole period, the offender would be returned before the Board of Parole for violation of parole. Upon successful completion of the required period, the Department may, if appropriate, move the offender pursuant to Policy No. 26, **if such a move is not in conflict with the Board of Parole Order.** (Revised 9/22/98)

(b) Offenders released upon reaching their short-time release date (conditional release) shall be released to serve the balance of the Level V sentence (i.e. conditional release supervision period) to the next highest level specified by the original court order **or other subsequent sentencing order.** If appropriate, the Department may move the offender pursuant to Policy No. 26, if such a move is not in conflict with the Board of Parole Order.

(c) If a paroled or mandatory-released offender is serving a court-ordered Level IV or III sentence and the unexpired portion of the Level V sentence is less than one (1) year, the Board of Parole, upon application by the Department of Correction, may issue an order discharging the offender from the balance of the Level V sentence, once an equivalent period has been successfully served at Level IV or III.

26.     In those cases where an offender is subject to sentences for more than one offense, and when the combined sentence to intermediate sanction at level IV is in excess of one year, including any work release time on a sentence of incarceration, the Department of Correction shall, absent specific objections from the judge(s), be permitted to move the offender, after one year, to a lower level of supervision, providing the offender has met, and continues to meet, the regulations and any special conditions placed upon him/her by the courts. Any lapse in meeting those conditions shall be grounds for a return to completion of the Level IV sentence without recourse to the courts.

        In like manner, combined sentences to Level III in excess of twelve months shall be subject to movement to a lower level. Such movements, both up and down, will have no effect on the overall length of sentence, except when a formal violation report is filed with the court.

27.     Any person failing to return to a Level IV facility shall be deemed to be on escape status. The facility shall cause a warrant to be issued charging the offender with Escape After Conviction and identifying him as a Level IV escapee. (See P. 35 of this Benchbook for recommended sentences.) Any such person arrested on the warrant shall be returned to the original sentencing court for both a violation hearing and the new charge.

A32

28.    Where a defendant is directly sentenced to Level IV Work Release Center, residential treatment, or Home confinement, and has awaited placement pending slot availability at Level V for a period of 90 days or one-half of the Level IV sentence (whichever is less), the department may place the individual at Level III Day Reporting Center, evaluation Phase, or another comparable alternative if the DRC is not available, and the department  shall make appropriate sentence modification recommendations to the sentencing judge upon completion of that evaluation.

29.    Level IV, work release center or halfway house, is deemed quasi-incarceration.  A defendant serving a sentence at Level IV, work release or halfway house, i.e., quasi-incarceration, is entitled to earn "good time credits" pursuant to 11 Del. C s4381(b) and (c).
       It is further the policy of SENTAC that individuals sentenced to Level IV (any variation), who must serve a term at Level V awaiting placement at Level IV, shall, during the time served with good conduct at Level V, be awarded good time pursuant to 11 Del. C. S4381(b)(2).

30.    It is the policy of SENTAC that the program entitled "Live Out" meets the definition and requirements of a Level IV sentence and may be imposed as a level IV sanction during the last 60 days of an individual's (direct or flowdown) Level IV sentence as an aid to reintegration into the community.

31. Any person arrested on a charge of escape from any Correctional facility, including both Level V and Level IV facilities, should be returned by the court to a Level V secured facility pending such hearings as may ensue from the charge.  Persons charged with such escapes should not be  released on bond. (Adopted November, 1996)

32. With regard to sentences of incarceration conditioned by section 4204(k) of Title 11, as amended in 1997, it shall be understood that such sentences are to be served in their entirety at level V, and that there shall be no diminution of such sentence by any of the normally available early release devices, including (but not limited to) good time credits, furlough, work release or community transition.  Because such sentences add significant complexity to the management of the population of incarcerated offenders, and, if used indiscriminately, would substantially increase the prison population, Section 4204(k) should be used by judges only in exceptional circumstances.
       Since imposition of  a sentence pursuant to 11 Del C., sec 4204(k) is, in effect, a departure from the presumptive sentencing guidelines, the reason for use of Sec 4204(k) must be stated on the record and included in the sentencing order.  When Section 4204(k) is used with a sentence for an escape-related offense, the reasons for its use are self explanatory and need not be stated on the record or sentencing order. (Adopted December, 1997)

A33

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE

     VS.

JOHN H BENGE

Alias: See attached list of alias names.

DOB: 10/22/1948
SBI: 00494395

| | |
|---|---|
| CASE NUMBER:<br>0301005493 | CRIMINAL ACTION NUMBER:<br>  IN03-10-1048<br>  WIRETAPS(F)<br>  PN03-10-0857<br>  BURGLARY 3RD(F)<br>  LIO:BURGLARY 2ND<br>  PN03-10-0858<br>  BURGLARY 3RD(F)<br>  LIO:BURGLARY 2ND<br>  IN03-10-1049<br>  WIRETAPS(F)<br>  IN03-10-1050<br>  WIRETAPS(F)<br>  IN03-10-0861<br>  ATT. WIRETAPS(F) |

## SENTENCE ORDER

NOW THIS 19TH DAY OF MARCH, 2004, IT IS THE ORDER OF THE
COURT THAT:

The defendant is adjudged guilty of the offense(s) charged.
The defendant is to pay the costs of prosecution and all
statutory surcharges.

  AS TO IN03-10-1048- : TIS
  WIRETAPS

  The defendant is to pay a fine in the amount of $1000.00
of which $1000.00 is suspended (see attachment).

**Effective March 19, 2004  the defendant is sentenced
as follows:**

  - The defendant is placed in the custody of the Department
of Correction for 5 year(s) at supervision level 5

  - Suspended after serving 3 year(s) at supervision level 5
**APPROVED ORDER**    1    May 14, 2004 11:05

A34

STATE OF DELAWARE
       VS.
JOHN H BENGE
DOB: 10/22/1948
SBI: 00494395

- For 1 year(s)  supervision level 3


The level 3 probation is concurrent to any level 3 under
criminal action number IS02-10-0929


**AS TO PN03-10-0857- : TIS**
**BURGLARY 3RD**

- The defendant is placed in the custody of the Department
of Correction for 3 year(s) at supervision level 5

- Suspended immediately

- For 1 year(s)  supervision level 2


**AS TO PN03-10-0858- : TIS**
**BURGLARY 3RD**

- The defendant is placed in the custody of the Department
of Correction for 3 year(s) at supervision level 5

- Suspended immediately

- For 1 year(s)  supervision level 2


**AS TO IN03-10-1049- : TIS**
**WIRETAPS**

- The defendant is placed in the custody of the Department
of Correction for 1 year(s) at supervision level 5

- Suspended immediately

- For 12 month(s)  supervision level 2


**AS TO IN03-10-1050- : TIS**
**WIRETAPS**

The defendant is to pay a fine in the amount of $1000.00

**APPROVED ORDER**    2    May 14, 2004 11:05

A 35

STATE OF DELAWARE
        vs.
JOHN H BENGE
DOB: 10/22/1948
SBI: 00494395

of which $1000.00  is suspended (see attachment).

 - The defendant is placed in the custody of the Department
of Correction for 1 year(s) at supervision level 5


 - Suspended for 12 month(s)  at supervision  level 2


 AS TO IN03-10-0861- : TIS
 ATT. WIRETAPS

 - The defendant is placed in the custody of the Department
of Correction for 1 year(s) at supervision level 5


 - Suspended immediately

 - For 12 month(s)  supervision level 2


**APPROVED ORDER**    3    May 14, 2004 11:05

A36

## SPECIAL CONDITIONS BY ORDER

STATE OF DELAWARE
        VS.
JOHN H BENGE
DOB: 10/22/1948
SBI: 00494395

                          CASE NUMBER:
                            0301005493


Have no direct or indirect contact with Stacy Smith.


Have no direct or indirect contact with Donna Benge.


The defendant shall pay any monetary assessments ordered
during the period of probation pursuant to a schedule of
payments which the probation officer will establish.


Participate and complete a certified domestic violence
intervention program.


Defendant shall receive mental health evaluation and comply
with all recommendations for counseling and treatment
deemed appropriate.


Defendant shall successfully complete anger management,
counseling, treatment program.


### NOTES
There is Zero Tolerance for any such contact direct or
indirect with Stacy Smith and Donna Benge.

Note: This sentence is outside of guidelines due to lack
of remorse.

Level 2 probation in criminal action numbers PN03-10-0857;
PN03-10-0858; IN03-10-1049; IN03-10-1050 and IN03-10-0861
is concurrent to the level 3 probation in IS02-10-0929.


                         _____
                         **JUDGE JEROME O HERLIHY**


**APPROVED ORDER**     4     May 14, 2004 11:05

A37

## FINANCIAL SUMMARY

**STATE OF DELAWARE**
     **VS.**
**JOHN H BENGE**
**DOB: 10/22/1948**
**SBI: 00494395**

                            **CASE NUMBER:**
                              0301005493

SENTENCE CONTINUED:

| | |
|---|---:|
| TOTAL DRUG DIVERSION FEE ORDERED | |
| TOTAL CIVIL PENALTY ORDERED | |
| TOTAL DRUG REHAB. TREAT. ED. ORDERED | |
| TOTAL EXTRADITION ORDERED | |
| TOTAL FINE AMOUNT ORDERED | .00 |
| FORENSIC FINE ORDERED | |
| RESTITUTION ORDERED | |
| SHERIFF, NCCO ORDERED | 45.00 |
| SHERIFF, KENT ORDERED | |
| SHERIFF, SUSSEX ORDERED | |
| PUBLIC DEF, FEE ORDERED | 50.00 |
| PROSECUTION FEE ORDERED | 100.00 |
| VICTIM'S COM ORDERED | 360.00 |
| VIDEOPHONE FEE ORDERED | 6.00 |
| | |
| TOTAL | 561.00 |

**APPROVED ORDER**     5     May 14, 2004 11:05

A38

<u>SURCHARGES</u>

STATE OF DELAWARE
      VS.
JOHN H BENGE
DOB: 10/22/1948
SBI: 00494395

CASE NUMBER:
    0301005493

| <u>CRIM ACTION #</u> | <u>DESCRIPTION</u> | <u>AMOUNT</u> |
|---|---|---|
| IN03-10-1048 | VCF | 180.00 |
| IN03-10-1050 | VCF | 180.00 |

**APPROVED ORDER**     6     May 14, 2004 11:05

A39

## LIST OF ALIAS NAMES

**STATE OF DELAWARE**
        **VS.**
**JOHN H BENGE**
**DOB: 10/22/1948**
**SBI: 00494395**

                        CASE NUMBER:,
                            0301005493


JOHN BENGE

**APPROVED ORDER**     7     May 14, 2004 11:05

A40

## AGGRAVATING-MITIGATING

STATE OF DELAWARE
     VS.
JOHN H BENGE
DOB: 10/22/1948
SBI: 00494395

                        CASE NUMBER:
                          0301005493

**AGGRAVATING**
NEED FOR CORRECTIONAL TREATMENT

**APPROVED ORDER**     8     May 14, 2004 11:05

A41

IN THE SUPREME COURT OF THE STATE OF DELAWARE


JOHN H. BENGE, JR.              )
                               )
        Defendant-Below,        )
        Appellant,              )
                               )
v.                              )         No. 37, 2004
                               )
STATE OF DELAWARE,              )
                               )
        Plaintiff-Below,        )
        Appellee.               )

———————————————————————————————————————————————

ON APPEAL FROM THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

———————————————————————————————————————————————




APPELLANT'S OPENING BRIEF




                        BERNARD J. O'DONNELL (#252)
                        Office of Public Defender
                        Carvel State Office Building
                        820 N. French Street
                        Wilmington, DE 19801

                        Attorney for Appellant

Dated:  August 17, 2004


A42

TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . i

TABLE OF CITATIONS  . . . . . . . . . . . . . . . . . iii

NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . 1

STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . 3

ARGUMENT

      I.   UNDER *BLAKELY V. WASHINGTON*, THE
           IMPRISONMENT TERM IMPOSED ON THE DEFENDANT
           THAT EXCEEDED HIS SENTAC PRESUMPTIVE
           SENTENCE VIOLATED THE CONSTITUTIONAL
           PROHIBITION AGAINST INCREASING A SENTENCE
           BEYOND THAT WHICH IS OTHERWISE PERMISSIBLE
           ON THE BASIS OF A JUDICIAL FINDING OF FACT
           THAT WAS NOT REFLECTED IN THE JURY'S
           VERDICT . . . . . . . . . . . . . . . . . . . 5

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . 10

COURT'S RULING  . . . . . . . . . . . . . . . . . Exhibit

SENTENCE ORDER  . . . . . . . . . . . . . . . . . Exhibit

A 43

TABLE OF CITATIONS

Cases

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) . . . . . . .  5,7

*Blakely v. Washington*, 542 U.S. ___, 124
S.Ct 2531 (June 24, 2004) . . . . . . . . . . . . . . . passim

*Gaines v. State*, 571 A.2d 765 (Del. 1990) . . . . . . . . .  6

*Mayes v. State*, 604 A.2d 839 (Del. 1992) . . . . . . . . .  7

*Siple v. State*, 701 A.2d 79 (Del. 1997) . . . . . . . . .  6

Statutes

11 *Del. C.* § 6580(c) . . . . . . . . . . . . . . . . .  7

11 *Del. C.* § 4204 (m) . . . . . . . . . . . . . . . . .  8

11 *Del. C.* § 6581(c)(3) . . . . . . . . . . . . . . . . .  8

Other Authorities

Delaware Sentencing Accountability
Commission Benchbook 2003-2004 . . . . . . . . . . . . . .  3

A 44

## NATURE AND STAGE OF PROCEEDINGS

On January 13, 2004, the Defendant pleaded guilty to two counts of burglary third degree, three counts of unlawful use of a recording device, and one count of attempted unlawful use of a recording device.

He was sentenced on March 19, 2004 to, *inter alia*, 5 years imprisonment at Level V suspended after 3 years for 1 year probation at Level III on the first wiretapping count. On the remaining three counts of wiretapping, he was sentenced on each count to 1 year imprisonment at Level V suspended for 1 year probation at Level II. On each of the burglary third degree counts, he was sentenced to 3 years at Level V suspended for one year of Level II probation.

A notice of appeal was docketed thereafter and this is the Defendant's opening brief on direct appeal.

1

A45

## SUMMARY OF THE ARGUMENT

1.  The Defendant was sentenced by the Superior Court to 3 years imprisonment for unlawful use of a recording device. Delaware's Sentencing Accountability Commission ("SENTAC") guidelines called for the Defendant to be sentenced to up to 12 months probation unless the sentencing judge identified an additional aggravating factor or factors that warranted an increased sentence. The sentencing judge found that the Defendant lacked remorse as justification imposing an additional three years of imprisonment. This increased imprisonment term violated the constitutional prohibition against increasing a sentence beyond that which is otherwise permissible on the basis of a judicial finding of fact that was not reflected in the jury's verdict.

2

A46

## STATEMENT OF FACTS

On January 13, 2004, the Defendant pleaded guilty to two counts of burglary third degree, three counts of unlawful use of a recording device and one count of attempted unlawful use of a recording device. (A-4).

The offenses occurred during the early part of 2002 when the Defendant illegally entered his former wife's new residence in order to install and retrieve a recording device for the purpose of eavesdropping on his former wife and her paramour.

On the first wiretapping offense, the Defendant was sentenced to 5 years Level V imprisonment suspended after 3 serving years imprisonment for 1 year probation at Level III. (A-8). The imposed term of three years Level V imprisonment exceeded the SENTAC presumptive sentence of up to 12 months probation at Level II.[1] Delaware Sentencing Accountability Commission Benchbook 2003-2004 ("SENTAC").

The Superior Court identified and relied on the

---

[1] The sentences for the remaining offenses followed and did not exceed the SENTAC presumptive guidelines. On the other three counts of wiretapping, the Defendant was sentenced on each count to 12 months imprisonment at Level V suspended for 1 year probation at Level II. On each of the burglary third degree offenses, he was sentenced to 3 years at Level V suspended for one year of Level II probation. (Sentencing Order Exhibit Attached).

3

A47

Defendant's "lack of remorse" as the basis for its imposition

of the 3 year sentence of imprisonment that exceeded the

SENTAC presumptive sentence of 12 months probation. (A-10).

A48

I.        UNDER *BLAKELY V. WASHINGTON*, THE
          IMPRISONMENT TERM IMPOSED ON THE
          DEFENDANT THAT EXCEEDED HIS SENTAC
          PRESUMPTIVE SENTENCE VIOLATED THE
          CONSTITUTIONAL PROHIBITION AGAINST
          INCREASING A SENTENCE BEYOND THAT
          WHICH IS OTHERWISE PERMISSIBLE ON THE
          BASIS OF A JUDICIAL FINDING OF FACT
          THAT WAS NOT REFLECTED IN THE JURY'S
          VERDICT.

                    Standard and Scope of Review

          Where no facts are in dispute, the standard and

scope of review is plenary on a question of law.

                            Argument

          The judicial enhancement of the Defendant's

sentence from 12 months probation to 3 years imprisonment

based on the judicial finding of his "lack of remorse"

contravened the constitutional principle recently recognized

by the United States Supreme Court in *Blakely v. Washington*,

542 U.S. ___, 124 S.Ct 2531 (June 24, 2004). In *Blakely*, the

Court found that a judicial enhancement of the Defendant's

sentence based on the defendant's "deliberate cruelty," which,

absent that finding, was beyond that permitted under the State

of Washington's sentencing guidelines violated the

constitutional principle the Court previously identified in

*Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000): "Other than

the fact of a prior conviction, any fact that increases the

                              5

                           A49

penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond reasonable doubt."

In this case, the sentencing judge increased the Defendant's sentence from 12 months probation to 3 years imprisonment based on his similar finding of the Defendant's lack of remorse: "This sentence is outside the guidelines because I find there is a lack of remorse among other matters." (A-10).

Before *Blakely*, this enhancement of the Defendant's sentence based on his alleged "lack of remorse" did not invite constitutional question in Delaware because this Court had already found that increasing the Defendant's sentence based on judicially found aggravating circumstances beyond that otherwise provided for by the SENTAC guidelines was legally permissible so long as the Defendant's sentence did not exceed the statutory maximum: "At the present time, there is no constitutional or statutory right in Delaware to appeal a criminal punishment on the sole basis that it deviates from the SENTAC sentencing guidelines." *Siple v. State*, 701 A.2d 79, 83 (Del. 1997) (citing *Gaines v. State*, 571 A.2d 765, 767 (Del. 1990). *Also Siple*, 701 A.2d at 83 ("Except for these constitutional and legal restraints, it is

6

A50

well-established that appellate review of criminal sentences is limited in Delaware to a determination that the sentence is within the statutory limits." (*citing Mayes v. State*, 604 A.2d 839, 842 (Del. 1992)).

After *Blakely*, however, it is now obvious that the judicial increase in the Defendant's sentence from 12 months of probation called for under the SENTAC guidelines to 3 years imprisonment based on the judge's fact-finding of the Defendant's lack of remorse now provides a constitutional basis for appeal even if the sentence of imprisonment was no more than the statutory maximum provided by the legislature.

That is because, under *Blakely*, "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 124 S.Ct., at 2537 (emphasis in original). Without the judicial finding in this case of the aggravating circumstance of the Defendant's alleged lack of remorse, the trial judge below was limited to imposing a sentence of 12 months probation as called for under the SENTAC guidelines.[2] In order to "impose[]

---

[2] The General Assembly delegated to SENTAC the responsibility to develop sentencing guidelines for sentencing of criminal offenders. 11 *Del. C.* § 6580(c). SENTAC was commissioned to "[d]efine under what conditions of aggravation or mitigation and in what manner a sentencing judge may impose

7

A51

a sentence inconsistent with the presumptive sentences adopted by the Sentencing Accountability Commission, such court must set forth on the record its reasons for imposing such penalty." 11 *Del. C.* § 4204 (m).

The Delaware SENTAC guidelines function identically to the State of Washington's sentencing guidelines considered by the United States Supreme Court in *Blakely*. A presumptive sentencing "standard range" is provided for the offense. A judge may impose a sentence above the standard range if the judge a justification for the exceptional sentence. Aggravating circumstances specifically identified in the standards that warrant a departure from the standard sentencing range are illustrative rather than exhaustive. When a sentence outside the presumptive sentencing range is imposed, the judge must identify the reasons for imposing it. *Blakely*, 124 S.Ct., at 2535.

The Defendant's sentence was increased from 12 months probation called for under the SENTAC guidelines to 3

---

a sentence outside of the sentencing guidelines and recommend such mitigating and/or aggravating circumstances..." 11 *Del. C.* § 6581(c)(3). That its guidelines are determined by an appointed commission rather than the legislature is irrelevant to the constitutional principle presented by *Blakely*: "The fact that the Federal Sentencing Guidelines are promulgated by an administrative agency nominally located in the judicial branch is irrelevant to the majority's reasoning." *Blakely*, 124 S.Ct., at 2549 (O'Connor, J., dissenting).

8

A52

years imprisonment because the trial judge found as fact that he was not remorseful. Previously, this Court consistently found that a defendant sentenced under similar circumstances had no constitutional basis for appealing such a judicially enhanced sentence so long as the increased sentence was within the statutory range for the offense. After *Blakely*, however, it is abundantly clear that a sentencing enhancement of this nature is constitutionally impermissible even if the three years imprisonment was within the statutory range of imprisonment for the offense. "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely*, 124 S.Ct., at 2537 (emphasis in original).

Under *Blakely*, the trial judge's increase in the Defendant's sentence from 12 months probation called for under the SENTAC guidelines to three years imprisonment based on his finding of fact that the Defendant was not remorseful was constitutionally impermissible because it exceeded that which was otherwise permitted and not determined by a jury. Therefore, the sentence must be vacated and remanded for resentencing in conformance with the SENTAC guidelines.

9

A53

CONCLUSION

For the aforementioned reasons and authorities cited, the Defendant's sentencing should be vacated and remanded for resentencing.

Respectfully submitted,


BERNARD J. O'DONNELL (#252)
Office of Public Defender
820 N. French Street
Wilmington, DE  19801

Date:  August 17, 2004

10

A-54