Not Reported in F.Supp.2d                                                                                       Page 1
Not Reported in F.Supp.2d, 2003 WL 22299028 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
John Eric SCHMITZ, Petitioner,
v.
Thomas L. CARROLL, Warden, Respondent.
**No. Civ.A. 02-1527-GMS.**

Oct. 7, 2003.

MEMORANDUM AND ORDER

SLEET, J.
**\*1** Petitioner John Eric Schmitz pled guilty in the Delaware Superior Court to second degree murder. The Superior Court sentenced Schmitz to twenty years in prison. He is presently incarcerated in the Delaware Correctional Center in Smyrna, Delaware. Schmitz has filed with the court the current petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and a motion for discovery. (D.I.s 2, 3, 7.) For the reasons explained below, the court will deny his petition and dismiss the motion as moot.

I. PROCEDURAL AND FACTUAL BACKGROUND

The petitioner, John Eric Schmitz, and his co-defendant, Bruce R. Banther, were indicted in Delaware Superior Court for first degree murder, first degree conspiracy, possession of a deadly weapon during the commission of a felony, second degree forgery, and theft. The co-defendants killed Dennis Ravers with an ax. Ravers' body was found mutilated, burned, and buried in North Carolina under a trash pile. The Superior Court severed the charges and ordered separate trials for Schmitz and Banther. In 1998, Banther was tried, convicted, and sentenced to life imprisonment without eligibility for probation or parole. *See Schmitz v. State,* 748 A.2d 914, at \* \*1 (Del.2000)(*"Schmitz I").*

Jury selection for Schmitz's trial began on February 22, 1999 with a special panel summoned for that purpose. On the second day of jury selection, Schmitz's counsel and the Deputy Attorney General for the State of Delaware met in chambers before Judge Ridgely and, on the record, informed him of a proffered plea agreement. Under the terms of the plea agreement, Schmitz agreed to plead guilty to second degree murder, felony theft, and forgery in the second degree. In return, the State agreed to recommend a sentence cap of thirteen years imprisonment as permitted under Superior Court Criminal Procedure Rule 11(e)(1)(C). [FN1] The Superior Court rejected this plea agreement.

> FN1. Former Superior Court Criminal Rule 11(e)(1)(C) permitted the parties to tender an agreed upon sentence to the court, but granted the court discretion to accept or reject the plea. Either party would be able to withdraw from the plea agreement after the pre-sentence investigation and demand that the trial start over if the court later decided not to be bound by the agreed cap of thirteen years. Rule 11 was amended effective July 1, 2001 to eliminate, *inter alia,* Rule 11(e)(1)(C). Del.Super. Ct.Crim. R. 11 cmt. (2003 ed.), *cited in State v. Schmitz,* 2002 WL 484642, at \*1 (Del.Super.Mar. 28, 2002)

Approximately ninety minutes later the parties presented in open court a different plea agreement. Under the terms of the new agreement, Schmitz pled guilty to the lesser included offense of second degree murder. [FN2] In return, the State agreed to drop all the remaining charges and to recommend a sentence cap of thirteen years in prison. *See State v. Schmitz,* 2002 WL 484642, at \*1 (Del.Super.Mar. 28, 2002)(*"Schmitz 2"*).

> FN2. The conviction for second degree murder carried a minimum mandatory sentence of 10 years in prison and a maximum statutory penalty of 20 years in prison. 11

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  Page 2
Not Reported in F.Supp.2d, 2003 WL 22299028 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Del.C. §§ 635, 4205(b)(2).

After a plea colloquy with Schmitz under oath, the court accepted the guilty plea and ordered a pre-sentence investigation. On May 14, 1999, the Superior Court conducted a hearing and considered the information contained in the pre-sentence report along with the arguments presented by both parties. The court sentenced Schmitz to the statutory maximum 20 years in prison for second degree murder. *See Schmitz 2,* at *2.

On May 20, 1999, Schmitz filed a motion for reconsideration or reduction of sentence. The Superior Court denied this motion. *See Schmitz 1,* at * *2. Schmitz appealed, and the Delaware Supreme Court affirmed the Superior Court's judgment. *Id.*

**\*2** Schmitz then filed a motion for post-conviction relief under Superior Court Criminal Rule 61. In his application, Schmitz asserted that Judge Ridgely's participation in the initial plea agreement discussions violated his right to due process, his counsel provided ineffective assistance of counsel, and the State breached the terms of the plea agreement concerning the recommendation of sentence. *See Schmitz 2,* at *1. Simultaneously, Schmitz filed a motion for the recusal of Judge Ridgely. (D.I. 20, Appellant's Op. Br.App. at A-13.) On February 12, 2001, the Superior Court denied the motion for recusal and dismissed the due process claim in Schmitz's Rule 61 motion. The Superior Court ordered an evidentiary hearing and appointed counsel to represent Schmitz on the remaining claims in his Rule 61 motion. *See State v. Schmitz,* ID No. 9705000274 (Del.Super.Ct. Feb. 12, 2001)(*"Schmitz 3"* ).

After conducting an evidentiary hearing and hearing arguments from counsel with respect to the two remaining Rule 61 claims, the Superior Court denied Schmitz's Rule 61 motion. *Schmitz 2.* This decision was affirmed on appeal. *Schmitz v. State,* No. 226,2002 (Del. Aug. 27, 2002)(*"Schmitz 4"* ).

II. GOVERNING LEGAL PRINCIPLES

A. Standard of Review

A federal district court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Before the court can reach the merits of such a petition, the court must first determine whether the requirements of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are satisfied. When the petitioner is in state custody pursuant to a state court judgment, and the federal habeas claim was adjudicated in state court on the merits, then a federal court cannot grant a writ of habeas corpus unless it finds that the state court decision either: (1) was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

The Third Circuit requires federal courts to utilize a two-step analysis when applying the § 2254(d)(1) standard. *Matteo v. Superintendent, SCI Albion,* 171 F.3d 877, 880 (3d Cir.1999)(en banc); *see also Werts v. Vaughn,* 228 F.3d 178 (3d Cir.2000), *cert. denied,* 532 U.S. 980 (2001). The first step requires federal courts to identify the applicable Supreme Court precedent and then determine whether the state court decision is contrary to this clearly established Supreme Court precedent. *Matteo,* 171 F.3d at 888. "Relief is appropriate only if the petitioner shows that the 'Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." ' *Werts,* 228 F.3d at 197 (quoting *O'Brien v. Dubois,* 145 F.3d 16, 24-25 (1st Cir.1998)). The petitioner cannot merely demonstrate "that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome." *Matteo,* 171 F.3d at 888. Under this standard, habeas relief cannot be granted if the federal court merely disagrees with a reasonable state court interpretation of the applicable precedent. *Id.*

**\*3** If the federal court concludes that the state court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d     Page 3
Not Reported in F.Supp.2d, 2003 WL 22299028 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

adjudication is not contrary to the Supreme Court precedent, the court must then determine whether the state court judgment rests upon an objectively unreasonable application of clearly established federal law, as determined by the United States Supreme Court. *Id.* at 880. This analysis involves determining "whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified. If so, then the petition should be granted." *Id.* at 891. Moreover, "in certain cases it may be appropriate to consider the decisions of inferior federal courts as helpful amplifications of Supreme Court precedent." *Id.* at 890. However, once again, a federal court's mere disagreement with the state court's decision does not constitute evidence of an unreasonable application of Supreme Court precedent by a state court. *Werts,* 228 F.3d at 197. Rather, the appropriate inquiry is "whether the state court's application of Supreme Court precedent was objectively unreasonable." *Id.* (citations omitted). For example, if the state court identifies the correct legal principle, "but unreasonably applies that principle to the facts of the prisoner's case," then habeas corpus relief is appropriate. *Williams v. Taylor,* 529 U.S. 362, 413 (2000).

The AEDPA requires a federal court to presume that a state court's determinations of fact are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn,* 209 F.3d 280, 286 (3d Cir.2000), *cert. denied,* 531 U.S. 1084 (2001). When the standard is applied to an ineffective assistance of counsel claim, which involves a mixed question of law and fact, the presumption of correctness still prevails for the portion of the state court's determination regarding historical facts. *Lawrie v. Snyder,* 9 F.Supp.2d 428, 434 (D.Del.1998); *Strickland v. Washington,* 466 U.S. 668, 698 (1984). The petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. *Campbell,* 209 F.3d at 286.

This restriction of § 2254(d) only applies to claims that have been "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d); *Appel v. Horn,* 250 F.3d 203, 210 (3d Cir.2001). Consequently, if the state court did not reach the merits of the claim, then this standard does not apply on federal habeas review. *Jermyn v. Horn,* 266 F.3d 257, 299-300 (3d Cir.2001); *Appel,* 250 F.3d at 210. Rather, where a state court did not adjudicate a claim on the merits, a federal court " 'must examine, without special heed to the underlying state court decision,' whether the claim has merit." *Jermyn,* 226 F.3d at 300 (quoting *Appel,* 250 F.3d at 210). However, in analyzing the merits, the federal court must still presume any factual determinations made during the state court proceeding to be correct. 28 U.S.C. § 2254(e)(1). A petitioner can only rebut this presumption of correctness by clear and convincing evidence. *Id.*

B. Exhaustion and Procedural Default

**\*4** A federal habeas petitioner in state custody pursuant to a State court judgment must also satisfy the procedural requirements contained in the AEDPA.[FN3] The federal habeas statute states:

> FN3. Additionally, a federal habeas petition must be brought within the one-year period of limitations required by 28 U.S.C. § 2244(d)(1). The statute of of limitations is not at issue here.

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that -
(A) the applicant has exhausted the remedies available in the courts of the State; or
(B)(i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). Before seeking habeas relief from a federal court, a state petitioner must first exhaust remedies available in the state courts. The state prisoner must give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 4
Not Reported in F.Supp.2d, 2003 WL 22299028 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 844-45 (1999). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts,* 228 F.3d at 192.

To satisfy the exhaustion requirement, a petitioner must demonstrate that the claim was fairly presented to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1997) (citations omitted); *Coverdale v. Snyder,* 2000 WL 1897290, at *2 (D.Del. Dec. 22, 2000). However, if the petitioner did raise the issue on direct appeal, then the petitioner does not need to raise the same issue again in a state post-conviction proceeding. *Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1996); *Evans v. Court of Common Pleas, Delaware County, Pennsylvania,* 959 F.2d 1227, 1230 (3d Cir.1992) (citations omitted).

To "fairly present" a federal claim for purposes of exhaustion, a petitioner must present to the state's highest court a legal theory and facts that are "substantially equivalent" to those contained in the federal habeas petition. *Coverdale,* 2000 WL 1897290, at *2; *Doctor v. Walters,* 96 F.3d 675, 678 (3d Cir.1996). It is not necessary for the petitioner to identify a specific constitutional provision in his state court brief, provided that "the substance of the ... state claim is virtually indistinguishable from the [constitutional] allegation raised in federal court." *Santana v. Fenton,* 685 F.2d 71, 74 (3d Cir.1982)(quoting *Biscaccia v. Attorney General of New Jersey,* 623 F.2d 307, 312 (3d Cir.1980). Rather, a petitioner may assert a federal claim without explicitly referencing a specific constitutional provision by: (1) relying on pertinent federal cases employing constitutional analysis; (2) relying on state cases employing constitutional analysis in like fact situations; (3) asserting a claim in terms so particular as to call in mind a specific right protected by the Constitution; or (4) alleging a pattern of facts that is well within the mainstream of constitutional litigation. *McCandless v. Vaughn,* 172 F.3d 255, 261 (3d Cir.1999); *Evans,* 959 F.2d at 1231. Further, the state court does not have to actually consider or discuss the issues in the federal claim, provided that the petitioner did, in fact, present such issues to the court. *See Swanger v. Zimmerman,* 750 F.2d 291, 295 (3d Cir.1984).

**\*5** A petitioner's failure to exhaust state remedies will be excused if there is no available state remedy. *Lines,* 208 F.3d at 160; *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). However, even though these claims are treated as exhausted, they are procedurally defaulted. *Lines,* 208 F.3d at 160. A federal court may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice or a "fundamental miscarriage of justice." *McCandless,* 172 F.3d at 260; *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1999); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir.1992).

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner can demonstrate "actual prejudice" by showing "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494. However, if the petitioner does not allege cause for the procedural default, then the federal court does not have to determine whether the petitioner has demonstrated actual prejudice. *See Smith v. Murray,* 477 U.S. 527, 533 (1986).

Alternatively, a federal court may excuse procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir.2001). In order to demonstrate a "miscarriage of justice," the petitioner must show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. A petitioner establishes "actual innocence" by proving that no reasonable juror would

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 5
Not Reported in F.Supp.2d, 2003 WL 22299028 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

have voted to find him guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 523-24 (3d Cir.2002).

### III. DISCUSSION

Schmitz asserts four grounds in his habeas petition. First, he claims that Superior Court Judge Ridgely's participation in the discussion regarding the first plea agreement violated his right to due process. Schmitz also asserts that Judge Ridgely's comment about his co-defendant's trial demonstrated that he was extra-judicially biased. Second, Schmitz contends that the manner in which the State recommended the thirteen year cap violated the terms of the plea agreement. Third, Schmitz claims that his counsel provided ineffective assistance of counsel due to eight alleged errors. Finally, Schmitz asserts that the sentencing court violated his right to due process by relying on "Constitutionally prohibited" points mentioned in the presentence report in rendering the maximum twenty year sentence. He also claims that the sentencing court violated his right to due process by departing from Delaware's Sentencing Guidelines.

***6** The State asserts that Schmitz's claims are without merit and asks the court to dismiss the petition. Schmitz's federal habeas petition is now ripe for review.

### A. Judicial involvement in the plea negotiations and alleged judicial bias did not violate Schmitz's due process right to a fair trial

Schmitz claims that he was denied the right to a fair trial because Delaware Superior Court Judge Ridgely participated in plea negotiations during an office conference. (D.I. 2 at 5-6.) He contends that "the Court's comments during the office conference ... went beyond exploring the presented agreement, to repeatedly attempting to facilitate the Court's preferred disposition." (D.I. 3 at 6.) Schmitz claims that Delaware Superior Court Rule 11 and "constitutional precedent" strictly prohibit judicial participation in plea negotiations. (*Id.* at 3.)

The State claims that Judge Ridgely's comments did not constitute involvement in the plea negotiations. Rather, the comments "simply articulated a correct statement of law: the court could reject the plea agreement in an exercise of discretion specifically contemplated under former Rule 11(e)(1)(C)." (D.I. 15 at 6.)

On the second day of jury selection in Schmitz's first degree murder trial, the parties presented a Rule 11(e)(1)(C) plea agreement to the Superior Court. The terms of this agreement proposed that Schmitz would plead guilty to the lesser included offenses of second degree murder and second degree conspiracy and also to the charges of second degree forgery and felony theft. The agreed upon sentence under then-existing Superior Court Criminal Procedure Rule 11(e)(1)(C) was 13 years in prison with credit for time served. After clarifying that the recommended "cap" was pursuant to Rule 11(e)(1)(C), Judge Ridgely expressed his concern that the proposed plea was being offered during the middle of jury selection. (D.I. 4 at 18.) He then rejected the plea agreement. (D.I. 4 at 19-20.)

### 1. Trial judge did not inappropriately participate in plea negotiations

Although the record before the court does not clearly indicate whether Schmitz presented his claim regarding judicial involvement in the plea discussions in his original Rule 61 motion, the State correctly acknowledges that Schmitz exhausted state remedies because he presented this claim on post-conviction appeal. (D.I. 15 at 4.) The Delaware Supreme Court affirmed the Superior Court's denial of post-conviction relief "on the basis of and for the reasons assigned by the Superior Court in its well-reasoned decisions dated February 12, 2001 and March 28, 2002." *Schmitz 4.*

While the court agrees that Schmitz exhausted state remedies, the court concludes that neither of the state courts adjudicated this claim on the merits under constitutional or federal law. Although the Superior Court did acknowledge that Schmitz's motion for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22299028 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

post-conviction relief alleged a violation of his due process rights, the Superior Court did not examine this claim in light of federal law. Instead, the Superior Court's decision was based on an application of Delaware Superior Court Criminal Rule 11(e) to the facts of the case. For example, the Superior Court stated:

**\*7** [D]efendant's first ground for postconviction relief must also be denied summarily because it is refuted by the record. Defendant has alleged that the trial judge participated in plea negotiations in violation of his due process rights. The Court simply expressed concern about being bound by a Rule 11(e)(1)(C) agreement after jury selection had commenced. Furthermore, any refusal by the Court to accept a Rule 11(e)(1)(C) agreement was not improper nor was it participation in plea discussions. Rather, it was the exercise of the Court's independent judgment and authority to only allow a plea during jury selection which would resolve the case without the possibility of further trial proceedings.

*Schmitz 3.* In light of the foregoing, the deferential standard of review under § 2254(d) does not apply and the court must review this claim on the merits. *See Jermyn,* 226 F.3d at 30; *Appel,* 250 F.3d at 210. [FN4]

> FN4. However, the court notes that its conclusion would be the same under the § 2254(d)(1) standard.

To the extent Schmitz claims that the Superior Court violated Delaware's Rule 11, this claim is not cognizable in this federal habeas proceeding. The AEDPA restricts federal habeas review of a petition to claims based "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims based on errors of state law are not cognizable on federal habeas review, *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Riley v. Taylor,* 277 F.3d 261, 310 n. 8 (3d Cir.2001); *Bright v. Snyder,* 218 F.Supp.2d 573, 581 n. 1 (D. Del 2002), even if a petitioner asserts questions of state law as due process violations. *See Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir.1988); *Willeford v. Estelle,* 538 F.2d 1194, 1198 (5th Cir.1976). Although Schmitz craftily creates an argument that his due process rights were violated due to an alleged violation of Delaware's Rule 11, this alleged violation does not present a cognizable claim for federal habeas relief. [FN5]

> FN5. Moreover, the court must note that Delaware's Rule 11 does not explicitly prohibit judicial involvement in plea negotiations. In fact, language prohibiting such involvement was actually deleted from the rule in November 1997. *See* Del.Super. Ct.Crim. R. 11, cmt. (2003).

However, Schmitz's claim that Judge Ridgely's participation in the plea negotiation violated his right to due process does assert a proper claim for federal habeas review. Where a criminal defendant has pled guilty on the advice of counsel, the scope of the federal habeas inquiry is limited to examining "the nature of the advice and the voluntariness of the plea." *Tollet v. Henderson,* 411 U.S. 258, 266 (1973). Whether a plea of guilty is voluntary is a question of federal law. *See Miles v. Dorsey,* 61 F.3d 1459 (10th Cir.1995). Yet, to the extent that the determination of voluntariness is based upon a review of the facts found in state court, the factual determinations are presumed to be correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Dickerson v. Vaughn,* 90 F.3d 87, 90 (3d Cir.1996)(where the voluntariness of a guilty plea was reviewed under the deferential presumption of correctness formerly only accorded to state court factual findings); *Werts v. Vaughn,* 228 F.3d 178, 196 (3d Cir.2000); *Gattis v. Snyder,* 46 F.Supp.2d 344, 366 (D.Del.1999).

**\*8** Judicial involvement in plea negotiations does not violate due process unless such involvement actually coerced the defendant to plead guilty or no contest. *Miles,* 61 F.3d at 1467; *Brown v. Peyton,* 435 F.2d 1352, 1356 (4th Cir.1970). The question to ask is whether the nature and circumstances of the judge's participation coerced the defendant into accepting the plea. *Miles,* 61 F.3d at 1467; *accord, Frank v. Blackburn,* 646 F.2d 873, 882 (5th Cir.1980); *Toler v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 22299028 (D.Del.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 7

*Wyrick,* 563 F.2d 372, 374 (8th Cir.1977). Because the United States Supreme Court has not directly addressed what type of judicial involvement renders a defendant's plea involuntary, the court will look to other federal decisions for guidance.

A court may properly find that judicial involvement in plea discussions does not render the plea involuntary if the judge did not initiate the plea discussions. *Damiano v. Gaughan,* 770 F.2d 1 (1st Cir.1985). A judge may also properly inquire as to whether the defendant understands the plea bargain and discuss how a possible plea would affect trial scheduling. *See United States v. Ebel,* 299 F.3d 187, 191 (3d Cir.2002). Further, a judge's comments regarding the length of the sentence under the plea agreement are not automatically coercive. *See id.* at 191-92. For example, the record might reveal that a judge's decision to reject a plea was not coercive even where the judge previously communicated concern about the leniency of the sentence under the proffered plea agreement. *United States v. Torres-Echavarria,* 129 F.3d 692 (2d Cir.1997). This result is especially appropriate when the defendant proposes to plead to a lesser offense than the one contained in his original indictment. *Id.* at 697.

With these principles in mind, the court turns to the merits of Schmitz's claim. First, the court must determine whether Judge Ridgely's statements actually constituted involvement in the plea process. Because this inquiry is a factual determination, the court presumes the Superior Court's finding to be correct: the comments did not amount to participation in the plea discussions. Indeed, the Superior Court specifically stated that the record refutes such a claim. However, it appears that Schmitz cites to the conference transcript in order to support his claim that the comments "went so far as to promote and advocate alternatives to the initial plea offer." Thus, the court will review the conference transcript to determine if it rebuts the Superior Court's factual determination.

Although the court can understand why, when viewing Judge Ridgely's comments in isolation, Schmitz might believe that these statements constitute alternatives to the proffered plea, a comparison between these comments and the language contained in former Rule 11(e) clearly demonstrates that Judge Ridgely was merely re-stating his understanding of Rule 11(e). When Schmitz pled guilty in 1999, the relevant sections of Rule 11(e) read as follows:

**\*9** (e) Plea Agreement Procedure

(1) In General. The attorney general and the attorney for the defendant ... may engage in discussions with a view toward reaching an agreement that, upon entering of a plea of guilty ... the attorney general will do any of the following:

(B) Make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) Agree that a specific sentence is the appropriate disposition of the case.

(2) Notice of Such Agreement. If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, upon a showing of good cause, in camera, at the time the plea is offered. If the agreement is of the type specified in subdivision (e)(1)(C), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report.

(4) Rejection of a Plea Agreement. If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to withdraw the plea, and advise the defendant that if the defendant persists in a guilty plea or plea of nolo contendre the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

Del.Super. Ct. Crim R.. 11 (1995)(emphasis added) [FN6]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d																				Page 8
Not Reported in F.Supp.2d, 2003 WL 22299028 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

> FN6. The court obtained the language of former Rule 11(e) from *State v. Smith,* 1995 WL 264712 (Del.Super.Apr. 7, 1995). This version of the rule was in effect until November, 1997. *See* Del.Super. Crim. R. 11, cmt (2003).

After clarifying that the recommended "cap" was pursuant to Rule 11(e)(1)(C), Judge Ridgely expressed his concern that the proposed plea was being offered during the middle of jury selection. (D.I. 4 at 18.) He then proceeded to explain his understanding of a Rule 11(e)(1) agreement:

> I direct your attention that Rule 11(e)(1) has two alternatives with regard to sentencing. Under item B, the agreement may make a recommendation, or the State may agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the Court; or the parties may agree that, under C, that a specific sentence is the appropriate disposition of the case.
>
> As you know, under item C if the Court chooses at some point to reject or not be bound by the sentencing recommendation, the defendant is then given the opportunity to withdraw the plea.
>
> As I stated earlier, I will hear from you further, but my opinion at this stage of the proceeding is to not be bound by Rule 11(e)(1)(C), but we will have room - we will have discussion as that inclination stipulates. Of course, as you know, there are various ways to structure limits on how the Court may sentence. But the option of starting this trial all over again is not one which I am in favor of. So we will recess this conference.

**\*10** (D.I. 4 at 19-20.) (emphasis added)

Under the Rule 11(e)(1)(C) then in effect, either party would be able to withdraw from the plea agreement after the pre-sentence investigation and demand that the trial start over if the court decided not to be bound by the agreed cap. However, under Rule 11(e)(1)(B), if the court refused to accept the recommended thirteen year cap, neither party could withdraw the plea. Clearly, Judge Ridgely was reiterating the differences between the two type of pleas contemplated by Rule 11. His statement that he would prefer to not start a new trial was part of the reason for rejecting the plea. This was a proper exercise of his discretion permitted under Rule 11(e)(2). In short, the record clearly demonstrates that Judge Ridgely did not improperly participate in the plea negotiations, and Schmitz has failed to provide clear and convincing evidence to the contrary.

Nevertheless, even if Judge Ridgely's comments did constitute participation in the plea negotiation, the court concludes that such participation did not violate Schmitz's right to due process for one basic reason: these statements did not coerce Schmitz into entering the plea involuntarily. First, Judge Ridgely did not initiate the plea negotiations. Second, Judge Ridgely's desire to retain discretion over sentencing was merely a concern about the leniency of the proposed cap. Finally, Judge Ridgely's comments did not induce Schmitz to plead guilty. Rather, it was Schmitz's own desire to avoid a sentence of life imprisonment that motivated him to plead guilty in the first place. There is no constitutional right to plead guilty, and a defendant has no right to particular terms of a prospective plea agreement. *See, e.g., Santobello v. New York,* 404 U.S. 257, 261-62 (1971); *North Carolina v. Alford,* 400 U.S. 25, 38 n. 11 (1970). Judge Ridgely was properly exercising his discretion in rejecting the initial plea. Once Judge Ridgely rejected the proffered plea, Schmitz still had the option of proceeding to trial.

Furthermore, Schmitz had already decided to plead guilty to second degree murder which carried a range of ten to twenty years imprisonment. If he did not want to grant the court discretion to sentence him to twenty years, then he merely had to refrain from accepting or presenting a new plea agreement. *See Gov't of the Virgin Islands v. Scotland,* 614 F.2d 360, 364-65 (3d Cir.1980). As such, the fact that Judge Ridgely rejected the first plea because of the terms did not violate any constitutional right. Accordingly, because the "constitution does not forbid the moderate type of participation shown here in plea negotiations by state trial judges," *Damiano,* 770 F.2d at 2, the court concludes that Judge Ridgely's comments did not cause

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 9
Not Reported in F.Supp.2d, 2003 WL 22299028 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Schmitz to involuntarily enter a plea agreement.

2. Judge Ridgely was not biased because of his familiarity with evidence presented in Banther's trial

Schmitz also claims that Judge Ridgely improperly relied on his familiarity with the trial of his co-defendant Banther in rejecting the proffered plea agreement and in sentencing him to the maximum twenty years. (D.I. 3 at 5-6; D.I. 17.) Schmitz offers Judge Ridgely's statement "of course I have heard all the evidence in the Banther case" as proof of this improper "extrajudicial" bias. (*Id.*) To support this claim, he quotes to Canon 3(C)(1)(a) of the Delaware Judge's Code of Judicial Conduct, as well as the United States Supreme Court case *U.S. v. Grinnell Corp.,* 384 U.S. 563 (1966). Moreover, Schmitz alleges that Judge Ridgely's reliance on this knowledge violated his right to due process because his trial was originally severed from Banther's trial. The trials were severed due to *Bruton* concerns. Schmitz argues that any reliance on evidence gleaned from Banther's trial defeats the reason for the severance in the first place. (*Id.*)(citing *Bruton v. United States,* 391 U.S. 123 (1968)). Schmitz contends that Judge Ridgely's knowledge of the Banther evidence was "the factor in not to accept the initial plea agreement." (D.I. 7 at 2.)

**\*11** Once again, to the extent Schmitz alleges Judge Ridgely was biased under applicable Delaware law, this claim is not cognizable on federal habeas relief. *See supra* p. 12. However, to the extent that he alleges this bias violated due process under *Grinnell,* he has alleged a proper ground for federal habeas review. As previously explained, because the Delaware courts did not discuss the merits of this claim with respect to federal constitutional law, the court cannot apply the deferential standard of review under § 2254(d). Regardless, the court's conclusion would be the same under such standard.

It is well settled that the mere fact that a judge presided over a co-defendant's separate trial does not constitute reasonable grounds for questioning the judge's impartiality or otherwise amount to a due process violation. *Liteky v. United States,* 510 U.S. 540, 554 (1994); *Paradis v. Arave,* 20 F.3d 950,958 (9th Cir.1994) (citation omitted); *see also United States v. Myers,* 381 F.2d 814, 817 (3d Cir.1967). Under both federal and Delaware law, information gleaned from a co-defendant's trial does not constitute improper personal or extra-judicial information because the information was introduced by a prior judicial proceeding. *Liteky v. United States,* 510 U.S. 540, 554 (1994); *Beck v. Beck,* 766 A.2d 482, 485 (Del.2001). Thus, the mere fact that Judge Ridgely presided over Banther's trial, or even referenced the evidence in Banther's trial, does not constitute personal or extrajudicial bias amounting to a due process violation.

Nevertheless, it is possible for opinions formed during the course of judicial proceedings to constitute an unconstitutional bias if "they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky,* 510 U.S. at 555. Basically, a judge's predisposition resulting from a former proceeding is only bias when "it is so extreme as to display clear inability to render fair judgment." *United States v. Antar,* 53 F.3d 568, 574 (3d Cir.1995), *abrogated on other grounds, Smith v. Berg,* 247 F.3d 532 (3d Cir.2001).

Schmitz has failed to demonstrate that Judge Ridgely was so biased that he was unable to render a fair judgment. Indeed, he has not even demonstrated that the twenty year sentence was unfair, and the Delaware Supreme Court dismissed this claim as meritless. An independent review of the record indicates that "the decision to impose the maximum sentence was the result of a logical and conscientious process and was based upon the presence of aggravated factors." *Schmitz 4.* When sentencing Schmitz to the maximum twenty years, Judge Ridgely specifically addressed the gruesomeness of the murder. Further, he pointed to the fact that Schmitz did not appear remorseful. There is no indication that anything other than these relevant factors formed the basis for the twenty year sentence. *See also infra* pp. 36-40.

Despite Schmitz's argument to the contrary, the fact that Schmitz's and Banther's trials were severed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 10
Not Reported in F.Supp.2d, 2003 WL 22299028 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

because of *Bruton* concerns does not render the preceding principles and analysis inapplicable. In *Bruton,* the Supreme Court held that admitting a co-defendant's confession in a defendant's criminal jury trial, without permitting the defendant to cross-examine the co-defendant, constituted prejudicial error even though the court gave the jury a limiting instruction. The concern was the jury's inability to follow or adhere to the limiting instruction, and the fact that such admission violated the defendant's Sixth Amendment right to confront or cross-examine witnesses.

**\*12** Although the Superior Court may have granted severance because of *Bruton* concerns, these concerns ceased to exist once Schmitz decided to plead guilty rather than proceed to a jury trial. Any concern that a confession would be admitted without the ability to cross-examine the co-defendant no longer existed. In fact, by agreeing to plead guilty, Schmitz actually waived his right to cross-examine or confront witnesses. *McCarthy v. United States,* 394 U.S. 459, 466 (1969). Further, Schmitz clearly knew that Judge Ridgely presided over Banther's trial (D.I. 20, Testimony of Richard Baumeister at A-97.) Judge Ridgely's reference to the Banther evidence only reiterated the obvious fact that he was aware of all the evidence in the prior trial.

Thus, even if Judge Ridgely relied on information he gleaned from Banther's trial, this reliance did not violate Schmitz's right to due process under *Bruton.* Accordingly, the court will deny this claim.

### B. The prosecutor's argument at sentencing did not breach the plea agreement

Schmitz's second claim is that the prosecutor breached the terms of the plea agreement by failing to affirmatively argue for a thirteen year sentence. He asserts that "[i]n making the State's recommendation, the only factors discussed were the severity of the crime, the impact on the victim's family, and the work of the investigators and the Court's pre-sentence officer in bringing the petitioner to justice. In effect, the State provided the Court with every reason to impose a maximum sentence without any reason to follow its recommendation." (D.I. 3 at 6.)

The State claims that the prosecutor acted in accord with the terms of the plea agreement, and the statements were made in response to the defense counsels' argument that the crime did not exhibit excessive cruelty. The State thus asserts that the state court's rejection of the claim is not unreasonable within the meaning the meaning of 28 U.S.C. § 2254(d)(1).

One claim Schmitz asserted in his Rule 61 motion was that the prosecutor's statements during the plea colloquy breached the plea agreement. *Schmitz 2,* at \*4. Although the Superior Court did not explicitly discuss any federal constitutional law in holding that the prosecutor's statements at the plea colloquy did not breach the plea agreement, it cited to the Supreme Court decision *Santobello v. New York,* 404 U.S. 257 (1971) and stated that "a plea agreement is a contract and when it contains a promise of a prosecutor it must be fulfilled or relief will be granted when there has been reliance and a breach." *Schmitz 3,* at 4. As a result, the court concludes that the Superior Court adjudicated this claim on the merits. *See Hunterson v. DiSabato,* 308 F.3d 236, 246 (3d Cir.2002)(summary adjudications that do not analyze the claims or relate them to Supreme Court precedent can still be subjected to the standard of review under 28 U.S.C. § 2254(d)(1)).

Because the Delaware Superior Court adjudicated this claim on the merits, the appropriate standard of review is whether the Superior Court's decision was either contrary to, or an unreasonable application of, clearly established federal law. Once again, state court factual findings are presumed to be correct, and are only rebuttable upon a showing by clear and convincing evidence that the state court determination was unreasonable. 28 U.S.C. § 2254(e)(1).

**\*13** The "clearly established federal law" controlling a prosecutor's adherence to a plea agreement was set forth by the Supreme Court in *Santobello v. New York,* 404 U.S. 257 (1971); *see also Dunn v. Colleran,* 247 F.3d 450, 457 (3d Cir2001). The *Santobello* Court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

stated that a guilty plea "must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known." *Santobello,* 404 U.S. at 261-62. The prosecutor must fulfill the promises contained in the agreement. *Id.* However, a prosecutor is not constitutionally required to recommend a sentence enthusiastically. *United States v. Benchimol,* 471 U.S. 453 (1985).

Under the terms of the plea agreement, Schmitz faced a minimum mandatory sentence of ten years and a maximum sentence of twenty years in prison. With respect to the State's obligation, the agreement stated that the "pursuant to Rule 11(e)(1)(B), the State "could recommend thirteen years at L-5." (D.I. 20, Appellant's App. to Op. Br. at A-32.)

In denying Schmitz's motion for post-conviction relief on this claim, the Superior Court reviewed the record and concluded that the prosecutor's statements were merely made in response to defense counsel's argument that Schmitz's acts did not constitute excessive cruelty. The court presumes this factual determination to be correct. To the extent Schmitz offers his allegations and the sentencing transcript itself to rebut this presumption, he fails.

A prosecutor's remarks responding to defense counsel's argument for a sentence at the low end of the guideline range do not indicate a breach of a plea agreement. *See United States v. Queensborough,* 227 F.3d 149, 157 (3d Cir.2000). A review of the transcript in the present case reveals that the comments in question were merely in response to defense counsels' argument. Defense counsel objected to the pre-sentence report's inclusion of "excessive cruelty" as an aggravating factor, and actively argued that Schmitz should be sentenced to ten years. The State responded by saying "the State takes exception with [defense counsel's] argument concerning the aggravating factor of excessive cruelty ..." (D.I. 20, Appellant's Op. Br. at A-41.) The State then discussed Ravers' family and praised the efforts of the pre-sentence investigator and the police. These comments, when read in relation to defense counsels' argument, were clearly made in an effort to argue against the ten year sentence and provide support for the thirteen year cap.

To determine whether a prosecutor's remarks responding to defense counsel's argument constitute a breach of a plea agreement, the first question is whether the plea agreement precluded the prosecutor from making such statements. Unlike the prosecutor in *Colvin v. Taylor,* 324 F.3d 583, 587-88 (8th Cir.2003), the State's prosecutor in this case did not agree to "stand silent upon" the defendant's sentencing request. Indeed, nothing in the plea agreement required the prosecutor to argue for the lower minimum sentence of ten years. Likewise, nothing in the plea agreement prevented the prosecutor from actively arguing for the thirteen year cap. The prosecutor carried out the promise contained in the plea agreement: he argued for a thirteen year sentence.

**\*14** Moreover, the fact that the Superior Court did not accept this recommendation does not indicate a breach of the agreement by the prosecutor. The Rule 11(e)(1)(B) plea agreement granted the Superior Court discretion to reject the State's recommendation and sentence Schmitz to the minimum ten year sentence, the maximum twenty year sentence, or somewhere in between. The court properly exercised its discretion and chose to reject the recommended thirteen year cap on "the basis of its abhorrence of the circumstances of the crime." *See Queensborough,* 227 F.3d at 158.

In short, the *Santobello* standard requires a prosecutor to comply with the terms of the plea agreement. The Superior Court applied this rule when it concluded that the prosecutor's statements did not breach the plea agreement. Because *Santobello* does not require a contrary result, the Superior Court's decision was not "contrary to" a clearly established federal law.

Further, after reviewing Schmitz's claim and determining that the State's statements did not breach the agreement, the court concludes that the Superior Court's denial of the post-conviction relief was not an unreasonable application of the *Santobello* precedent. Accordingly, this claim does not warrant federal habeas relief.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22299028 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 12

### C. Ineffective assistance of counsel

Schmitz's third claim alleges that the two attorneys representing him provided ineffective assistance of counsel for failing to: (1) inform him about the implications of Judge Ridgely's statements during the chambers conference; (2) move for the recusal of Judge Ridgely because of what transpired during the chambers conference; (3) review the elements of second degree murder prior to entry of the plea; (4) request that Schmitz's handcuffs be removed so that he could fill out the Truth in Sentencing Plea Form; (5) inform Schmitz of his right to withdraw his guilty plea under Superior Court Criminal Rule 32 prior to sentencing; (6) object to statements in the pre-sentence report regarding Schmitz's religious beliefs and his desire not to discuss the offense in light of those beliefs; (7) secure adequate time for Schmitz to review the pre-sentence report; and (8) timely request a hearing on the validity of the statements made in the pre-sentence report. (D.I. 3 at 9.)

Before the court can review Schmitz's ineffective assistance of counsel claim, it must first determine whether Schmitz has exhausted state remedies. The State correctly acknowledges that Schmitz presented claims one, two, three, and six to the Delaware Supreme Court on postconviction appeal, thereby exhausting state remedies. However, the State fails to discuss the exhaustion issue with respect to the remaining four claims. After reviewing the record, the court concludes that claim one was exhausted and adjudicated on the merits, claims two, three, and six were exhausted but not adjudicated on the merits, and claims four, five, seven, and eight were not exhausted and are now procedurally barred from federal habeas review. To facilitate the analysis, the court will group the claims into three categories, and discuss each group of claims in turn.

#### 1. Claims four, five, seven, and eight are procedurally barred

**\*15** Schmitz never presented claims four, five, seven, and eight to the Delaware Supreme Court in his post-conviction appeal. *See* D.I. 20, Appellant's Op. Br. As such, he has failed to exhaust state remedies, and the court must determine if he is now precluded from pursuing further state relief. If further state relief is precluded, these claims will be treated as exhausted, but still procedurally defaulted. *See Lines,* 208 F.3d at 160. Federal habeas relief will be barred unless he establishes cause for the default and prejudice resulting therefrom, or that a miscarriage of justice will result if the court does not review the claim. *See McCandless,* 172 F.3d at 260.

Delaware Superior Court Criminal Rule 61 imposes several procedural hurdles that must be satisfied before a state court will consider the merits of a petitioner's claim. *See* Super. Ct.Crim. R. 61(i); *Younger v. State,* 580 A.2d 552, 554 (Del.1990). Relevant to the current inquiry is the procedural bar of Rule 61(i)(2):
Repetitive Motion. Any ground for relief that was not asserted in a prior postconviction proceeding, as required by subdivision (b)(2) of this rule, is thereafter barred, unless consideration of the claim is warranted in the interest of justice.

Super. Ct.Crim. R. 61(i)(2). A petitioner must present all his grounds for relief in his first Rule 61 motion. *Id.;* Super. Ct.Crim. R. 61(b)(2); *Robinson v. State,* 562 A.2d 1184, 1185 (Del.1989). Because Schmitz did not present these claims in his original post-conviction motion, he is now barred from re-asserting these claims in a new Rule 61 motion.

However, Delaware courts will consider a claim that was not asserted in a prior Rule 61 motion if such consideration is "warranted in the interest of justice." Super. Ct.Crim. R. 61(i)(2); *Maxion v. State,* 686 A.2d 148, 150 (Del.1996). In order to satisfy the interest of justice exception, a petitioner must show that "subsequent legal developments have revealed that the trial court lacked the authority to convict or punish" him. *Woods v. State,* No. 259, 1997, 1997 WL 425492 (Del. July 18, 1997)(citing *Flamer v. State,* 585 A.2d 736, 746 (Del.1990)). In the matter at hand, the record is devoid of any such subsequent legal developments. Accordingly, state court review of these claims is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                         Page 13
Not Reported in F.Supp.2d, 2003 WL 22299028 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

foreclosed by Rule 61(i)(2).

Even if Rule 61(i)(2) would not prevent Schmitz from raising these claims in a new Rule 61 motion, Rule 61(i)(1) imposes yet another procedural hurdle that bars state court consideration of these ineffective assistance of counsel claims. Pursuant to Rule 61(i)(1), "[a] motion for postconviction relief may not be filed more than three years after the judgment of conviction is final." Super. Ct.Crim. R. 61(i)(1). The three year time period "is jurisdictional and cannot be enlarged." *Robinson,* 562 A.2d at 1204. For purposes relevant to this inquiry, Schmitz's sentence became final on June 14, 1999, thirty days after the Superior Court sentenced him. [FN7] Thus, because any Rule 61 motion for post-conviction relief had to be filed by June 14, 2002 in order to be timely, Schmitz is foreclosed from asserting a new Rule 61 motion.

> FN7. The record indicates that Schmitz did not appeal his sentence. When a petitioner does not file a direct appeal, his conviction and sentence become final upon the expiration of the thirty day filing period for a notice of appeal. *See Nara v. Frank,* 264 F.3d 310, 314 (3d Cir.2001). The Superior Court sentenced Schmitz on May 14, 1999. Schmitz's motion for the reduction of sentence and subsequent appeal of its denial is not relevant for determining the finality of his sentence.

**\*16** Before the court can conclude with certainty these claims of ineffective assistance are procedurally barred under Rule 61(i)(1) and (2), the court must consider whether Rule 61(i)(5) renders either of these procedural bars inapplicable. Pursuant to Rule 61(i)(5): Bars Inapplicable. The bars to relief in paragraphs (1), (2), and (3) of this subdivision shall not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction. Super. Ct.Crim. R. 61(i)(5). This "fundamental fairness

exception ... is a narrow one and has been applied only in limited circumstances, such as when the right relied upon has been recognized for the first time after the direct appeal." *Younger,* 580 A.2d at 555. To satisfy Rule 61(i)(5), a petitioner must raise and support "a colorable claim which requires further inquiry." *Webster v. State,* 604 A.2d 1364, 1367 (Del.1992). Although a petitioner need not establish with certainty that a constitutional violation occurred, Rule 61(i)(5) is not a mechanism by which a petitioner may "challenge his conviction in perpetuity simply by coupling allegations of trial errors with bold assertions that they amount to a miscarriage of justice." *State v. Mulkey,* No. N88-03-0075R3, 1995 WL 268510, at \*2 (Del.Super.Ct. Mar. 24, 1995).

The court finds that Schmitz's claims fall short of satisfying the narrow fundamental fairness exception of Rule 61(*i*)(5). Thus, the procedural bars prescribed in Rule 61(i) foreclose any further state court review of claims four, five, seven, and eight regarding ineffective assistance of counsel.

The only remaining question is whether Schmitz has articulated any reason to excuse his procedural default. Unfortunately, Schmitz has offered no explanation for failing to present these claims to the state courts in either his prior Rule 61 motion or post-conviction appeal. Because Schmitz has failed to establish cause for his procedural default, the court does not have to consider the issue of actual prejudice. *See Smith v. Murray,* 477 U.S. 527, 533 (1986); *Lawrie,* 9 F.Supp.2d at 453 (D.Del.1998). Moreover, Schmitz does not allege that he is actually innocent. In short, the court can discern no basis for excusing Schmitz's procedural default. These ineffective assistance of counsel claims are thus procedurally barred from federal habeas review.

### 2. Claims two, three, and six

A review of the record reveals that Schmitz presented claims two, three, and six in his post-conviction appeal, thereby exhausting state remedies. However, he did not present these claims in his original Rule 61 motion. The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 22299028 (D.Del.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 14

Delaware Supreme Court did not specifically discuss these claims in affirming the Superior Court's decision. Instead, it stated "the final judgments of the Superior Court should be affirmed on the basis of and for the reasons assigned by the Superior Court in its well-reasoned decisions dated February 12, 2001 and March 28, 2002." *Schmitz 3*. Because these claims were not discussed in the Superior Court's decisions dated February 12, 2001 and March 28, 2002, they were not adjudicated on the merits for the purposes of 28 U.S.C. § 2254(d)(1). *See supra* at p. 6. As such, the deferential standards of § 2254(d)(1) do not apply, and the court is not limited to determining whether the Superior Court's denial of the post-conviction motion was contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). However, the court must still presume the state court's factual determinations to be correct. Schmitz can only rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(d)(1). [FN8]

> FN8. The court's conclusion that these claims fail to warrant federal habeas relief would be the same even if it's review was limited under 28 U.S.C. § 2254(d)(1).

**\*17** In order to prevail on a claim for ineffective assistance of counsel, a petitioner must allege and establish facts satisfying the standard enunciated by *Strickland v. Washington,* 466 U.S. 668 (1984) and its progeny. *See Hull v. Kyler,* 190 F.3d 88, 105 (3d Cir.1999). In a guilty plea context, a petitioner must demonstrate both that: 1) counsel's performance fell below an objective standard of reasonableness; and 2) that there is a reasonable probability that, but for counsel's faulty performance, the petitioner would not have pled guilty and would have prevailed at trial. *Hill v. Lockhart,* 474 U.S. 52, 57-59 (1985); *United States v. Brown,* 991 F.2d 1162 (3d Cir.1993), *abrogated on other grounds by U.S. v. Thomas,* 42 F.3d 823 (3d Cir.1994).

To satisfy the first prong of the *Strickland* test, the petitioner must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690. A court must be highly deferential to counsel's reasonable strategic decisions when analyzing an attorney's performance under this standard. *Id.* at 689. For example, in *Strickland* the Supreme Court noted:

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 688-89 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)).

The second prong of the *Strickland* test requires the petitioner to affirmatively show how counsel's errors undermined his decision to plead guilty. *See Hill,* 474 U.S. at 60. Generally, to sustain an ineffectiveness claim, the petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *Wells v. Petsock,* 941 F.2d at 259-60; *Dooley v. Petsock,* 816 F.2d 885, 891-92 (3d Cir.1987).

With these principles in mind, the court now turns to the merits of claims two, three, and six.

a. Defense counsel failed to move for the recusal of Judge Ridgely

Schmitz asserts that his trial counsel failed to move for the recusal of Judge Ridgely because of what "transpired during the office conference." (D.I. 3 at 9.) However, this one bare statement is the only specific reference to this error. Thus, the court presumes that "what transpired during the office conference" refers to both Judge Ridgely's comments regarding Banther and

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 22299028 (D.Del.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 15

his statements regarding the various ways of formulating a plea under Rule 11.

**\*18** As previously discussed, when examined in light of the whole record and statutory scheme, Judge Ridgely's comments during the chambers conference were appropriate and did not constitute a due process violation. As such, counsels' decision to not move for the judge's recusal was not unreasonable. If the comments were proper, then there was no reason to request recusal.

Moreover, Schmitz's conclusory allegation fails to "affirmatively show" that he would not have pled guilty if counsel had moved for the recusal. Indeed, he has failed to make any substantial allegations of prejudice. Accordingly, this bare conclusory allegation does not satisfy either prong of the *Strickland* test, and does not provide a basis for federal habeas relief.

b. Defense counsel failed to review the elements of second degree murder prior to the plea

Schmitz claims that trial counsel never informed him of the elements for second degree murder prior to entering his plea. This assertion is refuted by the record. During the Rule 61 hearing, Schmitz's lead counsel testified that she went over the elements of second degree murder with him, and that she also sent him copies of "all those statutes ... from first degree murder, second degree murder, manslaughter, and so forth." (D.I. 20 at Appellant's App. to Op. Br. at A-48.) Moreover, during the plea colloquy, the court asked the State to read the elements for second degree murder, and then the court specifically asked Schmitz if he understood the nature of the charge. (D.I. 20, Appellant's App. to Op. Br. at A-25.) Schmitz responded affirmatively. (*Id.* at A-25.) If, indeed, Schmitz had never heard the elements before and this new knowledge made him doubt his decision to plead guilty, he could have informed the court. However, Schmitz raised no such concern during his plea colloquy..

A defendant's statements made during the plea colloquy are presumed to be true, *Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977); *Lesko v. Lehman,* 925 F.2d 1527, 1537 (3d Cir.1991), and such statements constitute a formidable barrier to subsequent collateral proceedings. *United States v. DeFusco,* 949 F.2d 114, 119 (4th Cir.1991); *Ingrassia v. Armontrout,* 902 F.2d 1368, 1370 (8th Cir.1990). Absent clear and convincing evidence to the contrary, Schmitz is bound by his statements during the guilty plea process. *United States v. Craig,* 985 F.2d 175, 179 (4th Cir.1993). His bare conclusory allegation does not provide such clear and convincing evidence, thus, the court rejects this claim.

c. Defense counsel failed to object to statements made in the presentence report

Schmitz also claims that defense counsels' failure to object to statements contained in the pre-sentence report constitutes ineffective assistance of counsel. Specifically, he alleges that counsel failed to object to statements regarding his religious beliefs and his desire not to discuss the offense in light of those beliefs. (D.I. 3 at 9.) It also appears that Schmitz believes counsel should have warned him that his refusal to admit to the crime would be construed as an aggravating factor. (*Id.* at 12.)

**\*19** Once again, Schmitz's allegation is refuted by the record. During the Rule 61 hearing, Schmitz's co-counsel testified under oath that he was aware of Schmitz's decision to remain silent with respect to the details of the crime. He further stated that "I'm sure that I told him in some way that [his silence] could be a problem, I mean it could be problematic in sentencing, and that he might want to at least think about being more forthcoming with the presentence officer, but that that was up to him." (D.I. 20, Appellant's App. to Op. Br. at A-104.) As such, it appears that counsel did, in fact, inform Schmitz about the possible consequences of his silence.

Thus, with respect to this specific allegation, Schmitz has failed to satisfy the *Strickland* test. Further, in order for counsels' failure to object to these statements to be unreasonable, the statements themselves would need to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

have been improperly or unconstitutionally included in the pre-sentence report. It is well established that " 'a convicted criminal [at sentencing] is entitled to less process than a presumptively innocent accused' ... [and] a sentencing judge may consider information 'largely unlimited as to kind or source' that would be inadmissible at trial." *United States v. Paulino,* 996 F.2d 1541, 1547 (3d Cir.1993)(quoting *Roberts v. United States,* 445 U.S. 552, 556 (1980) and *United States v. Mobley,* 956 F.2d 450, 455 (3d Cir.1992)). A complete and accurate pre-sentence report is an essential source of information for a sentencing court to consider when determining a convicted defendant's sentence. *See Williams v. New York,* 337 U.S. 241, 249-50 (1949); *United States v. Baylin,* 535 F.Supp. 1145, 1151-52 (D.Del.1982), *remanded on other grounds, United States v. Baylin,* 696 F.2d 1030 (3d Cir.1982).

While it is true that a court cannot use a defendant's silence regarding the circumstances or details of the crime charged in a plea agreement to increase the defendant's sentence, there is no prohibition against referencing such silence in a pre-sentence report. *See Mitchell v. U.S.,* 526 U.S. 314, 327 (1999)(emphasis added). A review of the sentencing hearing transcript reveals that the sentencing judge did not consider Schmitz's silence as a factor to increase his sentence. *See infra* at pp. 36-39. Consequently, if the pre-sentence report correctly contained a reference to Schmitz's silence, and the sentencing court did not rely on his silence as a factor to increase his sentence, then counsels' failure to object to the statement regarding Schmitz's refusal to admit guilt was not objectively unreasonable.

Finally, Schmitz has not demonstrated that he would not have pled guilty if counsel had objected to these statements. By the time he was interviewed for the pre-sentence report, he had already entered his guilty plea. Similarly, Schmitz has not alleged that he would have withdrawn his plea at the sentencing hearing if his counsel had objected to the statements. Consequently, Schmitz fails to satisfy either prong of the *Strickland* test, and the court will dismiss this claim.

### 3. Claim one

**\*20** Claim one, that counsel misrepresented the events of the chambers conference and failed to inform him of the consequences stemming from the court's rejection of the initial plea, is the only claim that was both exhausted and adjudicated on the merits. As a result, the court must determine whether the Superior Court's denial of post-conviction relief on this ground was either contrary to, or an unreasonable application of, clearly established federal law. *See* U.S.C. § 2254(d)(1). Once again, in making this determination, the court must presume the state court's factual determinations to be correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The "clearly established law" governing ineffective assistance of counsel claims is *Strickland v. Washington,* 466 U.S. 668 (1984). To reiterate, Schmitz must demonstrate that: (1) counsels' representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsels' deficient performance, he would have proceeded to trial. *See Strickland,* 466 U.S. at 688; *Hill,* 474 U.s. at 57-59.

Applying these standards, the court must now determine whether the Delaware courts applied a rule of law contrary to that announced in *Strickland.* Although the Delaware Supreme Court affirmed the Superior Court's denial of this claim, it did not engage in its own independent review of the claim. Rather, the state supreme court adopted the Superior Court's reasoning. Consequently, the court will review the Superior Court's decision under § 2254(d)(1).

The Superior Court clearly articulated the two-step analysis required under *Strickland,* and then proceeded to apply the test to the facts as established by the record. First, the Superior Court reviewed the transcript of the evidentiary hearing, and noted that Schmitz knew Judge Ridgely had also been assigned to the Banther case. As such, "the only significance of the court's statements about Rule 11(e)(1)(C) was that a plea agreement under that rule would not be accepted in the midst of a capital jury selection." *Schmitz 3,* at \*4. The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                       Page 17
Not Reported in F.Supp.2d, 2003 WL 22299028 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Superior Court then summarized the defense counsels' testimony as follows: that they told Schmitz the judge refused the first agreement, and that under the revised offer "pursuant to Rule 11(e)(1)(B) the State would recommend 13 years, that most of the time Judges follow prosecutor's recommendations but that he still could be sentenced to 20 years." *Id.*

Further, the Superior Court noted that the Rule 11(e)(1)(B) agreement was again explained at the plea colloquy, and Schmitz affirmatively indicated his understanding and acceptance of the agreement. *Id.* The Superior Court then concluded that Schmitz's counsel provided effective assistance of counsel. Moreover, because Schmitz did not show that he would have insisted on proceeding to trial if his counsel had done more, the state court concluded that Schmitz failed to satisfy the second prong of *Strickland. Id.* Accordingly, this court concludes that the Superior Court's denial of this ineffective assistance of counsel claim was not contrary to *Strickland.*

**\*21** However, this conclusion does not end the inquiry required by 28 U.S.C. § 2254(d)(1) because the court must also analyze whether the state court's application of *Strickland* to Schmitz's claim was objectively unreasonable. The appropriate question to ask is whether the "state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under *Strickland.*" *Werts,* 228 F.3d at 204. A thorough review of the Superior Court's decision indicates that its denial of Schmitz's ineffective assistance of counsel claim was not an unreasonable application of *Strickland.* The record reveals that counsel did, in fact, inform Schmitz of the ramifications of Judge Ridgely's rejection of the first plea offer. (D.I. 20, Appellant's App. to Op. Br. at A-71, A-77-A-80.) The only evidence Schmitz has provided to support his claim is his conclusory allegation that counsel "misrepresent[ed] ... what transpired during the February 23, 1999 office conference." (D.I. 3 at 9.)

Moreover, Schmitz has not demonstrated that he would have insisted on going to trial if not for counsels' alleged failure. Indeed, the substantial sentencing reduction he received under the terms of the plea agreement indicate just the opposite. Under the terms of the plea agreement, Schmitz faced a maximum sentence of twenty years, whereas he faced a possible life sentence under the original charge of murder in the first degree. In short, the court concludes that Schmitz has failed to satisfy either prong of the *Strickland* test, and the Superior Court's determination was not based on an "objectively unreasonable application of" *Strickland* . For these reasons, the court will deny this claim for ineffective assistance of counsel.

### D. Sentencing judge did not improperly rely on "constitutionally prohibited points" during sentencing

Schmitz's final claim is that the sentencing court "failed to record its reasons for depart[ing] from the Sentencing Guidelines" and also failed to "reveal [its] reliance, or lack of reliance, on Constitutionally prohibited points." Specifically, Schmitz asserts that the sentencing judge's failure to impose the ten-year mandatory minimum sentence violated due process because it was a departure from the guidelines promulgated by the Delaware Sentencing Accountability Commission ("SENTAC"). (D.I. 3 at 13-17.) Schmitz claims that the sentencing judge's decision to depart from the mandatory minimum sentence was based on Schmitz's refusal to discuss the brutal details of the murder and the pre-sentence report's alleged improper reference to his religious beliefs. (*Id.* at 13-14.)(*citing Mitchell v. United States,* 529 U.S. 362 (1999)).

Schmitz presented this claim to the Delaware Supreme Court on direct appeal from the denial of his motion for reduction of sentence. *Schmitz 1.* Consequently, he has exhausted state remedies.

As a general rule, a question of state substantive law is not a proper subject for federal habeas review. 28 U.S.C. § 2254(a); *Wainwright v. Sykes,* 433 U.S. 72, 81 (1977); *Jones v. Superintendent of Rahway State Prison,* 725 F.2d 40, 42-3 (3d Cir.1984); *Williams v. Duckworth,* 738 F.2d 828, 831 (7th Cir.1984); *Dorn v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 18
Not Reported in F.Supp.2d, 2003 WL 22299028 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

*Kearney,* Civ. Act. No. 96-661-JJF, Mem. Op. At 4-6 (D.Del. Dec. 10, 1997). Accordingly, a state court's sentencing decision and claims arising out of that decision are generally not cognizable on federal habeas review, *Dorn v. Kearney,* Civ. Act. No. 96-301-SLR, Mem. Op. at 5-6 (D.Del. Dec. 10, 1997), and a federal court will review only those state decisions that exceed or are outside the statutory limits or are wholly unauthorized by law. *See, e.g., Bozza v. United States,* 330 U.S. 160, 166 (1947); *Williams v. Duckworth,* 738 F.2d 828, 831 (7th Cir.1984). However, when a petitioner's sentence is within the state statutory limits but the petitioner asserts that the sentence was imposed in violation of due process, a federal habeas court can review the claim. To succeed, the petitioner must demonstrate that an error of law resulted in the improper exercise of the sentencing judge's discretion and thereby deprived the petitioner of due process. *Hicks v. Oklahoma,* 447 U.S. 343, 346 (1980).

**\*22** To the extent Schmitz claims the state sentencing court violated Delaware's Sentencing Guidelines he has failed to present the court with a claim cognizable on federal habeas review. Schmitz pled guilty to second degree murder as a lesser included offense of first degree murder. 11 *Del. C.* § 635 (second degree murder); 11 *Del. C.* § 636(a) (first degree murder). Second degree murder is a class B felony which carries a mandatory minimum sentence of ten years in prison and a maximum potential sentence of twenty years in prison. 11 *Del. C.* § 4205(b)(2). Thus, Schmitz's sentence of twenty years was clearly within the state statutory limits.

However, Schmitz's assertion that the sentence was based on "Constitutionally prohibited points" does present a cognizable claim for federal habeas review. The Delaware Supreme Court denied this claim as meritless because it was not supported by the record and held that "the judge's decision to impose the maximum sentence was the result of a logical and conscientious process and was based upon the presence of aggravating factors." *Schmitz I.* As a result, this court's review is limited to determining whether that adjudication was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Schmitz refused to discuss the details of the murder with the pre-sentence investigator, claiming he had made the decision to never discuss such details. The pre-sentence investigator included in the pre-sentence report Schmitz's statements "So, I have made a decision never to discuss the details. It is between me and God." (D.I. 20, Appellant's Op. Br. in No. 500, 1999 at 10-11.) The investigator then commented on Schmitz's refusal, describing Schmitz as "hiding behind a deity that represents to Christians the absolute truth." *Id.* The investigator concluded by stating that while the details of the murder are "truly between Mr. Schmitz, Mr. Banther, and God, such a triangulation does not answer the lingering questions of the victim's family, nor does it shed true light on who actually struck the fatal blows [to the victim]." *Schmitz I,* at \* \*1 n. 8.

A thorough review of the record reveals that this claim is not supported by the record. The sentencing judge specifically referenced both mitigating and aggravating factors he considered in rendering the twenty year sentence. The sentencing transcript provides:
The Court: I've given very careful consideration to all of your comments, Mr. Schmitz, today, and the content of the presentence report and the comments of counsel. There are undisputed mitigating circumstances in your background, including your record in the Air Force and the various awards and outstanding performance reports that you received before meeting Bruce Banther.
All of these mitigating circumstances within the report and as described by your counsel, given the nature of the offense, in my view, are adequately addressed by the reduced charge to which you have been convicted. What is apparent to the Court is notwithstanding the character trait that you apparently have had in not wishing to lie to the Court, you do have within that bundle of character traits, a horrible propensity for vicious, violent, depraved cruelty and grizzly [sic] butchery. A substantial jail sentence is warranted for the protection of the public. In my view, that is the maximum sentence for this crime before the Court.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 19
Not Reported in F.Supp.2d, 2003 WL 22299028 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*23** (D.I. 20, Appellant's App. to Op. Br. at A-43, A-44.) (emphasis added)

Aside from one brief collateral reference to Schmitz's silence by saying "the character trait ... in not wishing to lie to the Court," the judge did not mention Schmitz's religious beliefs and concurrent silence. In contrast, Judge Ridgely specifically referred to both the gruesome nature of the crime and the mitigating circumstances. Indeed, the determining "aggravating factors" appear to have been the "vicious, violent, depraved cruelty, and grizzly butchery" nature of the murder rather than Schmitz's failure to admit guilt and his religious beliefs. Further, the sentencing court did not specifically mention Schmitz's religious beliefs and silence, indicating that these factors were not considered in rendering the sentence. As such, the sentencing court's decision was not based on an unreasonable determination of the facts in light of the evidence presented in the sentencing proceeding. Accordingly, Schmitz's fourth claim does not provide a basis for federal habeas relief.

### E. Schmitz's motion for discovery

Schmitz has filed a motion for discovery pursuant to Rule 6, 28 U.S.C. foll. § 2254. Specifically, he requests the court to order the State to supply him with one copy of his presentence report. (D.I. 7 .)

Discovery is available in habeas corpus proceedings at the discretion of the court for "good cause" shown. *See* Rule 6, 28 U.S.C. foll 28 U.S.C. § 2254. "Good cause" is demonstrated when a petitioner establishes a prima facie claim for relief, and a petitioner's claims are specific, not merely speculative or conclusory. *Murphy v. Johnson,* 205 F.3d 809 (5th Cir.2000). In order to establish "good cause," a petitioner must "point to specific evidence that might be discovered that would support a constitutional claim." *Marshall v. Hendricks,* 103 F.Supp.2d 749, 760 (D.N.J.2000), *rev'd in part on other grounds,* 307 F.3d 36 (3d Cir.2002)(citing *Deputy v. Taylor,* 19 F.3d 1485, 1493 (3d Cir.1994)).

As previously explained, the court concludes that Schmitz's petition for the writ of habeas corpus does not present any basis for federal habeas relief. As such, he has failed to demonstrate the requisite "good cause" justifying a grant of discovery. Accordingly, Schmitz's motion for discovery is denied as moot.

### IV. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

Moreover, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further ." *Id.*

**\*24** For the reasons stated above, the court concludes that some of Schmitz's ineffective assistance of counsel claims are procedurally barred. The court also concludes that, to the extent claims one and four assert state law violations, they are not cognizable claims under the federal habeas statute. Additionally, the court concludes that Schmitz's remaining claims do not provide a basis for federal habeas relief. Reasonable jurists would not find these conclusions unreasonable. Consequently, Schmitz has failed to make a substantial showing of the denial of a constitutional right, and a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 20
Not Reported in F.Supp.2d, 2003 WL 22299028 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

certificate of appealability will not be issued.

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. John Eric Schmitz's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (D.I.s 2, 3.) is DENIED.
2. John Eric Schmitz's motion for discovery (D.I.7.) is DENIED as moot.
3. The court declines to issue a certificate of appealability.

IT IS SO ORDERED.

D.Del.,2003.
Schmitz v. Carroll
Not Reported in F.Supp.2d, 2003 WL 22299028 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:02CV01527 (Docket) (Oct. 11, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.