comment...deprived the [Petitioner] of a fair trial." [Petitioner's] substantial right to a fair trial." ; and the same remark undermined the "fairness of the trial process." (Petitioner's opening brief on direct appeal, pp. 14; Appendix to Petitioner's opening *habeas corpus* brief, A204-A207).

Petitioner's prosecutorial misconduct due process claim was fairly presented under b) and c) of *Evans-McCandleless* as well as the standard of *Dye v. Hofbauer, supra.*

The Delaware Supreme Court has in a series of prosecutorial misconduct cases made plain that the standards under which it reviews a claim of misconduct by a prosecutor include federal constitutional principles. See *Daniels v. State*, 859 A2d 1008 (Del., 2004).

In *Hughes v. State*, 437A 2d 559 (Del., 1981), the Delaware Supreme Court adopted the precepts set forth in *Dyson v. United States*, 418 A2d 127 (D.C. App., 1980). *Dyson* is, after the publication of Hughes, frequently cited in prosecutorial misconduct cases under review by the Delaware Supreme Court.

*Dyson* is based on the due process principles *of Kotteakos v. United States*, 328 US 750 (1946). See 418 A2d, at 132. The Delaware Supreme Court has therefore characterized the "ultimate issue in a prosecutorial misconduct case as a question of "constitutional error", *Hooks v. State*, 416

A 2d 189 (Del, 1980) that is, whether the misconduct alleged "deprived the defendant of a fair trial", *Boatson v. State*, 457 A2d. 738 (Del., 1983). See also *Brokenbrough v. State*, 522 A. 2d 851 (Del., 1987) citing *Donnelly v. DeChristoforo, supra, United States v. Young*, 470 US 1 (1985) and *United States v. Hastings*, 461 US (1983), and *Michael v. State*, 527 A.2d 752 (Del.1987) and *Clayton v. State* 765 A.2d 940 (Del.,2000) citing *United States v. Young, supra*.

By citing *Hughes* and *Brokenbrough* in his opening brief on direct appeal to the Delaware Supreme Court (see opening brief on direct appeal, pp.15-16, Appendix to opening *habeas corpus* brief, A205-A206), Petitioner fairly presented the 5th Amendment prosecutorial misconduct claim under b) of *Evans/McCandleless*- reliance on state cases employing constitutional analysis in like fact situations.

The identity of the standards employed by the Delaware supreme Court – whether a prosecutor's inexcusable misconduct "so compromise[ed] the integrity of the judicial process" as to deny the defendant a fair trial [see *Price v. State* ___ A. 2d___ ,No. 486, 2003 (Del., 2003)] and that employed by the United States *Donnelly v. DeChristoforo* Supreme Court [see, e.g., , *supra*] also compels the conclusion that Petitioner's claim was presented in due process terms. *Baldwin v. Reese, supra*, recognizes the

notion that in cases where state law and federal constitutional law standards are co-extensive, the exhaustion requirement has been satisfied.

### 4). The Blakely 6th Amendment Sentencing Claim

*Blakely v. Washington, supra,* was cited in the supplemental memorandum (Appendix to opening *habeas corpus* brief, A214 – A221) submitted by Petitioner to the Delaware Supreme Court on his direct appeal. Both Petitioner and the State briefed the sentencing issue to the Delaware court as an issue of 6th Amendment law specific to the application of *Blakely* to the Delaware sentencing system.

The order issued by the Delaware Supreme Court affirming Petitioner's convictions and the sentence imposed by the Superior Court on October 10, 2003 did not contain an express ruling on the *Blakely* issue. See *Benge v. State*, Order, No. 544, 2003, November 15, 2004 (Del., 2004). This was because the Delaware court had previously held *Blakely* to be inapplicable to its system of enhancing sentences in criminal cases. See *Benge v. State*, Order, No. 137, 2004, November 12, 2004 (Del., 2004).

However, exhaustion is not contingent upon an express decision or ruling upon an issue presented on direct appeal. If a state appellate court

chooses to ignore an issue, exhaustion may still be found to have occurred., *Smith v. Digmon, supra.*

### 5). The DRE 404(b) "Prior Bad Acts Evidence" 5th Amendment Due Process Claim

In their Answer in this action, Respondents expressly argue that Petitioner's 5th Amendment due process claim based upon the trial court's admission of "prior bad acts" evidence has not been exhausted. (Respondents' Answer, p 4 ). This claim is ground four of Petitioner's grounds for relief in his *habeas corpus* petition (*habeas corpus* petition, pp. 11-12) and is full set forth in Petitioner's opening brief in support of that petition at pages 69 – 71.

Contrary to the contention of Respondents, Petitioner submits that this ground for relief was in fact fairly presented to the Delaware Supreme Court in at least five separate ways that satisfy the *Dye v. Hofbauer* and *Evans/McCandleless* tests.

Prior to trial, Petitioner's counsel filed a motion *in limine* under both DRE 403 and DRE 404(b) seeking to exclude the evidence of "prior bad acts" that the prosecution identified before the trial as that which it would seek to have admitted under Rule 404(b) Delaware Rules of Evidence

18

("DRE"). It was the denial of that motion (Superior Court trial docket entry No. 56, Appendix to Petitioner's reply *habeas corpus* brief, A1 – A7) by the trial judge as to the contention that Petitioner had previously entered his former wife's residence to surreptitiously tape record conversations that was the basis of Petitioner's direct appeal to the Delaware Supreme Court and hence the true issue that the Delaware Court had before it.

Petitioner's motion *in limine* specifically cited the inflammatory nature of the prior bad acts evidence, contending that the evidence sought to be introduced by the State was both irrelevant *and* "unfairly prejudicial." (Motion *in limine*, p. 3, Appendix to reply *habeas corpus* brief, A 3). Petitioner's trial counsel objected to the "soap operatic flavor" of Petitioner's marital turmoil and stated that the evidence would distract the jury from the real issues and portray Petitioner as a "despicable, detestable person who deserves to be punished…The portrait that is painted will so profoundly contaminate the jury by engendering such ill will toward the [Petitioner] on account of his many misdeeds that it seems to permeate his entire existence as a human being that his *right to a fair trial* will be undoubtedly compromised." (Motion *in limine*, p 4 - 5, Appendix to reply *habeas corpus* brief, A4 – A5, emphasis supplied).

In denying Petitioner's motion to exclude the evidence, the trial court *separately addressed* and *separately ruled upon* the issues of the relevancy of the disputed evidence and the prejudice that would follow from its inflammatory nature. See the text of the ruling of the trial court, Appendix to Petitioner's opening *habeas corpus* brief, A23 – A31. The trial court's ruling was thus in accord Delaware decisional law under DRE 403 and DRE 404(b) which requires the trial court to examine the inflammatory nature of evidence in addition to its relevancy. See the discussion of *Getz v. State*, 538 A.2d 726 (Del., 1988) and its progeny set forth below.

In the brief submitted on direct appeal to the Delaware Supreme Court, Petitioner's contention as to the disputed DRE 404(b) evidence centered on the *fair trial* aspects of the trial court's admission of the evidence that he had sought to exclude. Petitioner framed the evidence issue in due process terms: as in *Dye v. Hofbauer, supra*, the argument heading stated the due process nature of Petitioner's contention – "the prior bad conduct admitted against the [Petitioner] at trial was irrelevant and unduly prejudicial to the [Petitioner's] right to a fair trial under DRE 404(b)."[2] (Brief on direct appeal, p. 8, Appendix to opening *habeas corpus* brief,

---

DRE 404(b) id, of course, not the source of the right to a fair trial. Petitioner's brief therefore must have been referring to a due process claim.

[1]A198). The argument that followed under this heading then developed the point that the disputed evidence "had an unfair tendency to invite the [Petitioner's] conviction on an improper emotional basis. "(Petitioner's brief on direct appeal, p. 13, Appendix to opening *habeas corpus* brief, A203). Petitioner's brief on direct appeal expressly set forth the points that the evidence was *both* "irrelevant and unduly prejudicial to the [Petitioner's] right to a fair trial" (Petitioner's brief on direct appeal, p. 8, Appendix to opening *habeas corpus* brief, A198). In two additional passages, Petitioner's brief in the Delaware Supreme Court referred to the evidence as "unfairly prejudicial" and as creating "unfair prejudice" (Petitioner's brief on direct appeal, p. 10; 12, Appendix to opening *habeas corpus* brief, A200; A202).

In the reply brief on direct appeal, the words "unfair prejudice" and "unfairly prejudicial" are used in six separate passages with reference to the prior bad acts evidence. (Petitioner's reply brief on direct appeal, p. 1 – 4; Appendix to reply *habeas corpus* brief, A11 – A14). The same brief also repeated the "fair trial" argument heading set forth above.

The DRE 404(b) issue was therefore fairly presented as a federal constitutional due process claim under *Dye v. Hofbauer, supra*, and c) and d) of *Evans/McCandleless* as well as the two additional ways set out below.

In both his opening and reply brief on direct appeal (Appendix to opening *habeas corpus* brief, A198-A203 and Appendix to reply *habeas corpus* brief A11 - A14), Petitioner cites *Getz v. State*. 538 A 2d. 726 (Del., 1988) in connection with his claim that admission by the trial court of the disputed evidence denied Petitioner a fair trial.

*Getz* and its progeny [see, e.g., *Moorhead v. State*, 638 A 2d. 52 (Del., 1994); *DeShields v. State*, 706 A 2d 502 (Del., 1998); *Trump v. State*, 753 A 2d 963 (Del., 2000); and *Milligan v. State* 761 A. 2d 6 (Del., 2000)] contain the precepts applied to DRE 404 (b) and 403 by the Delaware Supreme Court.

*Getz*, as originally decided, employs a six part test to determine admissibility under DRE 404 (b) the fifth part of which is: "(5) the Court must balance the probative value of such evidence against its unfairly prejudicial effect as required by DRE 403." 538 A 2d., at 734 (emphasis supplied). This fifth part of the *Getz* test itself consists of a nine factor balancing test as set forth in *Trump v. State*, 753 A 2d, at 971. Parts 3), 5), and 6) of the *Trump* factors all deal with an analysis of the prejudice to introduced into the trial by admission of the disputed 404 (b) evidence; however, factor 6) separately and specifically deals with the inflammatory nature of that evidence. See *Deshields v. State, supra*, 706 A.2d, at 506.

*Moorhead v. State*, 638 A.2d 52 (Del., 1994), cited by Petitioner to the Delaware Supreme Court (Petitioner's opening brief on direct appeal, p. 13 Appendix to opening *habeas corpus* brief, A 203) notes that DRE 403 and 404 (b) track the Federal Rules of Evidence and cites with approval the 1972 note to Rule 403 of the Federal Rules of Evidence – "the admission of evidence becomes unfairly prejudicial when the evidence has an undue tendency to suggest decision on an improper basis, commonly, although not necessarily, an emotional one."

The test employed by the Delaware Supreme Court to determine whether the admission of evidence under DRE 403 affects the right to a fair trial is the same "fair trial" test as is employed under 5th Amendment due process. Cf., *Sawyer v. State*, 634 A. 2d 377 (Del., 1993) at p. 380 with *Lesko v. Owens*, 881 F. 2d 44 (3rd Cir., 1989) and *Marshall v. Hendricks*, 307 F 3d. 36 (3rd Cir., 2002).

The Delaware Court has thus held that "relevant evidence is admissible unless barred by constitutional restraint, statutory law, decisional law or court rules." *Capano v. State*, 781 A 2d 556 (Del., 2001), at 586. Therefore, a ruling by a Delaware Court that evidence is admissible under DRE 403 and 404 (b) includes a necessary, if not expressly stated, ruling on the 5th Amendment due process aspects of admitting the evidence: "Because we

23

have concluded that the contested was admissible and relevant does under Rule 404, *the admission of the evidence not constitute a violation of the Due Process Clause. Capano v. State, supra*, 781 A. 2d at 639 citing *Dowling v. United States*, 493 US 342 (1990). (emphasis supplied).

Petitioner's DRE 404 (b) claim was both fairly prosecuted and *actually decided* as a 5th Amendment claim. By the Delaware Supreme Court.

### 6). The Scope Of Review

The Delaware Supreme Court reviewed Petitioner's *Schad* 5th Amendment erroneous instruction claim (*habeas corpus* claims grounds one, three, and two) under the "plain error" standard of review.

Under "plain error" review, the Delaware Supreme Court, *regardless of the contentions of the parties*, examines the entire trial record to determine if there has been a legal error affecting the defendant's substantial rights. *Walls v. State*, 560 A. 2d 1038 (Del., 1989). See the enlightening concurring opinion of former Chief Justice Veasey in *Bullock v. State*, 775 A.2d. 1043 (Del., 2001). The scope of review actually employed in the Delaware Supreme Court with respect to *habeas corpus* grounds in Petitioner's petition constitutes exhaustion of these grounds.

### 7). Futility Of Further Review

Finally, there is the issue of futility. Futility of further proceedings in state court excuses exhaustion. Exhaustion in not an absolute bar to *habeas corpus* relief, *Granberry v. Green*, 481 US 129 (1987), even under the provisions of the Anti-Terrorism And Effective Death Penalty Act. See, *Baldwin v. Reeves, supra*. Exhaustion is therefore not mandated in cases such as Petitioner's:

> 'Futility' exists where: a state's highest court has ruled unfavorably on a claim involving facts and issues materially identical to those undergriding a federal habeas petition and there is no plausible reason to believe that a replay will persuade the court to reverse its field…
>
> *Whitney v. Horn*, 280 F3d 240 (3rd Cir., 2002), at 250, quoting *Lines v. Larkin, supra*.

The Delaware Supreme Court has once considered all conceivable attacks upon the constitutionality of Petitioner's convictions and sentence under the plain error scope of review and has found no reason to set the same aside There is now no plausible reason to believe that a replay, even an instant one, will persuade the court to reverse its field, "pick up the penalty flag", take the points off the scoreboard, or otherwise alter its previous judgment. That fact excuses the rationale for Petitioner to be directed to return to state court.

## II. Petitioner's Claims Are Not Procedurally Barred

### A). The Procedural Bar Rule

A federal *habeas corpus* court is precluded from reviewing those federal claims for relief that have been defaulted in state court pursuant to an independent and adequate state procedural rule, absent a showing of cause and prejudice or miscarriage of justice. *Coleman v. Thompson*, 501 US 722 (1991), at 758; *Cristin v. Brennan*, 281 F.3d 404 (3rd Cir., 2002); *Bronshtein v. Horn*, 404 F.3d 700 (3rd Cir., 2005).

Contrary to the impression that one might readily glean from a reading of the Answer filed by Respondents in this case, it is in fact "…not always easy for a federal court to apply the independent and adequate state ground doctrine." *Coleman v. Thompson, supra,* 501 US, at 732. In addressing the issue, federal *habeas corpus* courts "…will presume that there is no independent and adequate state ground for a state court decision when the decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy or independence of any possible state law ground is not clear from the face of the opinion." Id., 501 US, at 734 – 735.

Before a court reaches the questions of cause and prejudice or miscarriage of justice, there are two issues that must be determined when *habeas corpus* relief is opposed on the basis of an alleged procedural bar. The first of those threshold issues is whether the state court judgment can indeed be held to have rested upon a procedural default or whether any such default was in fact *not* relied upon by the state court in reaching its decision – in other words, was the alleged procedural default the actual basis upon which the state court decided the case or did that court in fact reach the merits and decide the case on the basis of federal substantive constitutional law? *Ylst v. Nunnemaker*, 501 US 797 (1991); *Coleman v. Thompson, supra*. The next issue, which arises only if the state ground was indeed the basis of the state court's decision, is whether the state procedural rule is "firmly established and regularly followed." *Ford v. Georgia*, 498 US 411 (1991). To determine these issues, a federal *habeas corpus* court applies *federal* law; that is, the issue of whether or not a state procedural rule is an "adequate and independent" ground for a state court ruling or whether a state rule is firmly established and regularly followed are questions of federal law *Lee v. Kemna*, 534 US 362 (2002); *Reynolds v. Ellingsworth*, 843 F.2d. 712 (3rd Cir., 1988), at 717. Nonetheless, the rules and practices of the state court

present a relevant inquiry that regard and are therefore examined in the next sections of this brief.

Only after these issues are resolved does a federal *habeas corpus* court reach the issues of cause and prejudice and miscarriage of justice.

### B). Delaware Supreme Court Rule 8

Respondents' Answer sets up Delaware Supreme Court Rule 8 as a procedural bar to Petitioner's 5th Amendment due process claims. An overview of the history and operation of Rule 8 is instructive in determining whether or not the Respondents' argument has validity.

### 1). The Text And History Of Rule 8

Delaware Supreme Court Rule 8 provides as follows:

#### Questions Which May Be Raised On Appeal

Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.

Rule 8 was adopted with an effective date of March 31, 1978; its predecessor was Delaware Supreme Court Rule 5(7) of that court's 1952 rules which had a life span of 26 years:

#### Rule 5 (7)

On appeal, any question may be raised which has been fairly presented to the court below for decision, and it shall not be necessary again to raise any such question raised in the cause by way of motion for a new trial.

In applying Rule 5(7), the Delaware Supreme Court generally refused to hear any question not presented to the trial court. See, *Wilmington Memorial Co. v. Silverbrook Cemetery Company*, 297 A.2d 378 (Del., 1972). This policy extended to cases in which the issue raised for the first time on appeal was a constitutional question. See, e.g., *Pierson v. DeLaWarr School District Board Of Education*, 300 A.2d 3 (Del., 1972); *Wilmington Trust Company v. Barry*, 359 A.2d 664 (Del., 1979). There were, on rare occasions, exceptions for constitutional questions. See, e.g., *Fountain v. State*, 275 A.2d 251 (Del., 1971). The standard of review under Rule 5(7) was "plain error" when first time issues were in fact considered. See, e.g., *Jenkins v. State*, 305 A.2d 610 (Del., 1973); *Kominski v. State*, 154 A.2d 691 (Del., 1959).

### 2). The Operation Of Rule 8

As noted above, the operation of Rule 8 as a state court procedural rule is a matter of state law; *Ford v. Georgia*, 498 US 411 (1991), at 423. The pronouncements of the Delaware Supreme Court as to the operation of Rule 8 are therefore binding upon this Court, no matter what conclusion this Court might independently reach about the operation of that rule. The United States Supreme Court has recently made that proposition more than abundantly clear in a *per curiam* decision:

> We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Estelle v. McGuire*, 502 US 62 (1991); *Mullaney v. Wilbur*, 421 US 684 (1975).
>
> *Bradshaw v. Richey*, 546 US __,
> No. 05-101, Nov. 28, 2005

In the period initially following the adoption of Rule 8, the Delaware Supreme Court continued the general practice under its former Rule 5(7) and for the most part refused to hear issues raised for the first time on appeal even if those issues were of constitutional dimension. See, e.g., *Peterson v. Hall*, 421 A.2d 1350 (Del., 1980). However, as practice under Rule 8 matured, the Delaware court *by its own account* relaxed the standard for review under that rule:

> ...recently, claims of error implicating basic constitutional rights of a defendant have been accorded review by this Court notwithstanding their non-assertion at trial. [citing *Deputy v. State*, 500 A.2d 581 (Del., 1985) and *Flamer v. State*, 490 A.2d 104 (Del., 1983)]
>
> *Wainwright v. State*,
> 504 A.2d 1096 (Del., 1986)

In *McBride v. State*, 477 A.2d 174 (Del., 1984), the Delaware high court, in an early example of the application of the relaxed standard of review under Rule 8 to a non-constitutional question of change of venue in a criminal case, held as follows:

30

> At the outset, we note that defendant's legal error argument was not raised before the Trial Court and, hence, is barred from appellate review by Supreme Court Rule 8. However, as the question of the effect of the 1977 amendment is one of first impression, *we will waive Rule 8* in the interests of justice to provide guidance to the trial courts and future litigants concerning the burden and degree of proof necessary to secure a change of venue.
>
> McBride v. State, supra, at 184.
> (emphasis supplied and footnote deleted)

The change of venue issue in *McBride* was thus decided by the Delaware Court on its merits *despite* the procedural default of the issue by the defendant in the trial court and the court issued a ruling on the substantive law in the case.

In the cases that followed *McBride v. State, supra*, the Delaware Supreme Court explained the operations of Rule 8 as follows:

- *White v. State*, 576 A 2d. .1322 (Del., 1990): the Court will *generally decline* review of a question not raised to the trial court but will consider such a question *even though not raised* below when the alleged error "plainly prejudices substantial rights and jeopardizes the fairness and integrity of the trial process." 576 A.2d, at 1324. (emphasis supplied).

- *Moore v. State*, 652 A. 2d. 560 (Del., 1995): Rule 8 requires only that a question be "fairly presented "to the trial court; but this requirement is *excused* if "the interests of justice requires review." The appellant's procedural default below - waiver of a legal argument – was expressly *excused* by the Delaware Supreme Court. 652 A 2d, at 563; 568.

- *Duphily v. Delaware Electric Cooperative, Inc.*, 662 A. 2d. 821 (Del., 1995) stated the import of Rule 8 as follows:

  > As a general matter, this Court will review
  > Only those questions fairly presented to the
  > trial court in the first instance. Supr. Ct.
  > R. 8; …The failure to object at trial ordinarily
  > constitutes waiver of the right to raise the
  > issue on appeal unless the error is "plain"
  > In other words, "where substantial rights are
  > jeopardized and the fairness of the trial imperiled,
  > this Court will apply a plain error standard of review "….
  >
  > 662 A.2d, at 832

- *In Shelton v. State*, 744 A 2d. 465 (Del., 1999), the Delaware court held that notwithstanding its "well-settled waiver rule" arising by the failure to make a contemporaneous objection, "…where the trial court commits plain error, a failure to object does not constitute a waiver of the right to raise the issue on appeal." The plain error "entitles [the defendant] to this Court's review…" 744 A 2d, at 497, note 142.

- In a case where the "interests of justice" require review, the failure of a defendant to present a claim to the trial court will not procedurally bar that claim under Rule 8. *Lewis v. State*, 757 A 2d 712 (Del., 2000)

Each of the cases abstracted above demonstrates that Delaware Supreme Court Rule 8 provides a procedural means by which review *on the merits* may be obtained in that court despite the failure of a defendant to object in the trial court. The Delaware Supreme Court waives Rule 8 to conduct plain error review.

### 3). Procedural Bar In The Third Circuit

The Third Circuit has recently reviewed procedural default cases from both Pennsylvania and New Jersey. The holdings of those cases stand in marked contrast to the contention of Respondents in their Answer as to procedural default.

In *Villot v. Varner*, 373 F.3d. 327 (3rd Cir., 2004), the Third Circuit was confronted with a case in which the Pennsylvania Superior Court *could have* – but did not - deny a claim on procedural grounds. 373 F. 3d, at 335. The Court rejected a procedural default bar because the Superior Court did not articulate the procedural default as the basis of its decision. *Id.* The Court held as follows: "... a federal claimant's

33