procedural default precludes federal *habeas corpus* review… only if the last state court rendering a judgment in the case rests its judgment on the procedural default. *Harris v. Reed,* 489 US 255 (1989). If the state court does not actually enforce the procedural rule in question, the federal court implies no disrespect for the state by entertaining the claim." Id.,at 336. The Court expressly contrasted *Villot* to *Cabrera v. Barbo,* 175 F. 3d. 307 (3rd Cir., 1999) where the New Jersey state courts relied *explicitly* upon a procedural default.

In *Johnson v. Pinchak,*, 392 F. 3d. 551 (3rd Cir., 2004), the Court held a claim to be procedurally barred where the New Jersey Appellate Division clearly rested its decision on procedural grounds – the bar of the applicable limitations statute – as had the trial court. The limitations bar was "explicitly invoked "to deny relief. Id. 392 F.3rd, at 557-558.

The Third Circuit has consistently held in its recent rulings that in cases where the Delaware Supreme Court rejects a direct appeal on the merits, no procedural bar to *habeas corpus* relief exists *despite* the presence of a procedural default.

In *Riley v. Taylor,* 277 F.3d 261 (3rd Cir., 2001) , the Third Circuit reversed the District Court's dismissal of a *habeas corpus* petition because of a procedural bar. The Third Circuit held that *Ylst v.*

*Nunnemaker*, 501 US 797 (1991) was controlling: " if the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise be available. "*Riley v. Taylor,* 777 F.3d., at 274 citing *Ylst v. Nunnemaker,* 501 US at 801. The Court noted that if the Delaware Supreme Court intended to foreclose a claim because of the failure to object at trial, "… it seems likely that the [ Delaware court ] would have made that point expressly, instead of affirming …on the merits. 277 F. 3d., at 274.

The Third Circuit's holding in *Reynold's v. Taylor, supra*, is in full accord with the practice of the Delaware Supreme Court under rule 8.

***4.)* The Order of The Delaware Supreme Court Was A Ruling Affirming The Convictions On The Merits.**

A fair reading of the Delaware Supreme Court's order of November 15, 2004 in *Benge v. State, supra* leads inescapably to the conclusion that the basis of that decision was a ruling on the merits on each of the claims asserted by Petitioner's direct appeal. Although the Delaware court noted that certain claims had not been raised in the trial court (see November 15, 2004 order ¶ 13; 15; and 16), the Delaware Supreme Court did not rest its decision primarily on any procedural default. As stated in *Stewart v. Smith*, 536 US 856 (2002), at 860, if a state court decision rested primarily on a

ruling on the merits, its decision would not be independent of federal law and therefore would not procedurally bar federal *habeas corpus* review. In contrast to the state court in *Stewart v. Smith, the* Delaware Supreme Court in fact reached the merits of each of Petitioner's claims. While it is the case that the Delaware court made a passing reference to Rule 8, this was not for the purpose of raising Rule 8 to bar review of Petitioner's claims; rather, as citation to *Capano v. State* , 781 A 2d. 556 (Del., 2001) makes clear, was Rule 8 was cited by the Delaware Court solely for the purpose of establishing the standard of review it sought to apply. See *Benge v. State, supra*, slip opinion, p. 7, note 7; p. 8, note 10; at p. 9 note 13. At no point in its decision did the Delaware court "make the point expressly" that Rule 8 or any other procedural default barred appellate review of Petititioner's claim. Cf., *Riley v. Taylor, supra,* 277 F. 3d, at 274.

As the Delaware court in fact reached the merits of petitioner's claims the rule of *Ylst v. Nunnemaker, supra*, is controlling in this case.

**5). The Inadequacy of Rule 8 As A Procedural Bar**

Review of a state court's jurisprudence in terms of its actual application of a state procedural bar as well as its pronouncements as to the operation of that procedural bar, is the methodology by which the Third Circuit has determined whether a procedural bar is "firmly established and

regularly followed." See e.g. *Bronstein v. Horn*, 404 F 3d 700 (3rd Cir., 2005); *Reynolds v. Ellingsworth*, 843 F. 2d 712 (3rd Cir., 1988) - holding former Delaware Superior Court Rule 35 *not* to be an independent and adequate state procedural bar; accord, *Reynolds v. Ellingsworth*, 23 F. 3d 756 (3rd Cir., 1994).

Petitioner has attached three tables to this brief summarizing the Delaware Supreme Court reported decisions in:

- Table 1 post-1988 specific unanimity jury instruction reported cases;
- Table 2 post-1974 prosecutorial misconduct reported cases; and
- Table 3 post-1982 reported cases involving incomplete or erroneous jury instructions issues.

Table 1 demonstrates that 100 % of the eight specific unanimity instruction cases were decided on the merits; 88% of those cases involved no objection at trial; 5 of such cases involved *no* reference by the Delaware court to Rule 8; and two of the five cases making no reference to Rule 8 were reversed on the merits.

Table 2 reflects that 32 of 33 cases (96%) of cases involving claims of prosecutorial misconduct were decided on their merits; 66%

of such cases involved no objections having been made at trial ;and that all 43% of the opinions making *no* reference to Rule 8 resulted in reversals of the convictions.

Table 3 contains similar data – 100% of the erroneous/incomplete instruction cases were decided on the merits of the cases; 92% involved no objection at trial; and 63% of cases where no objection was made at trial contained no reference to Rule 8.

This record more than amply demonstrates that Rule 8 is *not* in fact "regularly followed" by the Delaware Supreme Court. In each category of cases involving the type if due process claims raised by Petitioner, the Delaware Supreme Court did not so much as mention Rule 8 in a majority of the cases where no objection was made at trial – 55% of the specific unanimity cases; 57% of the prosecutorial misconduct cases; all 63% of the erroneous/incomplete cases. This is much more than a "sporadic application" of a procedural rule, Cf., *Reynolds v. Ellingsworth, supra,* 843 F. 2d, at 725. It affirmatively demonstrates that Rule 8 is not regularly followed as a procedural rule and prevents Respondents from relying upon Rule 8 as a procedural bar.

The "plain error review as procedural bar" contention argued by Respondents is a *per se* rule that would appear completely at odds with the "not always easy to apply" language of *Coleman v. Thompson, supra.*

Not surprisingly, the United States Supreme Court has not endorsed *any per se* rule approach to procedural bar. Specifically, that court has avoided the suggestion that the scope of review applied by a state appellate court – as opposed to a determination as the actual basis of such a court's decision, whether procedural or substantive – is determined as to procedural bar.

What the Supreme Court has said about plain error review does not support Respondent's position. In *Engle v. Isaac,* 456 US 107 (1982) the Court noted (at 135, note 4 ) that Ohio law permits an appellate court to "overlook a procedural default if the trial defect constituted plain error." This language has been held by at least one federal court of appeals to be a "clear statement that plain error review by state appellate court *regates* the defendant's procedural default. *Walker v. Endell,* 850 F.2. 2d 470 (9th Cir., 1987).

The Third Circuit has not held that plain review under Delaware Supreme Court Rule 8 constitutes procedural default. The unreported opinion issued by that court in the appeal of *Johnson v. Carroll*, 157 Fed. Appx. 472 (3rd Cir., 2005) does not reach the District Court's holding of

procedural bar; rather, the Third Circuit expressly found that issue to be "not before us." 157 Fed. Appx., at 474.

The Third Circuit has found no procedural bar to be present in *habeas corpus* cases where the Delaware Supreme Court did not clearly and expressly rely upon a procedural default under Rule 8 but, rather, "affirm[ed] the [trial] judge's findings on the merits." See *Riley v. Taylor* , 277 F. 3d 261 (3rd Cir., 2001), at 274. In *Riley*, the Court had in fact held that if the Delaware Supreme Court had in fact meant to "foreclose" a claim "for failure to make a proper objection at the time of trial, it seems likely that the Court would have made that point expressly instead of affirming." On the merits, 277 F.3d, at 274. Yet, in *Riley v. State* 495 A 2d 997 (Del., 1985), the Delaware Court had noted that the *habeas corpus* claim had not been presented at trial. See 496 A 2d, at 1010. As in the Third Circuit adopted the view that "procedural defaults are not immortal." *Coleman v. Thompson, supra.*

This was also the case in *Gattis v. Snyder*, 278 F. 3d 222 (3rd Cir., 2002). Despite a finding of procedural default by the Delaware Superior Court, the Third Circuit found the default to be waived by the Delaware Supreme Court's review on the merits. See 278 F. 3rd, at 229. This was so even though

The Delaware Supreme Court had noted in its opinion that "Several of Gattis' claims *were not raised below or on direct appeal...."Gattis v. State,* 697 A.2d 1174, (Del., 1997), and thus were potentially subject to the double bar of Supreme Court Rule 61 (i) (13) and Rule 8. The Third Circuit found that they operative ruling of the Delaware Supreme Court was on the merits of the claims. 278 F. 2d., at 222.

The Third Circuit's approach is in accord with other circuits that have analyzed "plain error review.

In *Walker v. Endell*, *supra*, the Ninth Circuit held as follows:

> We must determine whether the fact that the state appellate court reviewed the merits [under a "miscarriage of justice" plain error standard] vitiates the cause and prejudice requirement of *Wainwright v. Sykes.* We conclude that it does.
>
> 850 F. 2d, at 474

This holding was found to be in accord with *Huffman v Ricketts,* 750 F. 2d 798 (9th Cir., 1984) and permitted a federal *habeas corpus* court to consider a claim that had been reviewed by a state court for plain error. See also *Peoples v Campbell*, 377 F. 3d 1208 (11th Cir., 2004).

As noted above, Petitioner asserts in this Court that a "fair reading" of *Benge v. State, supra* reveals that the due process claims in that case where

decided primarily on the merits. However, if this Court has doubt on that issue, it may be best resolved by resort to the approach of the Sixth Circuit as reflected in *Bowling v. Parker*, 344 F.3d 487 (6th Cir., 2003). In that case, the court held that when two readings of a state court appellate decision are plausible – one suggesting waiver of a procedural default and another non-waiver – in order for a federal *habeas corpus* court to find an issue to be procedurally barred, "there must be *unambiguous* state - court reliance on a procedural default for it to block our review."344 F.3d, at 499. *Frazier v. Huffman*, 348 F 3d 174 (6th Cir., 2003), *Farmer v. Litscher*, 303 F. 3d. 840 (7th Cir., 2002).

The approach taken by the Sixth Circuit is more in accord with the reasoning of the Third Circuit in *Villot v. Varner* and *Johnson v. Pinkak, supra,* than that of the *per se* rule argued by Respondents in their Answer in this case.

Review of a state court's jurisprudence in terms of its actual application of a state procedural bar as well as its pronouncements as to the operation of that procedural bar, is the methodology by which the Third Circuit has determined whether a procedural bar is "firmly established and regularly followed." See e.g. *Bronstein v. Horn,* 404 F 3d 700 (3rd Cir., 2005); *Reynolds v. Ellingsworth,* 843 F. 2d 712 (3rd Cir., 1988) - holding former

Delaware Superior Court Rule 35 *not* to be an independent and adequate state procedural bar; accord, *Reynolds v. Ellingsworth,* 23 F. 3d 756 (3rd Cir., 1994).

**6). Respondents Assert A Previously Unrecognized Procedural Bar As To The Prosecutorial Misconduct Claim**

At trial, Petitioner objected to the prosecutor's unwarranted attack on his credibility. However, while recognizing the fact of the objection, the Delaware Supreme Court reviewed Petitioner's prosecutorial misconduct claim on direct appeal under the plain error standard because , it held, Petitioner had neither objected to the curative instruction given by the trial court; see *Benge v. State, supra,* slip order p. 7, ¶ 13.

No previously decided Delaware case imposes the burden on a criminal defendant of either objecting to a curative instruction *or* moving for a mistrial – on objection alone has always been held to be adequate. See the cases collected in Table 2.

No procedural bar arises as a result of a newly adopted procedural default rule. See the *Reynolds v. Ellingsworth* , *supra*.

Petitioner's prosecutorial misconduct claim was preserved solely by a contraporaneous trial objection.

## 7). Cause And Prejudice

The existence of cause and prejudice permits a federal *habeas corpus* court to adjudicate for the first time a federal constitutional claim in a case where but for such adjudication there will be a miscarriage of justice. *Wainright v. Sykes*, 433 US (1977).

To establish "cause," a *habeas corpus* petitioner must demonstrate "that some objective factor external to the defense impeded counsel's efforts to comply with a state procedural rule. *Murray v. Carrier* 477 US 478 (1986), at 488. Once "cause" is established, a petitioner can demonstrate "prejudice " by a showing that "errors at trial…worked to [the petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id., at 494.

A *habeas corpus* petitioner may satisfy the "cause" requirement by showing that governmental interference rendered procedural compliance "impracticable." *Murray v. Carrier, supra*, 477 US, at 488; *Amadeo v. Zant*, 486 US 214, at 224-227; *Cristin v. Brennan*, 281 F. 3d 404 (3rd Cir., 2002), at 420. "Interference" in this context includes both action, *Banks v. Dretke*, 540 US 668 (2004) and inaction. *Ivy v. Caspari*, 173 F. 3d 1136 (8th Cir., 1999).

"Prejudice, "an admittedly difficult issue to resolve at times, can be established by a showing that there is a "reasonable probability" that the result of the trial would have been different without the governmental interference. *Strickler v. Greene*, 527 US 263 (1999), at 289. Generally, prejudice is a denial of fundamental fairness. *Murray v. Carrier*, *supra*, at 494 .

"Cause" in Petitioner's case with respect to the *Schad* claim is established in this case by the deliberate strategic trial decision of the prosecutor to *not* present any theory of guilt other than as to attempted murder first degree. In Petitioner's opening *habeas corpus* brief, pages 20-21 and 30-32, the prosecutor's theory of the case and closing argument is summarized. Despite the trial judge's unambiguous ruling that the evidence warranted instructions on both assault 2nd degree and assault 3rd degree; despite the evidence of two gunshots and pepper spray introduced by the prosecutor; and despite extensive discussion between the trial judge and counsel as to lesser included offenses, the prosecutor failed to articulate to the jury any theory supporting a conviction for assault second or third degree.

In point of fact, the State's contention as to precisely what Petitioner had been convicted of remained open at sentencing on October 10, 2003 – 1 ½

months after trial. Prior to the trial judge imposing sentence, the prosecutor did *not* recite what the jury verdict of guilty of assault second degree meant in the State's view and defense counsel argued that the verdict was based on pepper spray – not a gunshot. Not until the State's answering brief on direct appeal did the State *initially* advance the contentions that the verdict was based upon use of a gun.

At trial, Petitioner's counsel was not obligated to fill in the gaps in the prosecutor's theory of the case. Although the prosecutor had presented evidence potentially supporting conviction of many offenses – including the misdemeanor of assault third degree – and had emphasized the pepper spraying of Smith in the State's closing argument – no effort was made by the prosecutor to tie the evidence to the State's theory on *any* lesser included offense.

The State's confusing case – emphasizing the pepper spraying but failing to argue that it supported a conviction of a lesser degree of assault – placed Petitioner's counsel in a wholly untenable position of having to fill in the gaps in the State's case by arguing for a specific unanimity jury instruction. "Cause" is therefore present in this case in the prosecutor's erratic trial strategy which presented an "objective impediment" to Petitioner's counsel complying with the procedural rule. See *Slutzker v. Johnson,* 393 F. 3 d 373

(3rd Cir., 2004). Petitioner's counsel was in jeopardy of being "sandbagged" and having once been so abused, see *Bailey v. State*, 440 A. 2d 997 (Del., 1982) was acutely aware of the perils of having the State reserve its case in chief for its second closing argument. Had the State "laid its cards upon the table" with respect to the lesser included offenses, Petitioner's counsel would have more readily been able to perceive the need for specific jury unanimity. The failure of the State to present its lesser included offense theory prejudiced Petitioner as it prevented the jury verdict from reflecting the precise conduct it found to constitute the offense of assault second degree – a fundamental fairness requirement.

## III. Delaware's Sentencing Scheme Violates The 6th Amendment

### A). *Blakely* Issues Do Not Present Questions Of State Law[3]

Petitioner's brief in support of his *habeas corpus* petition in companion Case No. 05-055 (GMS) in this Court demonstrates the lack of viability in the State's "state law question" argument on the *Blakely* issue in Petitioner's sentencings. Nonetheless, Respondents have pertenaciously clung to that position in the Answer despite the absence of any supporting authority for the State's proposition in the deluge of decisional law that has been forthcoming in the wake of *Blakely;* otherthan *Apprendi/Ring/Blakely/Booker/Fanfan*, the most recent decision cited in the Answer carries a date of October 10, 2003 – post-*Apprendi*, but fully eight months before the Supreme Court's decision in *Blakely*.

---

[3] This argument repeats in large part the *Blakely* -based argument appearing in the brief submitted to this Court in Petitioner's *habeas corpus* petition in No. 05-0550; however, it has been revised and updated – see the abstract of the Ohio Supreme Court decision, *infra*.

The Delaware Supreme Court, the Delaware Department of Justice advises this Court (Respondents' Answer, pp. 6-9), has declared that the SENTAC sentencing guidelines are "advisory" and "non-binding" as a matter of state law. Respondents thus tell this Court that a federal *habeas corpus* court is *ipso facto* precluded from any inquiry into the applicability of *Blakely* to Delaware sentencing law by the "question of state substantive law doctrine."

*Blakely* decided a 6th Amendment right to jury trial issue. *Brown v. Allen*, 344 US 443 (1953) settled the question of the deference to be accorded to state court rulings on federal law questions in *habeas corpus* proceedings. State court rulings in this regard are *not* conclusive. The issue for federal *habeas corpus* courts is whether the state court ruling represents a decision contrary to or an unreasonable application of federal law as determined by the Supreme Court. See, e.g., *Brown v. Payton*, __US__ No 03-1039 (March 22, 2005).

If the curious position asserted by the Respondents represented a correct statement of law, the on-going national post-*Blakely* paroxysm in state sentencing law would not be occurring; however, state courts other than Washington (the *Blakely* state) have struggled with and found the *Blakely*

principle to invalidate as contrary to the 6th Amendment sentences imposed *or* their *entire* sentencing systems; see, e.g.:

| **Arizona** |
|---|
| *State v. Brown*, 99 P.3d 15, (Ariz., 2004); Arizona employs a sentencing system of presumptive sentences with enhancement upon a judicial finding of aggravating circumstance; the Arizona Supreme Court reversed its own court of appeals which had reached an identical conclusion to that of the Washington court in *Blakely* with respect to possession of a weapon, accomplice, and "lying in wait" aggravators. The state Attorney General conceded that Arizona's sentencing law could not withstand *Blakely* because an enhanced sentence could be imposed only after a further judicial finding of fact; slip opinion, pp. 7-9. |

| **Colorado** |
|---|
| *Lopez v. State*, Case No. 04SC150, (Corrected Opinion of May 24, 2005); Colorado's presumptive sentencing system was declared contrary to *Blakely* except where enhancements were based upon the four permissible factors perceived by the Colorado court as allowable under *Apprendi/Blakely*; such as the prior conviction aggravator in this case; the court rejected the prosecution's view that the Colorado system presented a simple "range system" in which a guilty plea or verdict "would immediately authorize the entire range of sentencing."; slip opinion, page 32; the Colorado court stated that under *Blakely*, the "necessary inquiry into the sentencing system is one of functionality, not labeling.'; slip opinion, p. 36; in instances where the application of aggravating factors involves "additional fact-finding" by the trial judge, *Blakely* applies. "Labeling Colorado's system as a "simple range" system ignores this critical point;" slip opinion, page 37. |

| **Illinois** |
|---|
| *People v. Nitz*, __N.E.2d__, Ill. App., 5th Dist., No. 5-98-0657 (November 10, 2004); the sentencing judge determined an enhancement facts – pattern of criminal behavior, position of trust, effect of crime on the victim, and "undue depreciation of offense"" that had not been submitted to the jury; |

"The increase unquestionably violated the constitutional right to have a jury determine the facts that determine the maximum sentence the law will allow," citing *Apprendi/Ring/Blakely*

**Indiana**

*Smylie v. State*, 823 N.E.2d 679 (2005); Indiana's presumptive sentencing system with enhancements based upon judicial findings of the presence of aggravating factors ruled unconstitutional as contrary to *Blakely;* the Indiana Attorney General argued that the Indiana sentencing scheme presumptive sentences were only a "guidepost" for the sentencing judge; the Indiana Supreme Court rejected the State's argument, noting that case law (*Trowbridge v. State*, 717 N.E.2d 138 (Ind., 1999) had established the rule that sentencing judges *must* specify findings of fact and reasons that lead to enhancement of a sentence; slip opinion, pp. 5-6.

**Kansas**

*State v. Gould,* 23 P.3d 801 (Kan., 2001) applied *Apprendi* in a sentencing decision that anticipated *Blakely*.

**Louisiana**

In *State v. Brown*, No. 03-K-2788 (July 6, 2004), a decision issued 10 working days after *Blakely*, the Louisiana Supreme Court relied upon *Apprendi* to invalidate a sentence that had been enhanced based upon a prior juvenile adjudication.

**Maine**

*State v. Schofield,* 876 A.2d 43 (Me., 2005), 2005 ME LEXIS 86 invalidated Maine's presumptive sentencing scheme; the Maine could ruled that a sentencing judge could not apply a "among the most heinous crimes" aggravator without first making findings of fact; this violated the 6th Amendment.

**Minnesota**

*Minnesota v. Shattuck*, 689 N.W.2d 785 (Minn., 2005); Minnesota's sentencing guidelines specified presumptive sentences; case law required sentencing judges to set forth reasons for the application of enhancing factors; the Minnesota court rejected the "voluntary guidelines" argument of the state and ruled that this system violated *Blakely* principles; the maximum sentence permitted by the jury verdict or guilty plea is the presumptive sentence.

**New Jersey**

*New Jersey v. Natale*, 878 A.2d 724 (N.J., 2005) and *New Jersey v. Abdullah*, 878 A.2d 746 (N.J., 2005); the New Jersey court invalidated its presumptive sentencing system which had required judicial fact finding to impose enhanced sentences;

**North Carolina**

*State v. Allen*, 615 S.E.2d 256 (N.C., 2005), overruled the post-*Apprendi* decision in *State v. Lucas*, 548 S.E.2d 712 (N.C., 2001) which had held, like the State of Washington holding in *Blakely*, that the maximum sentence was the statutory maximum; the North Carolina presumptive sentence system – which permitted departure upon a judicial finding of a aggravating factors ("especially heinous," "atrocious," "cruel") – violates *Blakely*; slip opinion at p. 10.

**Ohio**

On February 27, 2006, the Ohio Supreme Court published its opinion (long awaited) in *State v. Foster*, __ N.W. 2d __, __Ohio St.3d __, 2006 Ohio 856, No. OT-03-016 (Ohio, February 27, 2006) which followed a comprehensive review of the application of *Blakely* to the Ohio sentencing system. The Ohio court rejected the holdings of "most" of its intermediate courts of appeal (which had sustained the Ohio system against a *Blakely* challenges) and the argument of the Ohio Attorney General that Ohio's system differentiated between *Blakely* exempt "traditional sentencing factors" and elements of a crime for purposes of sentence enhancement, and found Ohio's system to violate the *Blakely* 6th Amendment principle. Noting that

the Ohio system was a "hybrid" one, the Ohio court nonetheless placed great significance on the Ohio General Assembly's use of the word "shall" at "crucial points in the legislative scheme. Unlimited judicial discretion to sentence within a range is not currently authorized by statute. *If required judicial facts are not found*, certain sentences *may not* be imposed." (slip opinion, p. 22, emphasis supplied). The fact that enhanced punishment under the Ohio statutes is contingent upon a judicial finding of fact – regardless of how that fact is labeled – was the critical finding in the Ohio court's application of *Blakely* to its sentencing system (slip opinion, p. 23)

**Oregon**

*State v. Dilts,* 103 P.2d 95 (Ore., 2004) ("*Dilts* II"); in *Dilts* II, the Oregon Supreme Court had a second opportunity to consider the impact of *Blakely* on Oregon's sentencing scheme after the United States Supreme Court remanded *State v. Dilts*, 82 P.2d 593 (Ore., 2003) ("*Dilts* I") for reconsideration ; see *Dilts v. Oregon,* 542 US__ (2004); in *Dilts* II, the Oregon Supreme Court reversed its holding in *Dilts* I and found that the defendant's enhanced sentence for assault 3rd° (15-18 months imprisonment enhanced to 36 months) based upon judicial fact finding could not be reconciled with *Blakely*; the Oregon sentencing system was one in which the court was required to impose the presumptive sentence unless the sentencing judge found reasons for an enhancement; the Oregon court found this to be "precisely" the procedure held not to comply with the 6th Amendment in *Blakely*. (slip opinion, pp.5-6).

The *Blakely* decision is not a "state specific" ruling in the sense that the Respondents' Answer urges upon this Court. Justice O'Connor's dissent in the *Blakely* ruling itself served to foretell of its impact in both the states and upon the Federal sentencing systems which in fact later came to pass in the nine post-*Blakely* state court decisions *supra* in which presumptive sentence systems – like that of Delaware – were held to be inconsistent with the 6th Amendment.