# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

JOHN H. BENGE, JR.,      )
     *PETITIONER*      )
                   )
                   )
     *v.*             )      NO. 05-0551 (GMS)
                   )
                   )
RICK KEARNEY, WARDEN  )
SUSSEX CORRECTIONAL   )
INSTITUTION; AND CARL    )
C. DANBERG, ATTORNEY   )
GENERAL OF THE STATE    )
OF DELAWARE           )
     *RESPONDENTS*    )
                   )

FILED
MAR 31 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## ON PETITION FOR A WRIT OF *HABEAS CORPUS*

# APPENDIX TO
# REPLY BRIEF IN SUPPORT OF
# PETITION FOR *HABEAS CORPUS*

March 28, 2006

JOHN H. BENGE, JR.
SUSSEX CORRECTIONAL
          INSTITUTION
P.O. BOX 500
GEORGETOWN, DE 19947

## REPLY BRIEF APPENDIX
## TABLE OF CONTENTS

Petitioner's Superior Court
Motion *In Limine*  To
Exclude Purported 404(b) ………………………………    A1 – A7

Petitioner's Reply Brief
On Direct Appeal To
Delaware Supreme Court ……………………….…………    A8 – A22

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY

STATE OF DELAWARE          )
                         )
    V.               )    I.D. 0210012355
                         )
JOHN H. BENGE, JR.,       )
                         )
       Defendant.     )    <u>NOTICE OF MOTION</u>

TO:  MELANIE C. WITHERS, ESQUIRE
     Deputy Attorney General
     Department of Justice
     114 East Market Street
     Georgetown, DE 19947

       PLEASE TAKE NOTICE that the attached Motion will be presented
to this Honorable Court at the time set for trial.

                              Joseph A. Hurley
                              1215 King Street
                              Wilmington, DE 19801
                              (302) 658-8980

Dated:  July 1, 2003

41

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY

STATE OF DELAWARE            )
                             )
        V.                   )    I.D. 0210012355
                             )
JOHN H. BENGE, JR.,          )
                             )
        Defendant.           )

### MOTION IN LIMINE TO EXCLUDE
### PURPORTED 404 MATERIAL

NOW COMES the defendant, above, by and through counsel, Joe Hurley, who moves to exclude, from evidence, purported 404 material that the State has submitted in support of Its position seeking to oppose the severance of certain Counts of the Indictment.  In support of such application, the defendant represents:

    1.  As serious as the allegations against the defendant are, the factual circumstances leading to the placement of the charges are essentially uncomplicated:

        a.  The defendant unlawfully entered the premises of the Oak Grove Motel in the early morning hours of October 20th.

        b.  The defendant was armed with two handguns and a liquid chemical spray designed to impair visual functioning.

        c.  The defendant confronted Donna Benge by demanding to know the location and whereabouts of her paramour, Stacey Smith.

42

d.  While the defendant was in the course of demanding the information regarding Smith's whereabouts, Smith appeared in the room occupied by the defendant and Donna Benge.

e.  Smith engaged the defendant in hand-to-hand combat and during the course of which Smith was sprayed in the face with the chemical spray and was shot in the chest with a .22 caliber revolver that the defendant had brought to the premises with him.

f.  As the combat continued, Smith was able to disarm the defendant and, using one of the handguns as a cudgel, beat the defendant about the head and face with the weapon.

g.  The Rehoboth Beach Police interrupted the combat and Smith was taken to the hospital, and the defendant was briefly hospitalized and, subsequently, arrested.

2.  The facts elicited above should take no more than three to four hours to present.  The State, however, seeks to vastly expand the evidentiary terrain  by introducing evidence of alleged other bad acts on the part of the defendant which go far beyond the limits of relevancy and, most certainly, are unfairly prejudicial.  If the Court were to allow the State's strategy, the events of October 20th would take a "backseat" to the history of the marital turmoil between John and Donna Benge.  The soap operatic flavor of the events does not attenuate the

A 3

unfair prejudice that would result both in terms of casting the defendant as a despicable, detestable person who deserves to be punished and in getting into collateral matters that would expand what appears to be a trial of several hours' duration into a trial that will last one or more weeks.

      3.  The defendant will not seek to address each and every 404 "particle" that the State has designated, but rather, will offer a summary of the categories of events the State seeks to introduce:

    a.  Disciplinary proceedings between the State Supreme Court and the defendant in the form of admonitions, suspension and, ultimately, disbarment.

    b.  A portrait of the defendant as an uncaring father who seeks to avoid his parental responsibilities and who harms the psyche of the children by disparaging Donna Benge in front of the children.

    c.  An individual who could be termed the "Poster Boy" for spousal abuse in that he burglarized Donna Benge's automobile, he burglarized her home, he unlawfully intercepted telephone communications in their home, he unlawfully recorded telephone converations of Donna Benge in her home, he rifled through Donna Benge's purse, he intercepted her mail, he left vulgar messages on her voice mail and he accosted her physically by forcefully grabbing her against her will.

A 4

    d.   The defendant is depicted as an alcoholic who does nothing but watch television and drink alcohol.

    e.   The defendant "blackmailed" Donna Benge.

4.  The portrait that is painted will so profoundly contaminate the jury by engendering such ill will toward the defendant on account of his many misdeeds that it seems to permeate his entire existence as a human being that his right to a fair trial will be undoubtedly compromised. No instruction is going to be able to "unplant the seed" of utter disgust that the jury will have in viewing this valueless entity masquerading as a human being.

5.  Putting aside the aspect of unfair prejudice, the entire focus of the trial will shift from a "I said", "he said" commentary on marital "back and forth" that mark many marriages as they "go under" and this distraction will disrupt the orderly mechanism of the trial.

WHEREFORE, under considerations of D.R.E. 402, 403 and 404, the defendant moves to exclude all the purported 404 evidence the State seeks to admit in the document that has been previously to this Court.

Joseph A. Hurley
1215 King Street
Wilmington, DE 19801
(302)658-8980

Dated:  July 1, 2003

A5

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY

```
STATE OF DELAWARE          )
                           )
     V.                    )    I.D. 0210012355
                           )
JOHN H. BENGE, JR.,        )
                           )
        Defendant.         )
```

## O R D E R

The defendant's Motion to Exclude 404 Material having been heard and considered,

ORDERED this _____ day of _____, 2003, A.D., that the defendant's Motion is granted.

_____
                                    J.

A 6

STATE OF DELAWARE:
                    :SS
NEW CASTLE COUNTY:                    AFFIDAVIT OF MAILING

On this day personally appeared before me, the Subscriber, a Notary Public for the State and County aforesaid, __Joyce M.__ __Reynolds_____, who did affirm that on this day she did personally deposit in the United States mail, postage prepaid __two___ copy(ies) of the foregoing __Notice, Motion in Limine to Exclude Purported 404__ __Material and Order__ to __Melanie C. Withers, Esq._____ at the address below.

Deputy Attorney General
Department of Justice
114 East Market Street
Georgetown, DE 19947

_____

SWORN TO and SUBSCRIBED before me this __1st__ day of __July____, 2003, A.D.

_____
Attorney-at-Law

A7

IN THE SUPREME COURT OF THE STATE OF DELAWARE

JOHN H. BENGE, JR.       )
                       )
      Defendant-Below, )
      Appellant,     )
                       )
v.                    )   No. 544, 2003
                       )
STATE OF DELAWARE,     )
                       )
      Plaintiff-Below, )
      Appellee.     )

---

ON APPEAL FROM THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY

---

APPELLANT'S REPLY BRIEF

BERNARD J. O'DONNELL (#252)
Office of Public Defender
Carvel State Office Building
820 N. French Street
Wilmington, DE 19801

Attorney for Appellant

Dated: July 6, 2004

A 8

TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . .    i

TABLE OF CITATIONS  . . . . . . . . . . . . . . . . . . . . .   ii

ARGUMENTS

I.    THE PRIOR BAD CONDUCT ADMITTED AGAINST THE DEFENDANT
      AT TRIAL WAS IRRELEVANT AND UNDULY PREJUDICIAL TO
      THE DEFENDANT'S RIGHT TO A FAIR TRIAL UNDER D.R.E.
      404(B) . . . . . . . . . . . . . . . . . . . . . . . .    1

II.   THE PROSECUTOR'S PERSONALLY SARCASTIC REMARK TO THE
      DEFENDANT BEFORE THE JURY THAT HE WAS A "REAL
      HUMANITARIAN" UNFAIRLY DEPRIVED THE DEFENDANT OF A
      FAIR TRIAL . . . . . . . . . . . . . . . . . . . . . .    5

III.  BECAUSE THE TRIAL EVIDENCE COULD HAVE SUPPORTED A
      VERDICT OF ASSAULT SECOND DEGREE BASED ON EITHER OF
      TWO ACTS -- SPRAYING STACEY SMITH WITH PEPPER SPRAY
      OR CAUSING A GUNSHOT WOUND TO HIS SHOULDER -- THE
      TRIAL COURT'S FAILURE TO SPECIFICALLY CHARGE THE
      JURY AS TO THE LESSER INCLUDED OFFENSE OF ASSAULT
      SECOND DEGREE WITH RESPECT TO THESE TWO DISTINCT
      ACTS DEPRIVED THE DEFENDANT TO THE RIGHT TO A
      UNANIMOUS JURY VERDICT . . . . . . . . . . . . . . . .    8

IV.   THE TRIAL COURT'S FAILURE TO ADEQUATELY DEFINE THE
      LESSER INCLUDED OFFENSE OF ASSAULT THIRD DEGREE
      DEPRIVED THE DEFENDANT OF THE RIGHT UNDER 11 *DEL. C.*
      § 206 TO HAVE THE JURY CHARGED WITH ANY LESSER
      INCLUDED OFFENSE . . . . . . . . . . . . . . . . . . .    9

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . .   12

A9

## TABLE OF CITATIONS

Cases

*Ashley v. State*, 798 A.2d 1019 (Del. 2002) . . . . . . . . 7

*Caldwell v. State*, 770 A.2d 522 (Del. 2001) . . . . . . . . 8

Derose v. State, 840 A.2d 615 (Del. 2003) . . . . . . . . . 7

*Deshields v. State*, 706 A.2d 502 (Del. 1998) . . . . . . 3, 4

*Getz v. State*, 538 A.2d 726 (Del. 1988) . . . . . . . . . . 4

*Hughes v. State*, 437 A.2d 559 (Del. 1981) . . . . . . . . 6

*Hunter v. State*, 815 A.2d 730 (Del. 2002) . . . . . . . . 8

*Probst v. State*, 547 A.2d 114 (Del. 1988) . . . . . . . . 10

*United States v. Antonelli Fireworks Co.*,
    155 F.2d 631 (2nd Cir.), *cert. denied*,
    329 U.S. 742 (1946) . . . . . . . . . . . . . . . . . . 6

Rules

D.R.E. 404(b) . . . . . . . . . . . . . . . . . . . . . . . 1

A 10

I.  THE PRIOR BAD CONDUCT ADMITTED
    AGAINST THE DEFENDANT AT TRIAL WAS
    IRRELEVANT AND UNDULY PREJUDICIAL TO
    THE DEFENDANT'S RIGHT TO A FAIR TRIAL
    UNDER D.R.E. 404(B).

In its answering brief, the State contends that evidence concerning the Defendant's burglary of and planting of listening devices in his former wife's home in New Castle County was relevant to prove the Defendant's intent and motive to commit burglary months later at the Sussex County motel that his former wife managed. Ans. Br. at 9-15.

The defense has argued that evidence concerning the prior alleged burglary was irrelevant and unfairly prejudicial because the evidentiary facts concerning the October 20 incident at the Oak Grove were straightforward and uncontested, and the allegation that the Defendant illegally entered his wife's home months before to plant a recording device proved nothing as to what he intended to do on October 20 at the Oak Grove Motel. The defense has also argued that admission of this other crimes evidence was unfairly prejudicial because the prosecution had no need to introduce evidence of the prior burglary because the facts that occurred on October 20 were essentially clear and that the prior burglary would add nothing other than to show the Defendant had previously committed a burglary.

1

A 11

The defense has also contended that the similarity between the two offenses was unfairly prejudicial to the Defendant and that there was significant alternative and less prejudicial proof of the Defendant's preoccupation with his relationship with his ex-wife and her present relationships with others. (A44, 52-53).

The State argues in its answering brief, however, that "presenting evidence to show that Benge illegally entered the new residence of his former wife in order to plant a tape recorder demonstrated his pronounced animosity towards Smith and his former wife." Ans. Br. at 15.

A "pronounced animosity" is nothing more than forbidden pronounced evidence of character. The State had already presented an abundance of evidence clearly demonstrating the Defendant's jealousy and obsession with his wife's new relationship. In its answering brief, the State fails to acknowledge that it had already been permitted to introduce other misconduct evidence that: the Defendant had previously called Donna's new paramour, Stacey Smith, while he and Donna were separated in order to contentiously question him concerning his relationship with Donna; the Defendant had entered Donna's new home without invitation to question her and Stacey about whether the children knew about their

2

A 12

relationship; the Defendant told Donna before the October 20
incident that Stacey Smith's "shadow will never darken the
doorstep" of their previous marital home; the night before the
October 20 incident, the Defendant hung up the phone several
times and then announced to his son that "the whore is on the
phone" when Donna attempted to call their son. (A28-31).

Contrary to the State's contention that the trial
court "properly applied the nine factor analysis" in
*Deshields,* Ans. Br. at 15, the trial court failed to
adequately take into account the abundance of less prejudicial
proof to prove the uncontested point that the Defendant was
obsessed with his former spouse and her new relationship; and,
the similarity of the prior burglary to the charged burglary
invited unnecessary prejudice. *Deshields v. State*, 706 A.2d
502, 506-507 (Del. 1998).

The admission of evidence of another burglary was
unfairly prejudicial in view of the significant evidence
already admitted concerning the Defendant's intent and
motivation:

> Where, as here, the State
> presents direct evidence, through the
> testimony of the alleged victim, that
> an attack occurred, no evidential
> purpose is served by proof that the
> defendant committed other intentional
> acts of the same type.

3

A13

*Getz v. State*, 538 A.2d 726, 733 (Del. 1988). It was substantially outweighed under D.R.E. 403 by the unfair prejudice it invited with respect to the later alleged burglary because the extent to which the point to be proved -- the Defendant's obsession with his former wife -- was not in dispute; the proponent (prosecution) had no need for the evidence because there was an abundance of less prejudicial proof to prove the point that the Defendant was obsessed with his former spouse and her new relationship; and, the similarity of the prior burglary to the charged burglary invited unnecessary prejudice. *Deshields v. State*, 706 A.2d at 506-507.

4

A 14

II.        THE PROSECUTOR'S PERSONALLY SARCASTIC
           REMARK TO THE DEFENDANT BEFORE THE
           JURY THAT HE WAS A "REAL
           HUMANITARIAN" UNFAIRLY DEPRIVED THE
           DEFENDANT OF A FAIR TRIAL.

At the end of the Defendant's testimony, specifically his

testimony that he didn't intend to harm Stacy Smith, the

prosecutor sarcastically made the personal remark to him:

"You're are quite a humanitarian, aren't you." (A196). The

State does not dispute that dramatic remark as an improper

expression of opinion concerning the Defendant's credibility.

Instead, the State now attempts to depreciate the prosecutor's

sarcastic expression of her personal opinion before the jury

as "brief" and "isolated." Ans. Br. at 17-19.

The State's attempt to downplay the undue prejudice of

the improper prosecutorial comment is belied, however, by the

State's related emphasis on the trial court's attempt to

overcome such a severely prejudicial remark through an

unusually "detailed and forceful curative instruction" Ans.

Br. at 18. "Brief" and "isolated" improper remarks don't

require judges to tell juries, "So when I tell you to

disregard that, I say as strongly as I possible can." Ans. Br.

at 18. To the extent that the State argues that the trial

judge took exceptional measures in an attempt to erase the

prejudice from the juror's minds, it proves the likelihood of

A15

exceptional prejudice that cannot be undone.

In addition, the State fails to address what is most obvious about its prosecutor's intentionally sarcastic remark: it not only implicated but was directly pointed at the central, most important issue at trial -- the Defendant's credibility. If the Defendant's testimony was believed by any juror or raised a reasonable doubt about his intention, the jury could not have convicted him of assault.

Furthermore, the State cannot and does not argue that the case at trial was not close. To contend otherwise, when the critical issue was the Defendant's credibility, would usurp the role of the jury before whom the prosecutor made the gratuitously prejudicial remark. In essence then, the State is constrained to argue in its brief that in a case where the prosecutorial misconduct not only affects the central issue at trial but also in a close case, a judicial instruction to the jury to disregard the misconduct, no matter how unfairly prejudicial the misconduct, will mitigate the effect of the error so that the trial can be determined to be fair. *See Hughes v. State*, 437 A.2d 559, 556 (Del. 1981). That position would license misconduct for the cost of a jury instruction.[1]

---

[1] *Cf. United States v. Antonelli Fireworks Co.*, 155 F.2d 631, 661 (2nd Cir.) (Frank, J. dissenting), *cert. den.* 329 U.S. 742 (1946) ("The deprecatory words which we use in our

A16

Contrary to what the State suggests by its exclusive focus on the attempted curative instruction, however, a judicial instruction does not cure all error.

Likewise, the State's suggestion that a case like this should turn on the Defendant's counsel not having moved for a mistrial, Ans. Br. at 19-20, exacts too high a price for the State's gratuitous misconduct. Must a defendant always endure two trials, and forego one fair one, in order to secure a fair trial and prevent a prosecutor from intentional inflicting unfair prejudice?

Contrary to the State's contention, Ans. Br. at 19-20, the prosecutor's gratuitously unfair remark was "egregious" under these circumstances. *Ashley v. State*, 798 A.2d 1019, 1022 (Del. 2002) ("far exceeds the threshold where a curative instruction can remedy the prejudice suffered"). Moreover, the State also does not address in its answering brief that this misconduct is "egregious" in the sense that this Court has had to convey "oft-repeated admonitions," *Derose v. State*, 840

---

opinions ... are purely ceremonial. Government counsel, employing such tactics, are the kind who, eager to win victories, would gladly pay the small price of a ritualistic verbal spanking. The practice of this Court--recalling the bitter tears shed by the walrus as he ate the oyster--breeds a deplorably cynical attitude toward the judiciary").

7

A17

A.2d 615, 620 (Del. 2003), to the State concerning such repetitive misconduct. As a result, the Court previously warned the State that it will not tolerate such misconduct at trial and that future instances will result in prophylactic reversal notwithstanding the evidence because it compromises "integrity of the judicial process." *Hunter v. State*, 815 A.2d 730, 738 (Del. 2002). *See also Caldwell v. State*, 770 A.2d 522, 527 (Del. 2001).

The State's answering brief relies on only one factor to uphold the Defendant's convictions -- the trial court instructed the jury to disregard the error. Three other unanswered factors require reversal: the error affected the central issue at trial - the Defendant's credibility; the case was not close; and finally, the compromise of "integrity of the judicial process" requires reversal. *Hunter*, 815 A.2d at 738.

A 18

III.        BECAUSE THE TRIAL EVIDENCE COULD HAVE
SUPPORTED A VERDICT OF ASSAULT SECOND
DEGREE BASED ON EITHER OF TWO ACTS --
SPRAYING STACEY SMITH WITH PEPPER
SPRAY OR CAUSING A GUNSHOT WOUND TO
HIS SHOULDER -- THE TRIAL COURT'S
FAILURE TO SPECIFICALLY CHARGE THE
JURY AS TO THE LESSER INCLUDED
OFFENSE OF ASSAULT SECOND DEGREE WITH
RESPECT TO THESE TWO DISTINCT ACTS
DEPRIVED THE DEFENDANT TO THE RIGHT
TO A UNANIMOUS JURY VERDICT.

In its answering brief, the State contends that the jury

could not have rendered a less than unanimous verdict based on

alternative means of assault -- either by gun or disabling

pepper spray --  because the trial court (incorrectly and

inadequately) failed to statutorily define an assault with

pepper spray. Ans. Br. at 21-26. The State argues that "the

definition of 'dangerous instrument' given to the jury []

could not reasonably be interpreted as referring to the pepper

spraying of Smith by Benge." Ans. Br. at 24.

The State is wrong. It is clearly possible that a juror

may have believed that any "instrument ... under the

circumstances in which it is used or attempted to be used ...

is readily capable of causing ... prolonged impairment of any

bodily organ," (A246), could have included the Defendant's use

of pepper spray sprayed into the complainant's eyes resulting

in impairment of the ability to see for a significant period

of time. Simply because the trial judge failed to define the more specific definition of a disabling chemical spray provided by the legislature does not mean that a juror could not view chemical pepper spray as a "dangerous instrument" as generally defined and when sprayed into someone's eyes.

Moreover, in its answering brief, the State does not contest that had a juror thought the pepper spray as used by the Defendant was a "dangerous instrument," a specific unanimity instruction would have been required. The failure to give a specific unanimity instruction was therefore plain and reversible error. *Probst v. State*, 547 A.2d 114, 119 (Del. 1988) (internal quotations omitted).

A 20

IV.        THE TRIAL COURT'S FAILURE TO
ADEQUATELY DEFINE THE LESSER INCLUDED
OFFENSE OF ASSAULT THIRD DEGREE
DEPRIVED THE DEFENDANT OF THE RIGHT
UNDER 11 *DEL. C.* § 206 TO HAVE THE
JURY CHARGED WITH ANY LESSER INCLUDED
OFFENSE.

In its answering brief, the State acknowledges that the Superior Court erred by failing to define "disabling pepper spray," an essential element of the lesser included offense of assault third degree on which the jury was charged. Ans. Br. at 28-29. The State's position that it was not prejudicial error because "the jury's assessment of the evidence was being confined by the trial judge's instruction and the State's theory of the case," Ans. Br. at 29, provides an inadequate answer, however. Not only is the State's contention unsupported by any authority, but it contradicts the fundamental principle that jury instructions on offenses must be based on the evidence and not confined by a judge's instructions or a party's theory of the case.

11

A21

CONCLUSION

For the aforementioned reasons and authorities recited herein, the Defendant's convictions for assault second degree, criminal trespass first degree and offensive touching should be reversed.

Respectfully submitted,

BERNARD J. O'DONNELL (#252)
Office of Public Defender
Carvel State Building
820 N. French Street
Wilmington, DE  19801

Date:  July 7, 2004

A22