ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

John H. Benge, Jr., )
 )
 *Petitioner* ) C.A. No. 05-0551 (GMS)
 )
 v. )
 )
Rick Kearney, Warden )
Sussex Correctional )
Institution; and Carl )
C. Danberg, Attorney )
General of the State )
of Delaware, )
 )
 *Respondents* )

FILED

NOV - 3 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## PETITIONER'S REPLY BRIEF IN SUPPORT OF
## PETITION FOR *HABEAS CORPUS*

John H. Benge, Jr.
Sussex Correctional Institution
P.O. Box 500
Georgetown, DE 19947

November 2, 2006

# TABLE OF CONTENTS

Page

Table of Citations............................................................................... ii

Supplemental Statement of the Nature and
Stage of the Proceedings..................................................................... 1

Argument

I.    Habeas Corpus Relief Is Warranted On The
      1st Amendment Claim – It Is has Been Exhausted
      And Is Not Procedurally Barred..................................................... 5

A. "Fair Presentation" Of A *Habeas Corpus* Claim..................................... 5

B. The 1st Amendment Claim Has Been Exhausted
   As It Was Fairly Presented To The State Courts..................................... 9

C. The 1st Amendment Claim Is Not Procedurally Barred............................ 19

D. The Sentencing Judge Impermissibly Used Petitioner's
   Exercise Of His 1st Amendment Right To Petition To
   Enhance The Penalty Imposed...................................................... 25

II.   Delaware's Sentencing Scheme Violates The
      6th Amendment As Applied To Petitioner..................................... 27

A. Blakely Issues Do Not Present Matters Of State Law............................. 27

B. The Enhancement Of Petitioner's Sentence
   Was Impermissible Under The 6th Amendment................................... 42

Conclusion...................................................................................... 44

      A. Petitioner Is Entitled To Relief Under 28 U.S.C. §2254.................... 44

      B. Amendment Of Petition/ Stay And Abeyance.............................. 45

      C. Certificate Of Appealibility................................................. 46

Certificate Of Service

## TABLE OF CITATIONS

### CASES

*Appel v. Horn*, 250 F.3d 203 (3rd Cir., 2001)……………………………… 47

*Apprendi v. New Jersey*, 530 U.S. 466 (2000)……………………………. passim

*Baldwin v. Reese*, 541 US __ (2004)......................................................... 5

*Benge v. State*, Order, No. 137, 2004, November 12, 2004 (Del.)……….. passim

*Biasaccia v. Attorney General*, 623 F.2d 307 (3rd Cir., 1980) *cert. denied,*
   449 U.S. 1042 (1980)…………………………………………………….. 7

*Blakely v. Washington*, 542 U.S. ___ (2004)…………………………… passim

*Brown v. Allen*, 344 US 443 (1953)……………………………………… 27

*Brown v. Payton*, __US__ (2005)………………………………………… 27

*Capano v. State*, __ A.2d __ (Del., 2006)………………………………… 39

*Capano v. State,* 781 A.2d 556 (Del., 2001)……………………………… 39

*Castille v. Peoples*, 489 US346 (1989)…………………………………… 7

*Connick v. Myers*, 461 US 138 (1983)…………………………………… 12

*Dawson v. State*, 581 A.2d 1078 (Del., 1990); *reversed sub nom*
   *Dawson v. Delaware*, 503 US 161 (1992), *appeal after remand,*
   608 A.2d 1201 (Del., 1992)……………………………………………… 13

*Daye v. Attorney General Of New York*, 696 F.2d 186 (2nd Cir., 1982)... 6

*Doctor v. Walters*, 96 F.3d 675 (3Rd Cir., 1996)………………………… 7

*Duncan v. Henry*, 513 US 364 (1995)…………………………………… 5

*Dye v. Hofbauer*, __US__(2005)………………………………………… 8

*Engle v. Issac*, 456 US 107 (1982)……………………………………….. 25

*Evans v. Court of Common Pleas, Delaware County,*
*Pennsylvania*, 959 F.2d 1227 (3rd Cir., 1992)………………………….. 6

*Evans v. State*, __A.2d__, No. 67, 2004, Nov. 23, 2004 (Del.)…………   21

*Everett v. Beard*, 290 F.3d 500 (3rd Cir., 2002)…………..……………..   48

*Fink v. State, 817 A.2d 781* (Del., 2003)…………………………………   14

*Gattis v. Snyder*, 278 F.3d 222 (3rd Cir., 2002)…………………………..   47

*Humphrey v. Cady*, 405 US 504 (1972)…………………………………   6

*Idaho v. Stover,* No. 30313 (January 6, 2005)……………………………   39

*Jackson v. State*, 821 A.2d 881 (Del., 2003)…………………………….   16

*Jacobs v. Horn*, 395 F.3d 92 (3rd Cir., 2005)……………………………   47

*Johnson v. State*, 797 A.2d 1206 (Del., 2002)……………………………   20

*Johnson v. State,* 280 A.2d 712 (Del., 1972)……………………………   21

*Keller v. Larkins*, 251 F.3d 403 (3rd Cir., 2001)………………………   8

*Lines v. Larkins*, 208 F.3d 153 (3rd Cir., 2000)…………………………..   7

*Lopez v. State*, Case No. 04SC150 (Colo., 2005)………………………..   29

*Marshal v. Hendricks*, 307 F.3d 36 (3rd Cir., 2002)………………………   48

*McCandleless v. Vaughn*, 172 F.3d 255 (3rd Cir., 1999)…………………   5

*McCoy v. Norris*, 125 F.3d 1186 (8th Cir., 1997)…………………………..   22

*McDada v. State*, 693 A.2d 1062 (Del., 1997)……………………………   17

*Michigan v. Claypool*, 684 N.W.2d 278 (Mich., 2004)……………………   35

*Mills v. Jordan*, 979 F.3d 95 (7th Cir., 1994)……………………………   22

*Minnsesota v. Shattuck*, 689 N.W.2d 785 (Minn., 2005)…………………   30

*Murray v. Carrier*, 477 US 478 (1986)…………………………………..   25

*New Jersey v. Abdullah*, 878 A.2d 746 (N.J., 2005)………………………   30

*New Jersey v. Natale*, 878 A.2d 746 (N.J., 2005)…………………………..   30

*O'Sullivan v. Boerckel,* 526 US 838 (1999)………………………………….. 5

*People v. Black*, 35 Cal. Rpt.4th 1238 (Cal., 2005)…………………………. 37

*People v. Nitz,* __N.E.2d (Ill. App., 2005)………………………………….. 29

*Picard v, Conner*, 404 US 270 (1971)……………………………………. 5

*Pickering v. Board of Education of Township*
 *High School District*, 391 US 563 (1968);…………………………………. 12

*Pierkarski v. State*, 153 A.2d 587 (Del., 1959)……………………………. 17

*Rhines v. Weber*, 544 US__ (2000)…………………………………………. 48

*Ring v. Arizona*, 536 U.S. 584 (2002)……………………………………. 39

*Rose v. Lundy*, 455 US 509 (1982)…………………………………………. 48

*Ross v. Petsock,* 868 F.2d 639 (3rd Cir., 1989)………………………..…. 48

*San Diego v. Roe*, 543 US __ (December 6, 2004)………………...……. 12

*Sawyer v. Whitney*, 505 US 333 (1992)……………………………………. 22

*Schup v. Delo*,  513 US 298  (1995)………………………………………... 22

*Schmitz v. Carroll,* No. 02-1527(GMS) (D. Del., October 10 , 2003).. ……. 44

*Slack v. McDaniel*, 529 US 473 (2000)……………………………………. 49

*Smith v. Digmon,* 434 US 332 (1978)……………………………………… 9

*Smith v. Murray*, 477 US 527 (1986)……………………………………… 25

*Smylie v. State*, 823 N.E.2d 679 (Ind., 2005)…………………………… . 29

*State v. Allen*, 615 S.E.2d 256 (N.C., 2005)……………………………… 30

*State v. Brown*, 99 P.3d 15 (Ariz., 2004)………………………………… 28

*State v. Brown,* No. 03-K-2788 (La., 204)……………………………….. 30

*State . Gould*, 23 P.3d 801 (Kas., 2001)………………………………..…. 30

*State v. Dilts*, 82 P.3d 593 (Ore., 2003)…………………………………… 31

*State v. Dilts*, 103 P.3d 95 (Ore., 2004)...............................................  31

*State v. General Chemical Corp.*, 559 A.2d 292 (Del. Super., 1988)...........  17

*State v. Holloway*, 460 A.2d 176 (Del. Super., 1983)..........................  17

*State v. Lucas*, 548 S.E.2d 712 (N.C., 2001)......................................  30

*State v. Rivera*, 102 P.3d 1044 (Hai., 2004)......................................  39

*State v. Schofield*, 876 A.2d 43 (Me., 2005)......................................  39

*Swanger v. Zimmerman*, 750 F.2d 291 (3rd Cir., 1984)...........................9

*Taylor v. Municipal Court*, 247 A.2d 24 (Del. Super., 1968)..................  17

*Tennessee v. Lopez*, 163 S.E.2d 658 (Tenn., 2005)...............................  29

*Trowbridge v. State*, 717 N.E.2d 138 (Ind., 1999)...................................29

*United States v. Booker*, __ U.S. __ (2005)------------------------------------------27

*United States v. Cepero*, 224 F.2d 256 (#rd Cir., 2000)............................  49

*Unites States v. Fanfan*, __U.S. __ (2005)------------------------------------------ 27

*United States v. Maybeck*, 23 F.3d 810 ($th Cir., 1984)...........................  22

*United States v. Treasury Employees*, 513 US 454 (1995)............... ............12

*Waring v. Delo*, 7 F.3d 753 (8th Cir., 1993).......................................  22

Weedon v. State, 750 A.2d 521 (Del., 2000)......................................  20

*Whitney v. Horn*, 280 F.3d 240 (3rd Cir., 2002)..................................  18

*Williams v. Taylor*, 529 US 362 (2000)..............................................  47

*Zant v. Stephens*, 462 US 862 (1983)...............................................  25

## CONSTITUTIONAL PROVISIONS

United States Constitution, Amendment I----------------------------------- passim
United States Constitution, Amendment VI--------------------------------- passim

## FEDERAL STATUTE

28 U.S.C. §2254------------------------------------------------------------------- passim

## DELAWARE STATUTE

11 Del. C. §4204(m)…………………………………………………… 43

## FEDERAL RULES

FRCP Rule 25 (d)(1)…………………………………………………………… 1

## DELAWARE COURT RULES

Superior Court Criminal Rules
      Rule 35……………………………………………………………… 21
      Rule 61 (i)(3)…………………………………………………….. 20
      Rule 61 (i)(4)…………………………………………………….. 20
      Rule 61 (i)(5)…………………………………………………….. 20

## SUPPLEMENTAL STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Following the entry by this Court of a scheduling order dated October 11, 2005, as extended by order of December 1, 2005, respondents Rick Kearney, Warden, Sussex Correctional Institution, and Carl C. Danberg, FRCP Rule 25 (d)(1) substituted respondent Attorney General of the State of Delaware, ("Respondents") have filed an answer to the petition (the "Answer") in this *habeas corpus* action.

In the Answer, Respondents assert:

❖ that Petitioner's 1st Amendment claim is not exhausted, is procedurally barred, and lacks merit;

❖ that Petitioner's 6th Amendment *Blakely* claim is not a cognizable claim in a federal *habeas corpus* court as it presents a question solely of state law; and

❖ that Petitioner's petition should therefore be dismissed.

For the purpose of resolving the 1st Amendment issue presented by this case, it is useful at this point to note that the parties are not in disagreement as to any fact material to Petitioner's contention that his sentence was enhanced as a result of the sentencing judge's use of the letter written by

Petitioner to Delaware Secretary of Education Valerie Woodruff. (for the text of that letter, see Appendix to Petitioner's *Habeas Corpus* brief, Appendix A18).

Significantly, in the summary of the facts in the Answer, at no point do Respondents contend that the sentence imposed in this case was *not* based upon Petitioner's exercise of his 1st Amendment right to petition. The position taken in this Court is thus consistent with the argument advanced by the State in the Delaware Supreme Court upon Petitioner's direct appeal to that court.[1] The Respondents offer no other explanation for the sentence as imposed and do not attempt to argue that the sentencing judge's action is consistent with the 1st Amendment right to petition.

As to Petitioner's *habeas corpus* petition based upon *Blakely v. Washington*, 542 US ___ (2004), the Respondents do not contend that Petitioner's account of the legislative history of the Delaware sentencing scheme is inaccurate or incomplete. Nor do Respondents' take issue with Petitioner's assertion that the facts upon which the sentencing judge enhanced Petitioner's

---

[1] Respondents also do not contest Petitioner's assertion that at his sentencing the prosecutor misrepresented the trial testimony as to the "false positive" drug screen for marijuana that Petitioner identified in his letter to the Delaware Secretary of Education. See Petitioner's *Habeas Corpus* Brief, p. 49 - 52 .

sentence were not tried to a jury or admitted by Petitioner. The Respondents also do not dispute the notion advanced by Petitioner that under Delaware's sentencing scheme, a sentencing judge *must* state "reasons" in order to impose a sentence that departs from the SENTAC presumptive sentences and that in Petitioner's case those "reasons" equate to findings of fact on matters not tried to a jury. (see Petitioner's opening brief on *habeas corpus*, pp. 20–39).

Petitioner further calls to the attention of the Court that the documents filed by Respondents with the Answer include only Petitioner's brief and appendix on direct appeal; the State's answering brief thereto; and the Delaware Supreme Court's dispositive order.  Not included with the documents filed by Respondents with the Answer is Petitioner's reply brief on direct appeal (this is included in the appendix submitted with Petitioner's *habeas corpus* brief – see Appendix A54 – A63). The availability of the transcript of Petitioner's March 19, 2003 sentencing is not mentioned in the Answer but that too is set forth in its entirety in Petitioner's Appendix (Appendix A19 – A22).

Finally, the Answer does not raise any issue of non-retroactivity or the bar of the statute of limitations.

# ARGUMENT

## I. *Habeas Corpus* Relief Is Warranted On The 1st Claim – It Has Been Exhausted And Is Not Procedurally Barred

### A). "Fair Presentation" Of A *Habeas Corpus* Claim

To satisfy the exhaustion requirement of one full "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 US ___ (2004); *Duncan v. Henry*, 513 US 364 (1995); *Picard v, Conner*, 404 US 270 (1971). The necessary "opportunity" knocks when the prisoner has "fairly presented" his federal claim, thereby "alerting" the state courts to the federal nature of his claim. *Baldwin v. Reese*, *supra*; *Duncan v. Henry*, *supra*; *O'Sullivan v. Boerckel*, 526 US 838 (1999).

While it is now clear that "fair presentation" must appear and be made in the confines of an appellate brief or similar legal pleading (*Baldwin v. Reese, supra*), it remains the case that a *habeas corpus* petitioner need not have recited "book and verse" of the Federal Constitution in any such document. *Picard v. Conner, supra*, 404 US, at 277; *McCandleless v.*

*Vaughn*, 172 F.3d 255 (3rd Cir., 1999), at 261.   In other words, "...the absence of *explicit* reference to federal law does not resolve the issue of whether a federal claim was fairly presented." *Id.*, 172 F.3d, at 261 (emphasis supplied).

There is, accordingly, no need to state the federal claim in any particular manner or to invoke any "talismanic" constitutional phrase. *Evans v. Court of Common Pleas, Delaware County, Pennsylvania*, 959 F.2d 1227 (3rd Cir., 1992), at 1230-1233.   A petitioner need only fairly present in state court the *substance* of the claim later asserted for *habeas corpus* relief. *Humphrey v. Cady*, 405 US 504 (1972).   This a petitioner may do in a number of ways.

In *Evans v. Court of Common Pleas, supra*, the Third Circuit noted *some* of the ways in which a *habeas corpus* petitioner may communicate to a state court that a federal claim is being asserted without explicit reference to the Federal Constitution.   Quoting *Daye v. Attorney General Of New York*, 696 F.2d 186 (2nd Cir., 1982), the Third Circuit held the  "required message" can be conveyed through: a) reliance on pertinent federal cases employing constitutional analysis; b) reliance on state cases employing constitutional analysis in like

fact situations; c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; or d) allegation of a pattern of facts well within the mainstream of constitutional litigation. *Evans, supra*, 959 F.2d at 1232; see also *McCandleless v. Vaughn, supra*, at 172 F.3d 261; as to a) and b) above, see also *Baldwin v. Reese, supra*.

Through means such as those described in *Evans*, a petitioner satisfies the exhaustion requirement by asserting in state court a legal theory and facts that are substantially equivalent to those contained in his *habeas corpus* petition, *Castille v. Peoples*, 489 US 346 (1989); *Doctor v. Walters*, 96 F.3d 675 (3rd Cir., 1996); *Lines v. Larkins*, 208 F3d 153 (3rd Cir., 2000).

Exhaustion may be satisfied *without* mention of the Federal Constitution and absent citation to federal case law by an adequate statement of the facts involved in a state court pleading together with such words and phrases as: "...[petitioner] is entitled as a constitutional right to a fair trial." *Biscaccia v. Attorney General Of New Jersey*, 623 F.2d 307 (3rd Cir., 1980), at 310; the right to a "fair trial," *Evans, supra*, 959 F.2d, at 1233; by a passing reference to the concept of a "fair

trial," *Keller v. Larkins*, 251 F3d 403 (3rd Cir., 2001); and the "right to a fair trial," *Daye v. Attorney General Of New York*, *supra*, 696 F.2d, at 189.

When a claim is so presented in state court, a federal *habeas corpus* court "...cannot assume that the [state court] did not recognize the constitutional implications of such a claim." *Daye, supra*, 696 F.2d, at 197.

The Supreme Court within the past three months has addressed the *habeas corpus* "fairly presented" standard in an exhaustion case. In *Dye v. Hofbauer*, __US__, No 04-8384 (October 11, 2005), the petitioner's claim of prosecutorial misconduct had been analyzed and rejected by the Michigan state courts *solely* as a question of *state* law. On review of a *habeas corpus* petition, the Sixth Circuit found the misconduct claim to not have been "fairly presented." The Supreme Court summarily granted *certiorari* and reversed in a *per curiam* opinion. The Supreme Court concluded that the Petitioner's failure to mention the Federal Constitution in his state court pleadings was not fatal to his argument that the claim had been exhausted because his fourth argument on direct appeal

was that "the prosecutor denied defendant due process of law and a fair trial by numerous instances of misconduct."

A further principle applicable to "fair presentation" and exhaustion is that, provided a claim has in fact been fairly presented to the state courts, the exhaustion requirement is satisfied even if the state courts did not decide, consider, or even discuss the issues presented in a *habeas corpus* petition. *Swanger v. Zimmerman*, 750 F.2d 291 (3rd Cir., 1984) at 295; or if the state court chose to ignore the Federal Constitutional claim. *Smith v. Digmon*, 434 US 332 (1978).

### B). Petitioner's 1st Amendment Claim Was "Fairly Presented" To The State Courts

The substance of the 1st Amendment claim in this Court for *habeas corpus* relief is readily stated: in imposing an enhanced penalty upon Petitioner, the Superior Court sentencing judge impermissibly considered activity protected by the 1st Amendment "right to petition" (i e., Petitioner's letter to the Delaware Secretary of Education, Appendix to Petitioner's *habeas corpus* brief, A8-A18). The Answer filed by Respondents in this action does not so much as attempt to argue that the *facts* underlying Petitioner's 1st Amendment claim were somehow not before the Delaware Supreme Court. Nor could

9

such an argument be made given that the *only* instance of conduct by Petitioner that was before the Delaware courts with respect to the sentence enhancing factor of "lack of remorse" was the letter sent by Petitioner.  The parties agreed on direct appeal that no facts were in dispute [Appellant's brief on appeal, p. 5, Appendix to Petitioner's *Habeas Corpus* Brief, A49; State's Answering Brief on direct appeal, p. 1, p. 3 (produced with the Respondents' Answer)].

Given the parties' agreement on Petitioner's direct appeal and in this case as to the very limited facts involved in Petitioner's sentencing, the sole remaining question as to "fair presentation" is whether the legal theory – the 1st Amendment right to petition claim – that is relied upon by Petitioner for *habeas corpus* relief in this Court was also advanced in the state court legal pleadings.

In the Answer, it is contended – without any attempt to summarize the actual content of the state court record – that "...a review of the record in this case confirms that [Petitioner] did not present to the state courts the [1st Amendment claim]." (Answer, p.3). Despite the impression one might get from the Answer, there was indeed a factual record made in Petitioner's

case. As to the issue of whether Petitioner presented the legal theory of the 1ˢᵗ Amendment claim to the state courts, the Respondents' Answer relies upon the absence of the word "redress" in Petitioner's opening brief in the Delaware Supreme Court as *conclusive* of the non-exhaustion of the 1ˢᵗ Amendment issue (Answer, p. 3).

However, an objective view of the entire state court record reflects that Petitioner's 1ˢᵗ Amendment legal theory was indeed fairly presented to the state courts in a number of ways sanctioned by *Evans/McCandleless* :

⦿ At the Superior Court sentencing hearing, Petitioner's counsel argued to the sentencing judge as follows:

> [Counsel] : Just one quick comment, Your Honor. I think that the presentence officer has indicated that this was a violation of the no contact order and that is stretching the concept of what order he was under. So I would ask the Court to not consider this a violation of any kind of no contact order in this case.

> The Court: What?

> [Counsel]: I'm sorry, Your Honor?

> The Court: What should I not consider as a violation of the no contact order, the letter to the Board of Education?

> [Counsel]: Correct, Your Honor.

> The Court:  How am I not to consider it as such?
>
> [Counsel]:  I didn't know he had been ordered to have no contact with the Board of Education.
>
> The Court:  Certainly, as an altruistic citizen interested in this situation and as an attorney, he should know better. Okay?[2]
>
>                                    [Transcript, Appendix A21]

Petitioner's counsel was making the point that Petitioner could not suffer enhanced punishment for having contact by mail with the "Board of Education."   The sentencing judge even responded to this argument with a remark directed towards Petitioner's "citizenship."

O The fact pattern involved in Petitioner's case is a variation of a now familiar 1st Amendment scenario: one who attempts to speak out or to criticize government finds the effort to do so limited or penalized by a government official.   This is a fact pattern presenting a claim within the mainstream of litigation under the 1st Amendment; see, e.g., *Pickering v. Board of Education of Township High School District*, 391 US 563 (1968); *Connick v. Myers*, 461 US 138 (1983); *United*

---

[2] On appeal, Petitioner moved for correction of this transcript.

*States v. Treasury Employees*, 513 US 454 (1995); and *San Diego v. Roe*, 543 US __ (December 6, 2004). Petitioner does not assert that these cases are factually identical to his (particularly not *Roe*), but the generic 1st Amendment constitutional issue present in Petitioner's case and those cited is certainly in the "mainstream" of constitutional litigation today.

O Petitioner's reply brief (which was not provided to this Court as part of the documents from the state court record produced with Respondents' Answer but which does appear in the appendix to Petitioner's *habeas corpus* brief, Appendix A54-A63) expressly refers to Petitioner's letter to the Delaware Secretary of Education as "...a constitutionally protected report to an appropriate government entity by a concerned citizen" (reply brief on direct appeal, p. 2, Appendix A59). As the only instances of Petitioner's conduct under scrutiny on appeal were the actions underlying the offenses charged (the unlawful electronic interception) and the letter to the Secretary of Education, the reference in Petitioner's reply brief was obviously directed to the latter conduct. "Constitutionally protected" in this context cannot be confused with the 6th Amendment protection in *Blakely* as the Delaware

Supreme Court had reason to be familiar with 1st Amend-
ment issues being raised in sentencing cases: the very same
attorney who submitted Petitioner's brief on appeal had been
involved in a memorable freedom of association claim in a
sentencing case in *Dawson v. State*, 581 A.2d 1078 (Del.,
1990); *reversed sub nom Dawson v. Delaware*, 503 US 161
(1992), *appeal after remand,* 608 A.2d 1201 (Del., 1992).

⚫ In the reply brief submitted to the Delaware Supreme
Court, Petitioner also relied upon a state case raising a 1st
Amendment claim in an enhanced sentence fact pattern:

> ...a trial court may not rely on an impermissible
> factor in imposing sentence. *Fink v. State*, 817 A.2d
> 781 (Del., 2003). The imposition of three years
> of imprisonment based on the finding that [Peti-
> tioner] lacked remorse because he continued to
> harass his former wife and her new boyfriend is
> is now, under *Blakely*, an unconstitutional "factual
> predicate" for imposing imprisonment on [Petitioner]
> that would not otherwise be imposed.

> [Reply Brief on direct appeal,
> Appendix, A62]

*Fink* raised to the Delaware Supreme Court a 1st Amend-
ment claim as an "impermissible sentencing factor." While
Petitioner's brief on his direct appeal admittedly intertwined
the 1st Amendment claim he raised with a *Blakely* argument,
the Delaware Supreme Court was nonetheless "alerted" that the

14

1st Amendment was a basis for the relief in the direct appeal sought by the citation to *Fink* – Petitioner "said so" in the language of *Duncan v. Henry*.

The record made in state court, including a brief filed on direct appeal, therefore supports the conclusion that Petitioner's 1st Amendment claim in this Court was "fairly presented" under the (b), (c) and (d) alternatives of *McCandleless/Evans* by: citation to a state case raising the 1st Amendment in an enhanced sentence context; assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and an allegation of a pattern of facts that is well within the mainstream of constitutional litigation. *McCandleless,* 172 F.3d, at 261.

What else could Petitioner's counsel at sentencing have been referring to when he advised the Superior Court that Petitioner's letter to the "Board of Education" could *not* be considered by the sentencing judge as a violation of the no contact order? The notion that Petitioner's letter was cloaked in 1st Amendment immunity is clearly at the heart of the argument of Petitioner's counsel at the sentencing: counsel

requested that the sentencing judge make no use of that event and draw no adverse inference from it.

What else could the reference to "constitutionally protected" conduct have meant in Petitioner's reply brief on direct appeal? Or that Petitioner's letter to Secretary Woodruff was a a constitutionally "impermissible" factor in sentencing?   Respondent's Answer offers no   suggestion as to an alternative explanation for these words. While the primary thrust of Petitioner's direct appeal was, no doubt, the *Blakely* issue, the Delaware Supreme Court was expressly "alerted" to the presence of a claim on appeal that Petitioner's letter to the Delaware Secretary of Education was "constitutionally protected."    That reference was adequate to "fairly present" Petitioner's 1st Amendment right to petition claim because the right to petition is the only conceivable constitutional right that Petitioner could logically be referring to in the reply brief *and* the 1st Amendment is at least co-extensive with any similar protection in the Delaware State Constitution.    See, e.g., *Jackson v. State*, 821 A.2d 881 (Del., 2003) ("freedom of speech" claim reviewed under Federal Constitution); *Fink v. State, supra* (claim of "protected speech" reviewed under Federal Constitu-

tion); *McDade v. State*, 693 A.2d 1062 (Del., 1997) ("freedom of speech" claim equates to 1st Amendment); *Gannett Co., Inc. v. State,* 565 A.2d 895 (Del., 1989) (1st Amendment and state constitutional protections viewed as co-extensive); *State v. General Chemical Corp.*, 559 A.2d 292, (Del. Super., 1988) (challenge to "constitutionality" of statute analyzed under 1st Amendment); *State v. Elliott*, 548 A.2d 28 (Del., 1988) ("freedom of assembly" claim reviewed under 1st Amendment only); *State v. Holloway*, 460 A.2d 9976 (Del. Super., 1983) ("right of association" reviewed under 1st Amendment); *Taylor v. Municipal Court*, 247 A.2d 914 (Del. Super., 1968) (claim of "unconstitutional" infringement of right of assembly reviewed under both state and federal constitution); *Pierkarski v. State,* 153 A.2d 587 (Del., 1959) (issue involving "right to petition" invoked as "constitutional" protection reviewed under both state and federal constitutional provisions).

There is a further reason why Petitioner's claim may properly be said to be exhausted – the Delaware Supreme Court actually reviewed Petitioner's sentence against the standard of applicable *"constitutional and legal constraints."* After applying the standard of review for sentences in criminal

cases found in Administrative Directive Number Seventy-Six (September 15, 1987), the Delaware Supreme Court thus expressly concluded that there was no infirmity, constitutional or otherwise, in the sentence imposed upon Petitioner. *Benge v. State*, order, No. 137, 2004 (November 12, 2004). *That* constitutes exhaustion – the scope of review actually employed by the Delaware Supreme Court on appeal resulted in the question of the constitutionality of Petitioner's sentence being actually considered and decided by that court.

Finally, there is the issue of futility. Futility of further proceedings in state court excuses exhaustion.

Exhaustion is not an absolute bar to *habeas corpus* relief, *Granberry v. Green*, 481 US 129 (1987), even under the provisions of the Anti-Terrorism And Effective Death Penalty Act. See, *Baldwin v. Reeves, supra*. Exhaustion is therefore not mandated in cases such as Petitioner's:

> 'Futility' exists where: a state's highest court has ruled unfavorably on a claim involving facts and issues materially identical to those undergriding a federal habeas petition and there is no plausible reason to believe that a replay will persuade the court to reverse its field...
>
> > *Whitney v. Horn*, 280 F3d 240 (3rd Cir., 2002), at 250, quoting *Lines v. Larkin, supra*.

The Delaware Supreme Court has once considered all conceivable attacks upon the constitutionality of Petitioner's sentence in applying the standards set forth in that court's Administrative Directive Number Seventy-Six. *Benge v. State, supra.* There is now no plausible reason to believe that a replay, even an instant one, will persuade the court to reverse its field, "pick up the penalty flag", take the points off the scoreboard, or otherwise alter its previous judgment. That fact excuses the rationale for Petitioner to be directed to return to state court.

Petitioner's 1st Amendment claim has been exhausted.

## C). The 1st Amendment Claim Is Not Procedurally Barred

As is set forth above, Petitioner's 1st Amendment claim was "fairly presented" to the Delaware courts. The issue of a procedural bar to *habeas corpus* relief does not, therefore, even arise. However, Petitioner is nonetheless constrained to point out that Respondents' Answer has "got it wrong" in any event with respect to procedural bar.

The Answer includes the contention that Petitioner's 1st Amendment claim is procedurally barred under Superior Court Criminal Rule 61(i)(3). That rule provides, as the Answer notes, that any claim not raised in the proceeding leading to conviction is therefore barred absent a showing of cause and prejudice. (Answer, pp. 3-5).

This argument in the Answer overlooks, of course, the provisions of Superior Court Criminal Rule 61(i)(5) which render the bar of Rule 61(i)(3) inapplicable to a:

> colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction.

The purpose of this savings provision is to permit the review at any time of a violation of constitutional rights with respect to a conviction. *Johnson v. State*, 797 A.2d 1206 (Del., 2002). A further savings provision is set forth in Superior Court Criminal Rule 61(i)(4) which provides that matters formerly adjudicated may be reconsidered in the "interests of justice." See, e.g., *Weedon v. State*, 750 A.2d 521 (Del., 2000).

However, the savings provisions set forth in Superior Court Criminal Rule 61 are not the primary point Petitioner

makes herein with respect to the error in the procedural bar argument advanced by Respondents.

Petitioner's 1st Amendment claim presents an issue that is of a purely *sentencing* nature – that is, that the sentence imposed upon Petitioner was enhanced by the sentencing judge solely on the basis that Petitioner had exercised his 1st Amendment right to petition.  As noted above, the factual basis of Petitioner's 1st Amendment claim is not disputed.

Superior Court Criminal Rule 35 provides as follows: "The court may correct an illegal sentence *at any time*..." (emphasis supplied). A motion under Rule 35 is appropriate where a movant seeks relief from a sentence that violates constitutional rights. *Johnson v. State*, 280 A.2d 712 (Del., 1972) *Brittingham v. State*, 705 A.2d 577 (Del., 1998). Rule 35 thus permits the Superior Court to entertain at any time after sentence a claim that a sentence is "illegal" – unconstitutional in Petitioner's case - regardless of the lapse of time or the prior procedural history of the case if the sentence violates constitutional rights. *Gural v. State*, 243 A.2d 692 (Del.,1968); *Evans v. State,* Del. Supr., No. 67, 2004 (November 23, 2004) (a copy of this

unreported opinion is attached to Petitioner's brief on *habeas corpus*).

Simply stated, Petitioner's 1st Amendment claim is not procedurally barred should it be viewed by this Court as unexhausted.

Petitioner must also suggest that the State is well behind the curve with respect to the "miscarriage of justice" exception to procedural bar. Miscarriage of justice is not, as the Respondents suggest in the Answer, limited to cases where a showing is made that "...no reasonable juror would have convicted [a *habeas corpus* petitioner]." {Answer, p. 5, citing *Schlup v. Delo*, 513 US 298 (1995) and *Sawyer v. Whitney*, 505 US 333 (1992)].

Decisions in *United States v. Maybeck*, 23 F.3d 888 (4th Cir., 1984); *Mills v. Jordan*, 979 F.2d 1273 (7th Cir., 1994); *Waring v. Delo*, 7 F.3d 753 (8th Cir., 1993); and *McCoy v. Norris*, 125 F.3d 1186 (8th Cir., 1997) have applied the miscarriage of justice exception as articulated in *Sawyer v. Whitley*, *supra* to non-capital cases where a *habeas corpus* petitioner has asserted that he is "actually innocent" of the *sentence* in fact imposed. That is, *habeas corpus* relief has been recognized to extend to

a prisoner despite procedural bar where the facts presented at sentencing were erroneous and do not support the particular sentence imposed. See, *Cristin v. Brennan*, 281 F.3d 404 (3rd Cir., 2002).    Thus, following a sentencing proceeding that resembles a factual determination of guilt or innocence of the facts supporting the sentence, relief through *habeas corpus* may be available. *Mills v. Jordan, supra*, 979 F.2d, at 1278-79.

The Third Circuit rejected the petitioner's "actual inno-cence of the sentence imposed" claim in *Cristin v. Brennan*, *supra*, but only because the Court found that it had "no basis for concluding that some factual finding at sentencing was erroneous." 281 F.3d, at 422.

*Cristin*, however, stands in contrast to Petitioner's case. The transcript of the March 19, 2004 sentencing proceeding in Superior Court (the full transcript of which appears in the Appendix to Petitioner's opening *habeas corpus* brief, Appen-dix A19 – A22) reflects that the proceeding was conducted very much like a trial on the guilt or innocence of Petitioner with respect to the facts supporting the enhanced sentence – "lack of remorse." In this regard, there is also the fact, uncontested by Respondents, that at the sentencing proceeding

the prosecutor misrepresented the substance of the testimony of a doctor regarding the reliability of the drug screen test performed on the alleged victim and which test was a subject of Petitioner's letter to the Delaware Secretary of Education. (See Petitioner's main brief on *habeas corpus*, pp. 48-51). To a certainty, the sentencing judge would be more inclined to find Petitioner "guilty" of "lack of remorse" (and therefore enhance his sentence) if the judge believed, as the prosecutor falsely stated, that Petitioner's letter to Secretary Woodruff maliciously misrepresented the testimony as to a "false positive" drug screen.

The prosecutor' own misrepresentation of the drug screen testimony influenced the Superior Court sentencing judge and constitutes a "basis for concluding that some factual finding at sentencing was erroneous" such as was found by the Third Circuit to be not present in *Cristin*.

Petitioner is therefore "actually innocent" of the sentence imposed based upon an erroneous finding of "lack of remorse" and this case does, therefore, fall within the "miscarriage of justice" exception to procedural bar. The error at sentencing – deliberately induced by the prosecutor – undermined the

accuracy of the sentencing determination, *Smith v. Murray*, 477 US 527 (1986) resulting in a "fundamentally unjust incarceration." *Engle v. Issac*, 456 US 107 (1982). *Murray v. Carrier*, 477 US 478 (1986)

### D). The Sentencing Judge Impermissibly Used Petitioner's Exercise Of His 1st Amendment Right To Petition To Enhance The Penalty Impose

The Answer does not raise a dispute as to the factual basis of the 1st Amendment claim in the petition in this case – that the sentencing judge enhanced the penalty from probation to three years imprisonment based solely upon the exercise of Petitioner's 1st Amendment right to petition. It is clearly settled federal law that no adverse inference – or enhancement of a penalty -  may be based upon or drawn in a sentencing proceeding as a result of a defendant's exercise of a right protected by the 1st Amendment, *Zant v. Stephens*, 462 US 862 (1983); *Dawson v. Delaware, supra*. The sentence imposed in Superior Court is unconstitutional and is manifestly contrary to the law as declared by the United States Supreme Court. Giving full deference under 28 USC §2254 (e) (1) to the state court's findings of fact, *habeas corpus* relief is nonetheless

warranted in this case on the 1st Amendment claim raised by Petitioner.

## II. Delaware's Sentencing Scheme Violates The 6th Amendment

### A). *Blakely* Issues Do Not Present Questions Of State Law

In the midst of the sea change in sentencing law wrought by *Blakely*, the answer filed in this case stands as a singular legal pleading.

The Delaware Supreme Court, the Delaware Department of Justice advises this Court (Respondents' Answer, pp. 6-9), has declared that the SENTAC sentencing guidelines are "advisory" and "non-binding" as a matter of state law. Respondents thus tell this Court that a federal *habeas corpus* court is *ipso facto* precluded from any inquiry into the applicability of *Blakely* to Delaware sentencing law by the "question of state substantive law" doctrine.

Significantly, despite the cascade of post-*Blakely* decisions from jurisdictions across the country, Respondents have not cited a single post-*Blakely* judicial decision from any jurisdiction to support the "state law issue" bar that they urge on this Court; other than *Apprendi/Ring/Blakely/Booker/Fanfan*, the most recent decision cited in the Answer carries a date of October

10, 2003 – post-*Apprendi*, but fully eight months before the Supreme Court's decision in *Blakely*.

*Blakely* decided a 6th Amendment right to jury trial issue. *Brown v. Allen*, 344 US 443 (1953) settled the question of the deference to be accorded to state court rulings on federal law questions in *habeas corpus* proceedings. State court rulings in this regard are *not* conclusive. The issue for federal *habeas corpus* courts is whether the state court ruling represents a decision contrary to or an unreasonable application of federal law as determined by the Supreme Court. See, e.g., *Brown v. Payton*, __US__ No 03-1039 (March 22, 2005).

If the curious position asserted by the Respondents represented a correct statement of law, the on-going national post-*Blakely* paroxysm in state sentencing law would not be occurring; however, state courts other than Washington (the *Blakely* state) have struggled with and found the *Blakely* principle to invalidate as contrary to the 6th Amendment sentences imposed *or* their *entire* sentencing systems; see, e.g.:

---

**Arizona**
*State v. Brown*, 99 P.3d 15, (Ariz., 2004);   Arizona employs a sentencing system of presumptive sentences with enhancement upon a judicial finding of aggravating circumstance; the Arizona Supreme Court reversed its own court of appeals which had

---

reached an identical conclusion to that of the Washington court in *Blakely* with respect to possession of a weapon, accomplice, and "lying in wait" aggravators. The state Attorney General conceded that Arizona's sentencing law could not withstand *Blakely* because an enhanced sentence could be imposed only after a further judicial finding of fact; slip opinion, pp. 7-9.

## Colorado

*Lopez v. State*, Case No. 04SC150, (Corrected Opinion of May 24, 2005); Colorado's presumptive sentencing system was declared contrary to *Blakely* except where enhancements were based upon the four permissible factors perceived by the Colorado court as allowable under *Apprendi/Blakely*; such as the prior conviction aggravator in this case; the court rejected the prosecution's view that the Colorado system presented a simple "range system" in which a guilty plea or verdict "would immediately authorize the entire range of sentencing."; slip opinion, page 32; the Colorado court stated that under *Blakely,* the "necessary inquiry into the sentencing system is one of functionality, not labeling.'; slip opinion, p. 36; in instances where the application of aggravating factors involves "additional fact-finding" by the trial judge, *Blakely* applies. "Labeling Colorado's system as a "simple range" system ignores this critical point;" slip opinion, page 37.

## Illinois

*People v. Nitz*, __N.E.2d__, Ill. App., 5th Dist., No. 5-98-0657 (November 10, 2004); the sentencing judge determined an enhancement facts – pattern of criminal behavior, position of trust, effect of crime on the victim, and "undue depreciation of offense'" that had not been submitted to the jury; "The increase unquestionably violated the constitutional right to have a jury determine the facts that determine the maximum sentence the law will allow," citing *Apprendi/Ring/Blakely*

## Indiana

*Smylie v. State*, 823 N.E.2d 679 (2005); Indiana's presumptive sentencing system with enhancements based upon judicial findings of the presence of aggravating factors ruled unconstitutional as contrary to *Blakely;* the Indiana Attorney General argued that the Indiana sentencing scheme presumptive sentences were only a "guidepost" for the sentencing judge; the Indiana Supreme Court rejected the State's argument, noting that case law (*Trowbridge v. State*, 717 N.E.2d 138 (Ind., 1999) had established the rule that sentencing judges *must* specify findings of fact and reasons that lead to enhancement of a sentence; slip opinion, pp. 5-6.

## Kansas

*State v. Gould,* 23 P.3d 801 (Kan., 2001) applied *Apprendi* in a sentencing decision that anticipated *Blakely*.

## Louisiana

In *State v. Brown*, No. 03-K-2788 (July 6, 2004), a decision issued 10 working days after *Blakely*, the Louisiana Supreme Court relied upon *Apprendi* to invalidate a sentence that had been enhanced based upon a prior juvenile adjudication.

## Maine

*State v. Schofield,* 876 A.2d 43 (Me., 2005), 2005 ME LEXIS 86 invalidated Maine's presumptive sentencing scheme; the Maine could ruled that a sentencing judge could not apply a "among the most heinous crimes" aggravator without first making findings of fact; this violated the 6th Amendment.

## Minnesota

*Minnesota v. Shattuck,* 689 N.W.2d 785 (Minn., 2005); Minnesota's sentencing guidelines specified presumptive sentences; case law required sentencing judges to set forth reasons for the application of enhancing factors; the Minnesota court rejected the "voluntary guidelines" argument of the state and ruled that

this system violated *Blakely* principles; the maximum sentence permitted by the jury verdict or guilty plea is the presumptive sentence.

## New Jersey

*New Jersey v. Natale*, 878 A.2d 724 (N.J., 2005) and *New Jersey v. Abdullah*, 878 A.2d 746 (N.J., 2005); the New Jersey court invalidated its presumptive sentencing system which had required judicial fact finding to impose enhanced sentences;

## North Carolina

*State v. Allen,* 615 S.E.2d 256 (N.C., 2005), overruled the post-*Apprendi* decision in *State v. Lucas*, 548 S.E.2d 712 (N.C., 2001) which had held, like the State of Washington holding in *Blakely,* that the maximum sentence was the statutory maximum; the North Carolina presumptive sentence system – which permitted departure upon a judicial finding of a aggravating factors ("especially heinous," "atrocious," cruel) – violates *Blakely*; slip opinion at p. 10.

## Oregon

*State v. Dilts,* 103 P.2d 95 (Ore., 2004) ("*Dilts* II"); in *Dilts* II, the Oregon Supreme Court had a second opportunity to consider the impact of *Blakely* on Oregon's sentencing scheme after the United States Supreme Court remanded *State v. Dilts*, 82 P.2d 593 (Ore., 2003) ("*Dilts* I") for reconsideration ; see *Dilts v. Oregon,* 542 US___ (2004); in *Dilts* II, the Oregon Supreme Court reversed its holding in *Dilts* I and found that the defendant's enhanced sentence for assault 3rd° (15-18 months imprisonment enhanced to 36 months) based upon judicial fact finding could not be reconciled with *Blakely*; the Oregon sentencing system was one in which the court was required to impose the presumptive sentence unless the sentencing judge found reasons for an enhancement; the Oregon court found this to be "precisely" the procedure held not to comply with the 6th Amendment in *Blakely*. (slip opinion, pp.5-6).

The *Blakely* decision is not a "state specific" ruling in the sense that the Respondents' Answer urges upon this Court. Justice O'Connor's dissent in the *Blakely* ruling itself served to foretell of its impact in both the states and upon the Federal sentencing systems which in fact later came to pass in the nine post-*Blakely* state court decisions *supra* in which presumptive sentence systems – like that of Delaware – were held to be inconsistent with the 6th Amendment.

Under the rather curious theory advanced in the Answer, each of the state courts above could simply have declared its sentencing system to incorporate "voluntary" or "advisory" guidelines in a pre-*Blakely* sense *as a matter of state law* (as the courts of Indiana and Minnesota were urged to do) and avoid any review of *Blakely's* 6th Amendment application thereto by the federal judiciary. Indeed, the Washington Supreme Court had opined that as a matter of state law the maximum sentence that could be imposed upon Ralph Blakely was the statutory maximum, *not* the presumptive sentence under the Washington "guidelines." In *Blakely*, the Supreme Court disagreed as a matter of 6th Amendment constitutional law.

Although several of the state courts above expressed disquietude in their decisions over the result required under *Blakely* (see, particularly, *e. g.*, the opinions of the Colorado, North Carolina, and Oregon courts), the "state law issue" theory advanced by the State in this proceeding was *not even discussed* in any opinion above or in an dissent thereto as a relevant consideration.

The Indiana Supreme Court was invited by the Attorney General of that state to adopt the same argument that was advanced on Petitioner's direct appeal to the Delaware high court – that is, that the governing sentencing system incorporated "voluntary" guidelines in a "simple range" sentencing system. However, the Indiana court recognized that its caselaw mandated requirement that sentencing judges state "reasons" for enhanced sentences precluded such a conclusion. See, *Smylie v. State, supra*, slip opinion, p. 5; it *could* have adopted its Attorney General's approach to *Blakely*; in fact, that court called that approach a "plausible contention." *Smylie v. State, supra,* slip opinion, p.5. The Indiana court could simply have held that the judicially mandated rule announced in *Trowbridge v. State, supra* of the requirement of a statement of reasons to

enhance a sentence was for purposes of appellate review only, *not* a substantive requirement for sentence enhancement thereby avoiding the *Blakely* controversy altogether. But the Indiana court took an intellectually honest approach to the application of *Blakely* and found that its system of enhancing sentences could not made to square with the 6th Amendment.

Similarly, the Colorado Supreme Court found that the legislative mandate that "reasons" be stated by a sentencing judge in connection with a sentence enhancement to run afoul of *Blakely. Lopez v. People, supra*, slip opinion, p. 29-30. As in Indiana, the Colorado Attorney General argued that Colorado's system was one in which the sentencing judge was free to impose a sentence anywhere within the statutory range. *Id.*, slip opinion, p. 32. Yet, the Colorado court determined that *Apprendi* and *Blakely* required a "functional analysis." If sentence enhancement "requires judicial fact-finding to which the defendant has not stipulated, the rule of Blakely applies and any additional facts used to aggravate the sentence must be Blakely-compliant or Blakely-exempt." *Id.*, slip opinion, p. 32-33. Without identification of aggravating reasons, a Colorado sentencing judge was limited to imposing the presumptive

sentence applicable to the offense. *Id.*, slip opinion, p. 32. The Colorado court rejected the notion that it was free to label its sentencing system as a "simple range" system and therefore avoid entanglement with the 6th Amendment rule of *Blakely*. That court was acutely aware that the Colorado sentencing system was *functionally* similar to that of Arizona, Oregon, and Washington and commented upon the reasoning of the Indiana and Minnesota courts as persuasive. *Id.*, slip opinion, p. 40-43.

The Minnesota court also rejected the "voluntary guide-lines" argument of its Attorney General and held that the "test of *Apprendi* is one of function rather than form." Because the Minnesota "Guideline regime permits the [court] to durationally depart upward from a presumptive sentence after finding aggravating factors not considered by a jury," that system was inconsistent with *Blakely*, *Minnesota v. Shattuck*, *supra*, slip opinion, p.2.

The above courts undertook the 6th Amendment analysis of their sentencing systems – a *functional* analysis - that the Delaware Supreme Court avoided in the only opinion on *Blakely's* applicability to the Delaware system as a whole that it has issued: the opinion in Petitioner's case. In employing

35

such an analysis, the courts of Arizona, Colorado, Illinois, Indiana, Kansas, Louisiana, Maine, Minnesota, New Jersey, North Carolina, and Oregon found it possible to reconcile a pre-sumptive sentence scheme with *Blakely.*

The position of the Delaware Department of Justice in this *habeas corpus* proceeding goes one step beyond the labeling approach of the Delaware court. Despite the effort to frame the argument as one of federalism, Respondents seek, quite simply, to *nullify* the *Blakely* opinion in Delaware: Delaware's Department of Justice chooses to view sentencing law as strictly a matter of state law, so therefore *Blakely* cannot apply. This is an argument more suited to John C. Calhoun's South Carolina of 1832 than to a state attorney general's office in 2006. If the 6th Amendment means what *Blakely* says, Delaware cannot "opt out" of its impact simply by declaring its sentenc-ing laws to be purely state law questions.

If Respondent's had indeed sought support in post-*Blakely* jurisprudence for the non-applicability of *Blakely* to Delaware, what might they have found?

In a widely criticized decision, the Tennessee Supreme Court upheld its sentencing system against a *Blakely* challenge

even though the Tennessee Attorney General conceded that the system violated *Blakely*. In *Tennessee v. Lopez*, 163 S.W.3d. 658 (2005) the Tennessee court held that because that state's statutes did not "*mandate* an increased sentence upon a judge's finding of an enhancement factor," slip opinion, p. 26 (emphasis supplied), the sentencing system was consistent with *Blakely*. No other court has made this distinction and the Tennessee court did not attempt to square its holding with the language in *Blakely* noting that it is immaterial for 6th Amendment purposes "[w}hether the judicially determined facts require a sentence enhancement or merely allow it," *Blakely*, slip opinion, footnote 8.

The Tennessee court used a full page of its opinion in *Lopez* to explain its role in federal Constitutional law jurisprudence and the possibility of future federal court review of its holding "...this Court is not the final arbiter of the United States Constitution...some defendants will chose to raise and pursue Sixth Amendment *Blakely*-type claims in the hope that the United States Supreme Court will ultimately disagree with the determination of the issue, and nothing in this decision

precludes them from doing so." (ellipsis provided). *State v. Lopez, supra,* slip opinion p. 16 – 17.

In *People v. Black*, 35 Cal. Rpt. 4th 1238 (June 20, 2005), the California Supreme Court (over the strong dissent of Justice Kennard) held that California's sentencing system complies with *Blakely* because that system authorizes only the kind of "traditional fact finding engaged in by judges" in sentencing which the court found to be permissible under the *Blakely* decision. California's system mandates a sentence in the middle tier of a three tier system absent further fact finding by the sentencing judge. In the *Black* case, because the defendant had "abused a position of trust'" his sentence was enhanced. Justice Kennard's dissent points out that sentences above the middle tier may be imposed only upon a judicial finding as to the "seriousness" of an offense. (In *New Jersey v. Natale, supra*, the New Jersey Supreme Court expressly disagreed with the holding in *Black.)*

In Michigan's sentencing scheme, a defendant is sentenced to a minimum and a maximum term. The maximum is not determined by the sentencing judge but is fixed by statute. The minimum is based on guideline ranges. A footnote in

*Michigan v. Claypool*, 684 N.W.2d 278 (Mich., July 22, 2004) suggest that this system does not violate the *Blakely* principle. In a concurring opinion, Chief Judge Corrigan disagreed as has a subsequent decision in an intermediate appellate court. *People v. Holtschlag*, 2004 Mich. LEXIS 2751 (Mich. App., October 19, 2004) (the Michigan statute "appears on its face" to be inconsistent with *Blakely).*

The sentencing system in Hawaii involves the sentencing judge fixing a "floor and a ceiling" with the parole board determining the actual date of release of a prisoner. The Supreme Court of Hawaii found that the lack of presumptive sentences in the Hawaii system made its scheme an "indeterminate" one to which *Blakely* did not apply. *State v. Rivera*, 102 P.3d 1044 (Ha., 2004).

Finally, the Supreme Court of Idaho found itself confronted with applying *Blakely* to a sentencing system in which the governing statute provided that probation was to be the presumptive sentence for all offenses unless the sentencing judge found that "imprisonment is appropriate for protection of the public." The Idaho court found that the fact that the legislative history of that enactment evidenced the intent of the

legislature to give sentencing judges "full discretion" in imposing sentence saved its system from the reach of *Blakely*. *Idaho v. Stover*, No. 30313 (Id., January 6, 2005), slip opinion, pp. 5,6; 8.

The position of Respondents that this Court may not review Delaware's sentencing system as a matter of federalism finds no support in cases from other states. That position is also undermined by a decision of the Delaware Supreme Court issued after the filing of Respondents' Answer.

In *Capano v. State*, __A,2d__, No. 131, 2005 (Del., January 10, 2005), the Delaware Supreme Court reversed its finding as to the death penalty previously affirmed in *Capano v. State*, 781 A.2d 556 (Del., 2001) ("*Capano* I"). In *Capano* I, a post-*Apprendi* decision, the Delaware Court held that a conviction without more exposes a defendant to the death penalty in a capital case and rejected as "too formalistic" the notion that *Apprendi* required aggravating factors go be found by a unanimous jury. Following *Ring v. Arizona*, 536 US 584 (2002), the second *Capano* decision found that the 6th Amendment principle of *Ring* invalidated an 11 - 1 jury finding of an aggravating factor. The dynamic of the 6th Amendment in

sentencing was recognized by the Delaware court as it did not hold that its sentencing system was purely a question of state law nor somehow exempt from *Apprendi* or *Ring*.

The real argument to be made against Petitioner's 6th Amendment claim, if indeed there is one, is that the Delaware sentencing system is like those systems where a judge is afforded complete discretion to impose a sentence anywhere within the permitted statutory range. However, that is in fact *not* Delaware's system; Delaware employs presumptive sentences beyond which Petitioner's sentencing judge could venture only after finding "reasons" - making findings of fact that are legislatively required for upward departures *but not all* sentences - of matters not submitted to a jury.

With the exception of Tennessee and California, no state with a presumptive sentence system has found its system to be compatible with *Blakely*. No state has held that *Blakely* does not reach its presumptive sentence system because sentencing is strictly a "matter of state law." In circumstances where many of the courts confronted with *Blakely* have looked to the jurisprudence of other states as they grapple with the meaning of *Blakely*, *none* of the state court decisions decided after the

November 12, 2004 date of the Delaware opinion in *Benge v. State, supra* has even *cited* that case, let alone discussed it. The 2005 decisions above of the Indiana and Minnesota courts were rendered in proceedings in which the prosecution asked those courts to declare the governing guidelines to be "voluntary," as Delaware's court had done; still, the Delaware court's opinion was not used as a beacon from a safe harbor in a stormy sea.

*Blakely* sets out a fundamental, bright line rule as to the scope and operation of the 6th Amendment right to jury trial in a sentencing context. Its application does not hinge upon the label applied to any given sentencing scheme by a state supreme court. *Function* is the *Blakely* point of departure. The position of the State in this case reflects a fundamental misunderstanding of both the impact of the *Blakely* decision and the operation of the "state question" bar in *habeas corpus.*

The Delaware Supreme Court has ruled in this case that the maximum sentence under a Delaware sentencing statute is the maximum penalty that may be imposed for an offense. That same court has also ruled that a Delaware sentencing judge must comply with the legislative mandate to state "reasons"

before that judge may impose an enhanced penalty. *Benge v. State, supra.* This is precisely the *Blakely* problem.

In its analysis of *Blakely*, the Delaware Supreme Court reasoned that the Supreme Court had found Washington's sentencing scheme to require trial courts "...to find 'substantial and compelling reasons' before imposing an 'exceptional sentence' (one that exceeds the standard range), and provided appellate review of the record in support of the trial court's findings." *Benge v. State*, supra, slip opinion p.2.

The Delaware court then held that given the "voluntary" and "non-binding" nature of Delaware's SENTAC guidelines, "...the trial court must explain its reasons for doing so, but it is authorized to exceed the SENTAC guidelines without making any factual findings beyond those reflected in the jury verdict." *Id.*

The Delaware court's holding that the SENTAC guidelines are "voluntary" and "non-binding" as a matter of state law is *not* fatal Petitioner's *Blakely* claim because that claim is grounded on the operation of 11 Del. C. §4204(m) – the Delaware statute requiring that reasons be stated for sentences departing from presumptive sentences. Nor is the limited

scope of appellate review afforded in Delaware to sentences in criminal cases dispositive of the *Blakely* claim, as *Blakely* is a 6th Amendment jury trial case.

However, the Delaware's court's holding that under 11 Del. C. §4204(m), a trial court must explain its reasons for departure from the SENTAC presumptive sentences (but *not* for sentences within the presumptive range) is fatal in a *Blakely* sense to a sentence where, as in Petitioner's case, the "reasons" for an enhanced sentence consist of facts not tried to a jury. The fact that Delaware's high court has, like that of California, declared that "we have always done it this way " does not alter the outcome mandated by *Blakely* in this case.

Petitioner anticipates that this Court will give due deference to the holding applying *Blakely* of the Delaware Supreme Court in *Benge v. State, supra*. Each of the 82 words employed by that court in its analysis of *Blakely* and each of the 53 words expended in its determination that *Blakely* "does not impact" Delaware should be afforded by this Court the weight properly due the same.[2] However, the ultimate conclusion remains inescapable post-*Blakely*: the Delaware Supreme

Court's ruling as to the functioning of its sentencing system is indistinguishable from made by the Washington court prior to review by the Supreme Court of the "state law" rulings in *Blakely*. If the application of Washington sentencing laws presented a 6th Amendment issue in *Blakely*, so do those of Delaware in this case.

The State's position as articulated in this case comes down to *Schmitz v. Carroll*, No. 02-1527(GMS) (D.Del., October 7, 2003). This Court is in a unique position to declare whether *Schmitz* reflected prescience of the application of the 6th Amendment to Delaware's sentencing system.

Does the author of *Schmitz* agree with the State that the *Schmitz* decision determined (or, more properly *predetermined*) that as a matter of constitutional law, the 6th Amendment right to jury trial has no place in Delaware's sentencing system? Petitioner finds no reference to *Apprendi* in the *Schmitz* opinion; given that fact, Petitioner believes that it is unlikely that the petitioner in *Schmitz* raised an *Apprendi*-like claim. Did *Schmitz* foreclose application of *Blakely* to Delaware? Perhaps the State has read too much into *Schmitz*.

---

[2] The Delaware Supreme Court issued its opinion in *Benge v. State, supra*, the initial Blakely ruling in

## C. The Enhancement Of Petitioner's Sentence Was Impermissible Under The 6th Amendment

It is undisputed in this case that Petitioner's sentencing judge found as a fact that Petitioner's letter to the Delaware Secretary of Education evidenced "lack of remorse" (March 19, 2004 sentencing proceeding transcript p. 15, Appendix to Petitioner's habeas corpus brief, A22). The Superior Court sentencing order of March 19, 2004 (Appendix A34-A41) also cited the aggravating factor of the "need for correctional treatment."

It is also undisputed that the facts found by the sentencing judge were not charged in the indictment, admitted by the Petitioner in his guilty plea or at sentencing, nor were such facts tried to a jury.

As is set forth in the opening brief in this *habeas corpus* case, the Delaware sentencing scheme, as applied to Petitioner, presents the same structural problem present in *Blakely*: facts –"reasons" – in addition to those constituting the offenses to which Petitioner entered a plea of guilty were necessary to the enhancement of the sentence imposed on Petitioner in Superior

Delaware, without the benefit of oral argument in that case.

Court. *Benge v. State, supra.*   The sentence imposed violated he 6th Amendment right to trial by jury.

## CONCLUSION

## A). Petitioner Is Entitled To Relief Under 28 U.S.C. §2254

In cases where, as here, a claim of denial of a constitutional right has been exhausted and is not procedurally barred, a federal court may grant *habeas corpus* relief on the merits of the claim when the state court's adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in   light of the evidence presented in the State court proceeding. 28 U.S.C.§ 2254 (d)(1) and (2); see, *Jacobs v. Horn*, 395 F.3d 92 (3rd Cir., 2005);    *Marshall v, Hendricks*, 307 F.2d 36 (3rd Cir., 2002); *Everett v. Beard*, 290 F.3d 500 (3rd Cir., 2002); *Gattis v. Snyder,* 278 F.3d 222 (3rd Cir., 2002); *Appel v. Horn*, 250 F.3d 203 (3rd Cir., 2001); *Williams v. Taylor,* 529 US 362 (2000).

In this case, the record reflects that the sentence imposed upon Petitioner for unlawful electronic interception – three years imprisonment – violates both Petitioner's 1st

Amendment right to petition and his 6th Amendment right to trial by jury.

Accordingly, this Court should grant Petitioner's petition for *habeas corpus* relief under 28 U.S.C. §2254 conditioned upon resentencing by the Superior Court of the State of Delaware within such time and subject to such conditions as the Court shall fix.

## B). Amendment Of Petition / Stay And Abeyance

If this Court is constrained to dismiss Petitioner's §2254 petition because of lack of exhaustion of the 1st Amendment claim, Petitioner may of right amend the petition to present only the exhausted *Blakely* claim to this Court. *Rose v. Lundy*, 455 US 509 (1982); *Ross v. Petsock*, 868 F.2d 639 (3rd Cir., 1989); *Swanger v. Zimmerman*, 750 F.2d 291 (3rd Cir., 1984).

In addition, stay and abeyance of a *habeas corpus* is appropriate where there is "good cause" for failure to exhaust a claim: where, for example the claim is potentially meritorious and there is no indication of dilatory tactics. *Rhines v. Weber*, 544 US—(2005). Petitioner's 1st Amendment claim cannot be dismissed as completely without merit and Petitioner has

49

nothing to gain and much to lose by any delay and the docket of this case has reflected that fact.

Petitioner expressly requests that the Court condition any dismissal of Petitioner's petition on procedural grounds upon providing Petitioner with the option to be exercised within thirty days to either amend the petition to delete the 1st Amendment claim or to move for a stay and abeyance of this action pending exhaustion of the 1st Amendment claim in state court.

## C). Certificate Of Appealibility

Should this Court rule that Petitioner's §2254 petition must be dismissed in its entirety, Petitioner requests that the Court issue a certificate of appealibility. Petitioner has made the requisite showing under *Slack v. McDaniel*, 529 US 473 (2000): that "reasonable jurists" could *debate* whether the claims in the petition should have been resolved in a different manner *or* that the issues presented in the petition were "adequate to deserve encouragement to proceed further." Dismissal of a *habeas corpus* petition on procedural grounds does not preclude the issuance of a certificate of appealibility, *Id.*, 529

US, at 484-485. *United States v. Cepero,* 224 F.2d 256 (3rd Cir., 2000).

Date: November 2, 2006

John H. Benge, Jr.
P.O. Box 500
Georgetown, DE 19947

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that two copies of the attached brief were

served on NOVEMBER 2 , 2006 by depositing the same in the

prisoner mail dropbox at Sussex Correctional Institution, Georgetown,

Delaware, first class mail, postage prepaid, and addressed to:

> Thomas E. Brown, Esq.
> Deputy Attorney General
> Department of Justice
> 820 North French Street
> Wilmington, DE 19801

I hereby certify under penalty of the laws of the United States of America
that the foregoing is true and correct.

Executed on NOVEMBER 2 , 2006