**John H. Benge, Jr.**
Sussex Correctional Institution
P.O. Box 500
Georgetown, DE 19947
February 1st, 2007

The Honorable Gregory M. Sleet
Associate Judge, United States District Court
United States Courthouse
844 North King Street, Lockbox 18
Wilmington, DE 19801-3570



Re: Pending *Habeas Corpus* Cases
*Benge v. Kearney*, 05-0550(GMS)
*Benge v. Kearney*, 05-0551(GMS)

Dear Judge Sleet:

I write pursuant to Local Rule 7.1.2 (c) to – in the words of that rule – "call to the Court's attention" and "briefly discuss" a pertinent case decided after the filing of all submissions to the Court by the parties to the above cases. The decision is *Cunningham v. California*, __US__, No. 05-655 (January 22, 2007). While I am aware that Your Honor is well informed as to the Supreme Court's docket, this letter sets forth Petitioner's view of the significance of *Cunningham* to the *Blakely v. Washington* sentencing issue before this Court.

In *Cunningham*, Justice Ginsburg [a swing vote in the second of the two opinions in *United States v. Booker*, 543 US 220 (2005)], wrote for a 6-3 majority that California's Determinate Sentencing Law (the "DSL") "...cannot withstand measurement against our Sixth Amendment precedent..." "...because the DSL allocates to the judges sole authority to find facts permitting the imposition of an upper term sentence." *Cunningham*, slip opinion, pp. 21; 20.

Cunningham *Vitiates the Respondents'*
 *"State Substantive Law" Argument*

Whatever circumstance may have obtained in the past, Deputy Attorney General Brown's first argument on behalf of the respondents in the above *habeas corpus* cases – the argument that Delaware's sentencing regime is a matter of state substantive law not reviewable by a federal court (Respondents' Answer, No. 05-0550, p.11-12; 05-0551, p. 7) – is, after *Cunningham*, not tenable as a legal argument. The unbroken string of *Apprendi, Ring,* and *Blakely* – all cited by Justice Ginsburg – and now *Cunnigham* make it clear that 6th Amendment jury trial right

The Honorable Gregory M. Sleet
January 31, 2007
Page 2

jurisprudence is at present largely driven by federal review of state sentencing systems. Whether or not state courts question the clarity of the *Apprendi/Blakely* "line" [*Cunningham*, slip opinion, p. 18; *People v. Black*, 113 P3d 534 (2005), at 547] or condemn the *Apprendi* approach as "too formalistic" [*Capano v. State*, 781 A.2d 556 (Del., 2001)], the *Apprendi/Blakely* cases dramatically impact state sentencing schemes.

Cunningham's *6th Amendment*
*Analysis of the California DSL*

The features of the California DSL that *Cunningham* identifies as relevant to a 6th Amendment analysis are set forth in both *Cunningham* and *People v. Black, supra*, the latter being the case in which the DSL was sustained by the California Supreme Court against a *Blakely* claim.

The DSL, and the California court rules "guiding the sentencing judge's decision" as to the sentence to be imposed, *Cunningham*, slip opinion p. 5 –

- replace and reforme a previously utilized indeterminate sentencing regime; *Cunningham*, slip opinion, p. 3

- provide a nonexhaustive list of "aggravating circumstances" and permit a judge to consider any "additional criteria" reasonably related to the exercise of the judge's discretion in sentencing; *Cunningham*, slip opinion, p.5.

- require a sentencing judge to set forth a statement of the facts constituting aggravating or mitigating circumstances; *Cunningham*, slip opinion, footnote 9, p.6;

- require the sentencing judge to impose the middle of three sentencing tiers (lower, middle, upper) "unless imposition of the upper or lower tier is justified by circumstances in aggravation or mitigation;" *Cunningham*, p. 5; and

- provide for an appellate review standard of "reasonableness of the sentence;" *Cunningham*, slip opinion, p. 20.

In *Black*, the California Supreme Court held that the DSL's upper term was the maximum sentence permitted under *Blakely*. The California court found that in "operation and effect," the DSL simply permits a

The Honorable Gregory M. Sleet
January 31, 2007
Page 3

sentencing judge to engage in "traditional" judicial factfinding incident to sentencing. *Cunningham,* slip opinion, p. 16. The *Black* court found the "reasonableness" constraint of the DSL[1] to function comparably to the "reasonableness of sentence" requirement of *Booker* and therefore to preserve the DSL against a *Blakely*-based attack. *Cunningham,* slip opinion, p. 20.

*Cunningham* found the California court's "attempt to rescue the DSL" (slip opinion, p. 20) to be unpersuasive. Because California's legislature has adopted a sentencing triad system, the sentencing judge in *Cunningham* had no discretion to select any sentence between the low and the high sentences permitted; rather, "his instruction" was to select the middle term unless circumstances in aggravation were present. *Cunningham,* slip opinion, p. 19.

*The California Court's Holding In*
People v. Black *Did Not Foreclose*
*Federal Review Of the DSL*

Justice Ginsberg in *Cunningham* points out in very plain language that federal review of a state's sentencing system is not precluded by a state court's finding that its system is *Blakely* compliant or that its system is comparable to that of *Booker.*

Only in cases in which the Supreme Court's 6th Amendment precedents are properly construed is a state court's "construction" of its law entitled to deference Cunningham, slip opinion p. 21, footnote 16. *Cf., Browne v. Carroll*, No. 04-870(JJF), Farnan, District Judge (January 24, 2006), slip opinion, p.30.

*Delaware's Sentencing Laws Are*
*Comparable To The California DSL*
*Not A* Booker *System*

The real question fro the Court in this case is, Petitioner submits, whether post-*Cunningham* the Delaware presumptive sentencing scheme can withstand scrutiny under the *Apprendi* "bright line" rule, given the intensification of that line in Justice Ginsberg's opinion. Because The

---

[1] The reasonableness constraint was central to the contention that the DSL was comparable to *Booker*; on *certiorari,* the respondent's brief stated the issue before the Supreme Court as follows: "...whether California's authorization of an upper term based on the jury verdict alone, *subject to the requirement that the upper term be reasonable,* is *Blakely*-compliant after *Booker.* Respondent's Brief, No.05-6556, p. i. (emphasis supplied).

The Honorable Gregory M. Sleet
January 31, 2007
Page 4

Delaware's system is comparable to that of California, to construe the Delaware scheme other than as the DSL was construed in *Cunningham* raises a grave constitutional doubt, the genesis of the jury trial issue in sentencing cases. See *Cunningham*, slip opinion, p. 8.

As in the DSL, Delaware's sentencing laws –

- reflect a six year legislative effort to reform sentencing with a determinate sentencing regime to replace an indeterminate scheme; the Delaware General Assembly's acts [contained in the Appendix to Petitioner's Brief, 05-0550(GMS), A222-A233] include achieving

- the goals of sentencing commission generated guidelines to ensure "certainty and consistency" of punishment and the defining of sentence enhancing conditions. 64 Del. Laws, ch 402;

- provide by commission (rather than court rule as in the DSL) a non-exhaustive list of "aggravating circumstances" that permit a judge to enhance a sentence;

- require a sentencing judge to impose the applicable presumptive sentence unless there are "reasons" to depart therefrom; and require a sentencing judge to set forth reasons when a sentence is imposed that is inconsistent with the presumptive sentences established by the Delaware Sentencing Accountability Commission; 11 *Del. C.* §4204(m); *Benge v. State*, Del Supr., No. 137, 2004 (November 12, 2004); *Fuller v. State*, No. 38, 2004 (October 29, 2004);

- allocates to the sentencing judge the sole authority to make findings of fact in sentencing and to determine whether there are factors warranting sentence enhancement; see Superior Court Rules of Criminal Procedure, Rule 32 (c) (3); but

- unlike the DSL does not constrain sentences by reasonableness and limits appellate review to "illegal sentences;" see, *Fuller v. State, supra.*

The Honorable Gregory M. Sleet
January 31, 2007
Page 5

       Benge v. State *Does Not*
       *Foreclose Review on* Habeas Corpus

       The course steered by the Delaware Supreme Court under the post-*Apprendi* firmament of 6th Amendment stars has been an unsteady one at best and rudderless at worst.

       The court held in *Capano v. State*, 781 A.2d 556 (Del., 2001) that *Apprendi* "does not bear on any issue in this case" 781 A.2d, at 671. The court reversed itself in an *en banc* opinion five years later following *Ring v. Arizona*. See *Capano v. State*, No. 131, 2005 (January 10, 2006).

       The Delaware court held, while this case was pending, that Delaware's sentencing scheme is an "indeterminate" one and that it is now "well settled" that *Blakely* does not impact Delaware. See *Fuller v. State, supra*; and *Wilson v. State*, No. 549, 2005 (May 9, 2006), slip opinion, p. 4 footnote 17.

       Most significantly, the Delaware Court has relied exclusively upon labels in its cases, not 6th Amendment analysis, in applying *Apprendi* and it progeny. The court found the Delaware "sentencing guidelines" to be "voluntary and non-binding" without an explanation of how the "presumptive sentences" provisions of 11 Del. C §4204(m) operates within the framework it postulated. *Apprendi/Blakely* leave no room for "labels" to be controlling – and lack of clarity in a discussion of sentencing schemes can lead to significant confusion. For example, at the oral argument in *Cunningham* on October 11, 2006, Chief Justice Roberts made this remark:

> Under California [the guidelines are] advisory anyway. I mean, even if the judge makes the necessary finding to get up into the higher tier, he doesn't have to impose the higher sentence, he can impose the lower one.

                                               Transcript, No. 05-6551, p. 8

       What the Chief Justice meant, of course, is that under the DSL, a greater sentence was not *mandated* simply because an aggravating factor was found to be present – a point made in *Blakely* as well. But the Delaware Supreme Court has not held that the *"presumptive sentences"* as used in 11 Del. C. §4204(m) are only voluntary and non-binding. At least one court has held its presumptive sentence scheme not subject to *Blakely* on exactly the point that its system did not mandate the higher

sentence. See, *Tennessee v. Lopez*, 163 S.E. 2d 658 ( Ten., 2005) – and subjected itself to much criticism. See the reference to "*Blakely* denial" states in Chanenson and Wilhelm, *Evolution and Denial: State Sentencing after* Blakely *and* Booker, 18 *Federal Sentencing Reporter* (October, 2005).

As Justice Ginsberg notes in *Cunningham*, broad discretion in sentencing does not insulate a sentencing system from the 6th Amendment. Neither should a dearth of relevant state court caselaw nor the lack of a searching analysis of the operation of a state sentencing scheme.

The Delaware system includes a legislative command to a judge to impose the SENTAC presumptive sentence unless there are reasons not to do so and the judge puts those reasons on the record. Such a system operates like the California DSL – not like a *Booker* system, where the "guidelines" have a relative unimportance: "The fact is that when a court sentences post-*Booker* and views all of the §3553(a) factors, the guidelines range is simply one factor to it to consider in arriving at a sentence." *United States v. Colon*, No. 05-3684 (3rd Cir., January 29, 2007). The Delaware legislature has directed its judges otherwise.

Simply sated, Mr. Brown has no presumptive sentence system to point to post-*Cunningham* as *not* crossing over the *Apprendi-Blakely* bright line rule.

I am mindful that *Cunningham* was decided over a week ago and I therefore apologize to the Court for the delay in this letter. News, however, travels slowly to Sussex County this time of year – the covered wagons tend to break down more frequently in cold weather – and the resources here are limited in the extreme.

Respectfully Submitted,

John H. Benge, Jr.

cc: Clerk of the Court
    Thomas E. Brown, Esq.

USPS Express Mail label

US POSTAGE PAID GEORGETOWN, DE 19947 FEB 01 '07 AMOUNT $14.40 0003488108

EB 140128294 US

ORIGIN (POSTAL SERVICE USE ONLY)
PO ZIP Code: 19947
Date Accepted: 02 01 07
Time Accepted: 14:47 PM
Flat Rate or Weight: 2.5 ozs.

Day of Delivery: Next
Scheduled Date of Delivery: Month 02 Day 02
Scheduled Time of Delivery: Noon
Postage: $14.40
Total Postage & Fees: $14.40

FROM: John H. Benge, Jr.
S.C.I.
P.O. Box 500
Georgetown, DE. 19947

TO: Honorable Gregory Sleet
Associate Judge, U.S. District Ct.
U.S. Courthouse
844 N. King St., Lock Box 18
Wilmington, DE. 19801-3570

ZIP+4: 19801 + 3570