IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN H. BENGE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. A. No. 05-551-GMS |
| | ) |
| MICHAEL DELOY, Warden, and | ) |
| JOSEPH J. BIDEN, III, Attorney General | ) |
| of the State of Delaware, | ) |
| | ) |
| Respondents.[1] | ) |

John H. Benge. *Pro se* petitioner.

Thomas E. Brown, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for respondents.

**MEMORANDUM OPINION**

July 2, 2007
Wilmington, Delaware



---

[1] Attorney General Joseph R. Biden, III assumed office in January, 2007, replacing former Attorney General Carl C. Danberg, an original party to this case. *See* Fed. R. Civ. P. 25(d)(1).


Sleet, District Judge

## I. INTRODUCTION

Petitioner John H. Benge ("Benge") is an inmate at the Sussex Correctional Center in Georgetown, Delaware. Benge filed the pending petition for a writ of habeas corpus ("petition") pursuant to 28 U.S.C. § 2254. (D.I. 1.) For the reasons that follow, the court will dismiss his petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On January 13, 2004, after admitting that he entered his estranged wife's former home and installed a recording device to eavesdrop on her, Benge pled guilty in the Delaware Superior Court to two counts of third degree burglary, three counts of unlawful interception of oral communications (wiretapping), and one count of attempted wiretapping. *Benge v. State*, 862 A.2d 385 (Table), 2004 WL 2743431 (Del. Nov. 12, 2004). Benge's sentencing hearing for his guilty plea took place on March 19, 2004.[2] *Id.* During that hearing, the judge found that Benge lacked remorse because, among other matters, Benge sent a letter in February 2004 containing derogatory comments about his ex-wife's boyfriend to the boyfriend's employer. (D.I. 19, State's Ans. Br. in *Benge v. State*, No.137,2004, at 3; D.I. 19, Sentencing Transcript, March 19, 2004) The judge then imposed the following sentences: (1) five years in prison, suspended after three years for probation, on one of the wiretapping charges; (2) one year in prison, suspended for one year of probation, for each of the other three wiretapping charges; and (3) three years in prison, suspended for one year of probation, for each of the two burglary charges. The

---

[2]On January 20, 2004, Benge was sentenced on other charges involving his ex-wife and her boyfriend.

1

sentencing judge acknowledged that the sentence exceeded the sentence recommended by Delaware's sentencing guidelines.[3] *Id.*

Benge filed a direct appeal, and the Delaware Supreme Court affirmed Benge's convictions and sentences. *Benge v. State*, 862 A.2d 385 (Table), 2004 WL 2743431 (Del. Nov. 12, 2004). Benge did not pursue any state post-conviction remedies.

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford*, 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b);

---

[3] Both Benge and the State assert that the only sentence challenged in the pending habeas application is the five year sentence imposed for one of the wiretapping charges.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "'Fair presentation' of a claim means that the petitioner 'must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'" *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004)(citing *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane,* 489 U.S.

3

288, 297-98 (1989). Nevertheless, such unexhausted claims are procedurally defaulted. *Lines,* 208 F.3d at 160. Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### C. Standard of Review Under AEDPA

If a federal court determines that a claim is not procedurally defaulted and the state court adjudicated the federal claim on the merits, the court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim is considered to have been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d)(1) if the state court "decision finally resolv[es] the parties claims, with *res judicata* effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), *reversed on other grounds by Rompilla v. Beard*, 545 U.S. 1086 (2005).

When reviewing a § 2254 petition, a federal court must presume the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

5

## IV. DISCUSSION

Benge asserts the following two grounds for relief in his petition: (1) pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004), the five-year sentence imposed for one of the wiretapping convictions violates his Sixth Amendment rights; and (2) the five-year sentence violates his First Amendment right to "petition for redress of a grievance." (D.I. 1; D.I. 3.)

### A. *Blakely* claim

In *Blakely v. Washington*, the Supreme Court reiterated its prior holding in *Apprendi v. New Jersey* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely*, 542 U.S. at 303 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). The Supreme Court in *Blakely* clarified that, with respect to the State of Washington's mandatory determinate sentencing guidelines, the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303. In reaching this holding, the Supreme Court expressly recognized the constitutionality of indeterminate sentencing schemes:

> Justice O'Connor argues that, because determinate-sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a

6

> legal *right* to a lesser sentence - and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says a judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10-year sentence - and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.

*Blakely*, 542 U.S. at 308-09.

In his first claim, Benge contends that this five-year sentence imposed for one of the wiretapping convictions violates *Blakely* because the sentence exceeds the maximum penalty permitted under Delaware's Sentencing Guidelines ("SENTAC"). More specifically, Benge asserts that the recommended sentence under SENTAC was one year of probation, and therefore, his sentence violates the Sixth Amendment because it was enhanced to five years on the basis of facts (his lack of remorse) that were neither admitted by Benge nor proven to a jury beyond a reasonable doubt. The Delaware Supreme Court denied Benge's *Blakely* claim as meritless after holding that "*Blakely* does not impact Delaware's sentencing scheme because the SENTAC guidelines are voluntary and non-binding." *Benge*, 2004 WL 2743431, at *2. Thus, the court can only grant habeas relief if the state supreme court's decision was either contrary to, or an unreasonable application of, *Blakely*.

*Blakely* involved the determinate sentencing scheme of the State of Washington, where the sentencing guidelines required the trial judge to impose the recommended or presumptive sentence unless he provided a reason for imposing a different sentence. *Id.* In contrast, Delaware's sentencing guidelines ("SENTAC") are non-binding and voluntary, the maximum sentence is set by the statute of conviction, not by SENTAC, and a judge is authorized to impose the maximum statutory penalty, in excess of the SENTAC sentence, without making additional

findings of fact.[4] *Ward v. State*, 567 A.2d 1296, 1297 (Del. 1989); *Fuller v. State*, 860 A.2d 324 (Del. 2004); *Siple v. State*, 701 A.2d 79, 83 (Del. 1997). Accordingly, the Delaware Supreme Court's determination that *Blakely* did not invalidate Delaware's advisory and voluntary sentencing scheme was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.[5]

Additionally, even if *Blakely* applies to Delaware's sentencing scheme, there is no Sixth Amendment violation in Benge's case. Pursuant to Delaware state law, the wiretapping charge at issue is designated as a Class E felony, and the sentence for such a felony may include up to five

---

[4]Although the recommended sentences under SENTAC are titled "presumptive" sentences, Delaware precedent clearly establishes the rule that SENTAC sentencing standards are voluntary and non-binding, and a "sentence exceeding SENTAC guidelines but within the maximum allowed by statute does not give rise to a legal or constitutional right of appeal." *Gaines v. State*, 571 A.2d 756, 767 (Del. 1990).

[5]The court's conclusion is supported by the United States Supreme Court's decisions in *United States v. Booker* and *Cunningham v. California*, which demonstrate *Blakely*'s effect on different sentencing schemes. *United States v. Booker*, 543 U.S. 220 (2005); *Cunningham v. California*, 127 S.Ct. 856, 862-63, 866 (2007). The *Booker* Court held that the use of the Federal Sentencing Guidelines would not implicate the Sixth Amendment if they "could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts," and the Supreme Court then excised the mandatory provisions of the Guidelines. *United States v. Booker*, 543 U.S. 220 (2005). In *Cunningham*, the Supreme Court held that California's sentencing scheme violated *Blakely* because California's sentencing scheme did not resemble the United States Sentencing Guidelines in effect after *Booker*. The *Cunningham* Court explained that a California judge was *required* to apply the middle range of sentences under California's guidelines, California's Rules constantly referred to the aggravating circumstances permitting a judge to impose a sentence higher than the presumptive sentence as "facts," and the California state courts typically referred to a court's conclusion regarding aggravating circumstances as "factfinding." *Id.* at 862-63, 866 (emphasis added). In contrast, Delaware's sentencing guidelines mirror the United States Sentencing Guidelines in effect after *Blakely*, because they are completely voluntary and non-binding; SENTAC does not mandate a particular sentence, but rather, it recommends sentences, and judges are authorized to impose the maximum statutory sentence without additional factfinding.

8

years imprisonment.[6] *See* Del. Code Ann. tit. 11, §§ 2402(e), 4204(b)(5). Even though the sentencing judge sentenced Benge to five years after finding that Benge lacked remorse, the judge could have imposed the five year sentence solely on the basis of Benge's guilty plea without finding any additional facts. *Siple*, 701 A.2d at 83 ("there is no constitutional or statutory right in Delaware to appeal a criminal punishment on the sole basis that it deviates from the SENTAC sentencing guidelines."); *see cf. Blakely*, 542 U.S. at 304 (explaining that "[t]he judge in this case could not have imposed the exceptional 90-month sentence solely on the basis of the facts admitted in the guilty plea. . . [h]ad [he done so], he would have been reversed."). Thus, in these circumstances, the court will deny Benge's first claim because there is no Sixth Amendment violation under *Blakely*.

### B. Claim that Benge was not afforded the right to petition for redress in violation of the First Amendment

In his second claim, Benge contends that the sentencing judge violated his First Amendment right to petition a public official to redress a grievance by using the letter he sent to the employer of his ex-wife's boyfriend (i.e., an official at the Delaware Department of Education) as justification for imposing the 5 year sentence on one of the wiretapping convictions. According to Benge, the letter he sent to the official at Delaware's Department of Education regarding his ex-wife's boyfriend constituted a "petition for redress" protected by the First Amendment.

The State properly asserts that Benge did not exhaust state remedies because he did not

---

[6]Neither the State nor Benge have provided the court with a copy of the plea agreement. Nevertheless, Benge does not challenge the validity of the plea agreement or his conviction on the wiretapping charge; Benge only challenges the 5 year sentence imposed for the one wiretapping charge. (D.I. 3 at 1; D.I. 4, at A-47, A-6).

present claim two to the Delaware Supreme Court during his direct appeal.[7] At this juncture, any attempt by Benge to return to state court for review of the First Amendment issue would be barred by Delaware Superior Court Rule 61(i)(3). *See McLaughlin v. Carroll,* 270 F. Supp. 2d 490, 512-13 (D. Del. 2003). Therefore, claim two is procedurally defaulted, and the court cannot review its merits absent a showing of cause for the default, and prejudice resulting therefrom, or that a miscarriage of justice will occur in the absence of such review.

Benge does not provide cause sufficient to excuse his procedural default of claim two.[8] In the absence of cause, the court will not address the issue of prejudice. Benge also has not demonstrated that a fundamental miscarriage of justice will result from failure to review this claim. Accordingly, the court is procedurally barred from reviewing Benge's First Amendment claim.

### C. Motion for a determination under Rule 8, foll. 28 U.S.C. § 2254 and for summary judgment

During the pendency of this proceeding, Benge filed a motion for the court to determine that no evidentiary is required under Rule 8(a) of the Rules Governing Habeas Corpus Cases Under Section 2254, 28 U.S.C. *foll.* § 2254. (D.I. 37.) Considering Benge's concession that there is no genuine factual issue with respect to his habeas claims, the court agrees that an

---

[7]Benge contends that he did satisfy the "fair presentation" requirement of the exhaustion doctrine in his direct appeal. However, Benge's opening brief on direct appeal contains one *Blakely* claim, which does not mention a right to redress, the First Amendment, or even the letter about his ex-wife's boyfriend. Therefore, the court rejects Benge's specious argument that he alleged facts sufficient to put the Delaware Supreme Court on notice that he was raising a separate First Amendment claim.

[8]Rather, Benge merely argues that he did exhaust state remedies by presenting the First Amendment claim to the Delaware Supreme Court on direct appeal. The court has already considered, and rejected, this argument. *See supra,* note 7.

evidentiary hearing is not warranted in this proceeding. *See Campbell v. Vaughn,* 209 F.3d 280, 287 (3d Cir. 2000)(explaining that a request for an evidentiary hearing should be denied where the petitioner fails "'to forecast any evidence beyond that already contained in the record' that would otherwise help his cause.")

Benge also moves the court for summary judgment. However, given the court's foregoing conclusion that Benge is not entitled to federal habeas relief, the court will deny Benge's motion for summary judgment as moot. (D.I. 37.)

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack,* 529 U.S. at 484.

The court concludes that Benge's petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Benge's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN H. BENGE, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>MICHAEL DELOY, Warden, and )<br>JOSEPH J. BIDEN, III, Attorney General )<br>of the State of Delaware, )<br>)<br>Respondents. ) | Civ. A. No. 05-551-GMS |

ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that:

1. John H. Benge's petition for the writ of habeas corpus filed pursuant to 28 U.S.C § 2254 is DISMISSED, and the relief requested therein is DENIED. (D.I. 1.)

2. Benge's motion for summary judgment is DENIED as moot. (D.I. 37.)

3. The court declines to issue a certificate of appealability.

Dated: July 2, 2007

UNITED STATES DISTRICT JUDGE

FILED

JUL - 2 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

WILMINGTON, DELAWARE 19801-3570

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300



Scanned
FILED
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

John H. Benge, Jr
SBI #494395
Sussex Correctional Institution

☐ INSUFFICIENT ADDRESS
☐ ATTEMPTED NOT KNOWN
☐ NO SUCH NUMBER/ STREET
☐ NOT DELIVERABLE AS ADDRESSED
   - UNABLE TO FORWARD
☐ OTHER

RTS
RETURN TO SENDER